1    GLANCY PRONGAY & MURRAY LLP
2    Lionel Z. Glancy (SBN 134180)
     Marc L. Godino (SBN 182689)
3    Danielle L. Manning (SBN 313272)
     1925 Century Park East, Suite 2100
4    Los Angeles, California 90067
5    Telephone: (310) 201-9150
     Facsimile: (310) 201-9160
6    Email: mgodino@glancylaw.com
7    Email: dmanning@glancylaw.com

8    *Counsel for Plaintiff*
9
10   [Additional Counsel on Signature Page.]

11          **THE UNITED STATES DISTRICT COURT**

12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                 **SOUTHERN DIVISION**

14

| | |
|---|---|
| 15  ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated, | Case No. |
| 16 | |
| 17             *Plaintiff,* | **COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750-1785, UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §17200, AND FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, *ET SEQ*.** |
| 18                  v. | |
| 19 | |
| 20  CONAGRA BRANDS, INC., a Delaware corporation, | |
| 21 | |
| 22             *Defendant.* | |
| 23 | CLASS ACTION |
| 24 | JURY TRIAL DEMANDED |
| 25 | |

26
27
28

                         CLASS ACTION COMPLAINT

Plaintiff Robert Cohen ("Plaintiff"), on behalf of the general public, by and through his counsel, bring this action against Conagra Brands, Inc. ("Defendant" or "Conagra"), a Delaware corporation. Plaintiff alleges the following upon information and belief, except where such allegations are based upon his own purchases of Conagra Chicken Products (defined herein) (¶ 25) and his exposure to Conagra's marketing and statements (¶¶ 40-63) concerning the Chicken Products that he viewed, heard or read.

## INTRODUCTION AND NATURE OF ACTION

1.     Plaintiff—a senior citizen residing in Southern California who has purchased Defendant's products in several California grocery stores—brings this civil action for declaratory and equitable relief and damages under California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §1750, *et seq*., California's Unfair Competition Law (UCL), California Business & Professions Code § 17200, *et seq*., and California's False Advertising Law (FAL), *id*. § 17500, *et seq*., challenging Defendant Conagra's advertising of its Chicken Products, defined herein and sold under its Banquet trademark, as "100% NATURAL" and/or made with "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS."

2.     Conagra produces Chicken Products, as defined *infra*, ¶ 25.

3.     A reasonable consumer expects that claims of "100% NATURAL," "NO PRESERVATIVES!" "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS" indicates a meat and poultry product that was produced from a process where, among other things as detailed herein, the product does not contain preservatives, artificial flavors or artificial colors.

4.     In fact, Conagra's Chicken Products contain synthetic ingredients in direct contradiction to Defendant's claims that its products are "100% NATURAL," "NO PRESERVATIVES!" "NO ARTIFICIAL COLORS," and

CLASS ACTION COMPLAINT

"NO ARTIFICIAL FLAVORS."

5. By prominently labeling and advertising its Chicken Products as "100% NATURAL," "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS," Conagra falsely and misleadingly represents that its process and resulting product meet reasonable consumer expectations for "natural" poultry, including that the Chicken Products do not contain preservatives, artificial flavors, or artificial colors.

6. Accordingly, a significant portion of the general public, acting reasonably under the circumstances, are likely to be deceived and/or were deceived by the way Conagra markets and advertises its Chicken Products.

7. As detailed herein, Conagra knows, or at the very least through the exercise of reasonable care should know, its advertising claims, including "100% NATURAL," and "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS," to be materially false and misleading, and thus, disseminates such untrue and misleading statements as part of a plan or scheme with the intent not to sell its Chicken Products as advertised.

8. Plaintiff brings this class and private attorney general action against Defendant, on behalf of himself, the proposed classes, and the general public, in order to seek damages and injunctive relief. Plaintiff seeks declaratory relief that Conagra's advertising constitutes unfair and deceptive acts and practices under California's CLRA, UCL and FAL, and injunctive relief (a) enjoining Conagra from continuing the unlawful practices as set forth here; (b) ordering Conagra to engage in a corrective advertising campaign or requiring Conagra to reformulate its Chicken Products in ways that meet reasonable consumer expectations for "natural" chicken; (c) ordering Conagra to pay Plaintiff restitution in an amount sufficient to provide him with a full refund for each and every one of the Chicken Products he purchased; (d) ordering Conagra to pay restitution to the proposed

1   class. Plaintiff also seeks monetary damages.

2                                **PARTIES**

3       9.      Plaintiff Robert Cohen ("Cohen" or "Plaintiff") is a senior citizen

4   living in Tustin, California. He purchased Conagra Chicken Products and when he

5   purchased these products he relied on Conagra making truthful representations

6   about whether these products were in fact natural and having no preservatives,

7   artificial colors or flavors.

8       10.     Defendant Conagra is a Delaware corporation with its principal place

9   of business located at 222 W. Merchandise Mart Plaza #1300, Chicago, Illinois

10  60654. Conagra owns more than 80 brands including Banquet. Banquet advertises

11  itself as "honest, wholesome food, you can trust…."[1]   Conagra's marketing and

12  products reach a nationwide audience, including by use of website marketing, and

13  therefore Conagra's marketing is used in interstate commerce.

14                          **JURISDICTION AND VENUE**

15      11.     This case arises under California Bus. & Prof. Code § 17203, which

16  provides that any person who engages, has engaged, or proposes to engage in

17  unfair competition may be enjoined in any court of competent jurisdiction. As

18  more fully alleged in this Complaint, Conagra's misrepresentations of material

19  fact in its marketing of the Chicken Products constitute false advertising under

20  California Bus. & Prof. Code § 17500. This Court has subject-matter jurisdiction

21  over this action pursuant to 28 U.S.C. § 1332 (diversity).

22      12.     This Court has personal jurisdiction over the parties in this case.

23  Plaintiff Robert Cohen lives in Tustin, California which is in Orange County and

24  within the jurisdiction of the Southern Division of the Central District of

25  California. He has purchased Conagra Chicken Products at several grocery stores

26  _____

27  [1] Conagra website, available at https://www.banquet.com/about-us, (last visited
28  March 24, 2020).

CLASS ACTION COMPLAINT

in California, and, by filing this Complaint, consents to this Court having personal jurisdiction over him.

13.     Conagra, a citizen of Illinois due to its principal place of business being in Chicago, Illinois, and incorporated in Delaware, is authorized to, and in fact does, conduct substantial business in California, including the Central District of California. Conagra purposefully avails itself of the laws of California to market, promote, distribute, and sell the Chicken Products to consumers in California and in the Central District of California.

14.     Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. Law No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from some defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. § 1332(d)(2) and (6).

15.     While the exact number of members in each proposed class is unknown at this time, Plaintiff has reason to believe that thousands of consumers purchased Conagra's Chicken Products throughout California and the United States during the relevant time period. The number of class members could be discerned from the records maintained by Defendant and/or its distributors.

16.     While the exact damages to Plaintiff and the members of the classes are unknown at this time, Plaintiff reasonably believes that their claims exceed five million dollars ($5,000,000) in the aggregate.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial portion of the events or omissions giving rise to the claims occurred in this District. Conagra marketed, advertised, and sold Chicken

Products in the Central District of California, and Plaintiff suffered an injury in the Central District of California.

## LEGAL BACKGROUND

18.     California's Legal Remedies Act (CLRA), California Civil Code §§ 1750-1785, et seq., declares it unlawful for any person to undertake unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer.

19.     Plaintiff is a senior citizen as defined in Cal. Civ. Code § 1761(f); § 1780(b) ("Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedies specified therein, up to five thousand dollars ($5,000)."

20.     California's Unfair Competition Law (UCL), California Business & Professions Code § 17200, et seq., prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" in addition to any act in violation of California Business & Professions Code § 17500, et seq., as alleged below.

21.     The UCL allows for any person to pursue representative claims or relief on behalf of others if the claimant meets the standing requirements of California Business & Professions Code § 17204 and California Civil Procedure Code § 382. California Bus. & Prof. Code § 17203.

22.     Plaintiff has standing under California Business & Professions Code § 17204, which provides that actions for relief pursuant to the UCL shall be prosecuted exclusively in a court of competent jurisdiction by, inter alia, any person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

23.    California's False Advertising Law (FAL), California Business & Professions Code § 17500, *et seq.*, declares it unlawful for any person to disseminate before the public any statement concerning personal property that the person knows, or through the exercise of reasonable care should know, to be untrue or misleading, with intent to dispose of that property or to induce the public to enter into any obligation relating thereto; or to disseminate such untrue or misleading statements as part of a plan or scheme with the intent not to sell the property as advertised.

24.    Pursuant to California Business & Professions Code § 17535, any person, corporation, firm, partnership, or any other association or organization that violates the FAL may be enjoined by any court of competent jurisdiction. Actions for injunctive relief under the FAL may be prosecuted by any person who has suffered injury in fact and has lost money or property as a result of a violation of the FAL, and the court may make such orders or judgments which may be necessary to restore to any person in interest any money or property which may have been acquired by means declared to be unlawful by the FAL.

## FACTUAL BACKGROUND

### I.    Conagra Chicken Products.

25.    Conagra's Chicken Products, all of which are marketed as "100% Natural" include the following:[2]

- Chicken Breast Tenders (Box)
- Buffalo-Style Breast Tenders
- Chicken Breast Tenders (Bag)
- Chicken Breast Strips (Bag)
- Whole Grain Chicken Breast Strips (Bag)

---

[2] Conagra website, available at https://www.banquet.com/chicken-meals, (last visited March 24, 2020).

CLASS ACTION COMPLAINT

- Chicken Breast Nuggets (Bag)
- Chicken Breast Nuggets (Box)
- Original Chicken Nugget (Bag)
- Original Chicken Nugget (Family Pack)
- Chicken Breast Nugget (Family Pack)
- Original Chicken Nugget (Box)
- Hot & Spicy Wings
- Original Crispy Fried Chicken (Box)
- Hot and Spicy Wings – 11 oz.
- Original Chicken Patties (Bag)
- Chicken Breast Patties (Bag)
- Chicken Breast Patties (Box)
- Popcorn Chicken (Box)
- Popcorn Chicken (Bag)
- Original Chicken Patties (Box)

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7

26.     An example of the packaging for Conagra's Chicken Products is reproduced here:



27.     The Chicken Products are available for purchase under the Conagra brand at retail locations nationwide including throughout California such as Vons, Albertson's, Safeway, Ralph's, Walmart, 99 Cents Only, Smiths, and Stater Bros. with Banquet logo.[3]

---

[3] *See* https://www.banquet.com/where-to-buy, (last visited March 24, 2020).

28.    Conagra markets and advertises its Chicken Products nationwide including California and seeks to reach the consumer base through print advertising via circulars or coupons, its own website, and other media.

## II.    Conagra's False and Misleading Advertising, Including "100% Natural" Representations.

29.    Conagra falsely and misleadingly markets and advertises its Chicken Products as "100% NATURAL" and/or made with "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS."

30.    The front of the package states: "Made with 100% Natural White Meat Chicken. No Preservatives! No Artificial Colors. No Added Hormones. No Artificial Flavors. 0g Trans Fat Per Serving." These key representations are in bold type with a yellow background that catch a consumer's attention.



CLASS ACTION COMPLAINT

31.     The back of the package continues this theme by stating, in easy to read type, "Made with 100% Natural White Meat Chicken." The ingredient list, which is in small, hard to read type, lists non-natural ingredients and preservatives, including modified corn starch, and sodium phosphates, sodium acid pyrophosphate.



32.     The products are not what a reasonable consumer would consider "100% Natural." Conagra uses synthetic ingredients, including Sodium Acid Pyrophosphate (or SAPP). Another ingredient it uses is Sodium

CLASS ACTION COMPLAINT

Tripolyphosphate, a chemical compound used to preserve foods. Consumers, including Conagra consumers and Plaintiff, are generally entitled to rely on representations printed on the front of the product package.

33. Conagra also represents its chicken as "100% Natural" on the "Our Story" page of its current website. The homepage does not disclose Conagra's unnatural practices, such as using synthetic, non-natural ingredients in its Chicken Products.

34. All of these statements were made within the applicable statute of limitations, and many continue as of this filing. Discovery may reveal additional false and misleading statements.

## III. Reasonable Consumer Expectations for Products Marketed and Advertised as being "100% Natural," "No Preservatives," "No Artificial Colors," "No Added Hormones," and "No Artificial Flavors."

35. Consumer Reports ("CR"), founded in 1836, is "an independent, nonprofit member organization that works side by side with consumers for truth, transparency, and fairness in the marketplace." It has six million members and tests tens of thousands of products annually to provide consumers with product reviews.[4] CR has a Survey Research department that conducts more than one hundred surveys per year. Its surveys are not commissioned or financed by industry.[5] In October 2018, CR continued its science-based consumer protection work specific to meat and poultry, and published a front-page story on its

---

[4] Consumer Reports, "About Us," available at https://www.consumerreports,org/cro/about-us/what-we-do/index/html (last visited July 10, 2019).

[5] Consumer Reports, available at http://www.consumerreports.org/cro/about-us/what-we-do/research-and-testing/index/html (last visited July 10, 2019).

1  monthly magazine titled, "What's Really in Your Meat?"[6]

2  36.   Over the past decade, CR has performed several surveys on food

3  marketing, including in 2016,[7] 2015,[8] 2008[9] and 2007.[10]

4  37.   The surveys also tested consumers' interest in buying "natural"

5  products. The 2015 survey found that 62% of consumers purchase "natural"

6  products, and that 87% of those purchasers are willing to pay more for products

7  called "natural" that meet their expectations as to what "natural" means.[11] The

8  2016 survey found the number of consumers who purchase "natural" products to

9  be as high as 73%.[12]

10  38.   A reasonable consumer could be misled by Conagra's use of

---

[6] Consumer Reports, available at http://www.consumerreports.org/food-safety/are-banned-drugs-in-your-meat/ (last visited July 10, 2019). The article title for the online version is "Are Banned Drugs in Your Meat."

[7] Consumer Reports National Research Center, "Food Labels Survey" (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited July 10, 2019).

[8] Consumer Reports National Research Center, "National Food Labels Survey" (2015), available at http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_labels_Survey_2015.pdf (last visited July 10, 2019).

[9] Consumer Reports National Research Center, "Food-Labeling Poll 2008" (2008), available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/iploads/2015/02/foodpoll2008.pdf (last visited July 10, 2019).

[10] Consumer Reports National Research Center, "Food Labeling Pool" (2007), not available online.

[11] Consumer Reports National Research Center, "National Food Labels Survey" (2015), at 2, available at http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_labels_Survey_2015.pdf (last visited July 10, 2019).

[12] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 5, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited July 10, 2019).

CLASS ACTION COMPLAINT

language like "100% Natural," "natural," and "without preservatives, artificial flavors, or artificial colors," because, as the surveys indicate, a significant portion of reasonable consumers expect that a poultry advertised as "100% Natural" is derived from a natural process and results in a natural product. As a result, consumers could purchase Conagra's products based on a flawed understanding of Conagra's chicken production process and the resulting product.

39.    Furthermore, Conagra advertises and markets its products not only as "natural," but "100% Natural," raising consumer expectations even higher.

### A.    Conagra Misleads Reasonable Consumers Who Expect That "100% Natural" Chicken Products Do Not Contain Unnatural Ingredients or Preservatives.

40.    The polls and surveys that have been conducted regarding consumer expectations of products advertised as "100% Natural" show that consumers do not think that products which are "100% Natural" contain preservatives, artificial ingredients, artificial colors or any other synthetic materials.[13]

41.    While on the Conagra website, consumers can click on the desired product, such as the Chicken Breast Strips, that will bring them to the product description, reproduced here.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[13] *See* Consumer Reports National Research Center, "National Food Labels Survey" (2015), at 4, available at http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_labels_Survey_2015.pdf (last visited July 10, 2019); Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.



42.     On that page, consumers can click on the smart label icon to see the ingredients and nutrition facts. Once they click on that, they are on the smart label webpage and can click on "Ingredient" to see the list of ingredients. For each ingredient, consumers can click to view an explanation of what it is.[14]

43.     The ingredients that Conagra lists for the products do not meet consumer expectations of "100% Natural" including Sodium Acid Pyrophosphate, Sodium Tripolyphoshate, and Modified Corn Starch.

44.     Sodium    Acid    Pyrophosphate,    also    known    as    disodium pyrophosphate, is used to enhance the iconic bonding capabilities of a molecule in a preferred direction. This synthetic ingredient is widely used in the food industry to maintain the attractive color of canned foods, as a catalyst in chemical conversions and as a lightening agent in potatoes. It is a synthetic edible phosphoric salt that is used in self-rising and prepared baked goods to control pH

---

[14] See (1) https://www.banquet.com/chicken-meals; (2) https://www.banquet.com/tenders-and-strips/chicken-breast-strips-bag; (3) Smart label icon; (4) Ingredients icon; (5) any listed ingredient.

amounts in food.[15]

45.     Sodium Tripolyphosphate is a preservative that gives a "fresh appearance to meat and seafood while slowing down spoilage."[16] The chemical helps to preserve the natural color of meat and fish and improves their texture. This is done by improving the water-holding capacity of animal products and consequently slowing down their drying in addition to also being a tanning agent for leather and a powerful cleaning agent used in detergents to penetrate the fibers of clothes and aid in foaming and bubbling.

46.     Both Sodium Tripolyphosphate and Sodium Acid Pyrophosphate are preservatives that are phosphorus based. Consuming too many phosphates—especially as an additive in processed foods—can contribute to an increased risk of heart disease and exacerbate kidney disease symptoms.[17]

47.     Phosphorous can contribute to osteoporosis. If a person has too much phosphorus and not enough calcium in their diet, it can be detrimental to skeletal system health because excess phosphorus makes bones brittle by encouraging the body to break down bone instead of building bone up. The more phosphorus that a person eats, the more calcium a person needs to eat in order to maintain a healthy balance, otherwise there could be health complications for people with low bone density. The University of Maryland Medical Center has stated that Western diets typically consist of two to four times more phosphorous than calcium, thus

---

[15]Available at Bakerpedia, Sodium Acid Pyrophosphate (SAPP), https://bakerpedia.com/ingredients/sodium-acid-pyrophosphate-sapp/ (last visited March 24, 2020).

[16] Available at Sciencing, https://sciencing.com/usage-sodium-tripolyphosphate-6499754.html (Last visited March 24, 2020); *See also* http://www.chefsteps.com/ingredients/sodium-tripolyphosphate (last visited March 24, 2020).

[17] Ritz et. Al., *Phosphate Additives in Food—a Health Risk,* U.S. National Library of Medicine National Institutes of Health, (Jan. 22, 2012), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3278747/.

CLASS ACTION COMPLAINT

already putting many consumers at risk of encountering these problems if they are unaware of the amount of phosphorus they are ingesting.[18]

48.     Sodium Acid Pyrophosphate, when consumed in large amount for an extended period of time, can harm the immune system.[19]

49.     Phosphorus can accumulate in a person's body if a person has kidney disease or if a person consumes too much without enough calcium. When a body has very high levels of phosphorous, the mineral can join with calcium in the blood stream and form deposits in muscles and other soft tissues causing them to harden. Phosphorus can interfere with a body's ability to use other minerals like iron, magnesium, and zinc that can result in diarrhea.[20]

50.     Modified Corn starch is a "direct" food additive. It is a starch that has been altered to improve its thickening properties and before the starch is modified it is separated from the protein through isolation techniques.

51.     The synthetic ingredients including preservatives are in direct contradiction to Defendant's claims that their products do not have preservatives. The synthetic ingredients are in direct contradiction to Defendant's claims that their products are "100% Natural."

**IV.     Conagra Knows That Its Advertising Claims Are False, Misleading, and Deceptive for Reasonable Consumers.**

52.     Conagra knows, or reasonably should know because it is a large

---

[18] Calvo, Mochfegh, and Tucker, *Assessing the Health Impact of Phosphorus in the Food Supply: Issues and* Considerations, Advances in Nutrition, Oxford Academic, (January 4, 2014), Available at: https://academic.oup.com/advances/article/5/1/104/4557990.

[19] Abd-Elhakim et. Al., *Effects of the food additives sodium acid pyrophosphate, sodium acetate, and citric acid on hemto-immunological pathological biomarkers in rats*, ScienceDirect, (Sept. 2018), available at https://www.sciencedirect.com/science/article/pii/S1382668918301571.

[20] *See Phosphorus in Your Diet,* healthline, available at: https://www.healthline.com/health/phosphorus-in-diet.

distributor of food products, that consumers think that "natural" means chicken that was not made with added preservative or artificial ingredients. Conagra knows, or should reasonably know, that the ingredients that they are using are synthetic and not natural. Therefore, Conagra knows, or should reasonably know, that it is making false, misleading or deceptive statements to consumers as described above.  Conagra knows, or reasonably should know, that consumers understand "100% Natural" and "without preservatives" to mean that there are not preservative or synthetic ingredients within the product that they are purchasing.

53.    Conagra's representation that its Chicken Products are "100% Natural" in advertising and on the front of the package while actually using synthetic, unnatural ingredients is a complete contradiction and does not meet consumer expectations for "natural." Therefore, its "natural" representation is false, misleading and deceptive.

54.    Conagra's website is structured in a way that even online purchasers have to click two or three times to find the web page with ingredients. Consumers, especially in-store consumers, are not required to conduct an investigation online or elsewhere to reveal fraud in advertising and to avoid being misled.

**V.    Plaintiff's Experience**

55.    Plaintiff purchased Conagra Chicken Products and he relied on Conagra making truthful representations about whether these products were in fact natural and having no preservatives, artificial colors or flavors.  Cohen was exposed to the website marketing claims in early 2018. Cohen searched "Banquet" on the Bing.com search engine, found Conagra's website for Banquet (www.banquet.com), and viewed Conagra's website, which promised that the Chicken Products (specifically the Banquet products described herein) were "100% Natural" and having no preservatives, artificial colors or flavors.   In addition to Conagra's main website, Cohen found information in approximately

early March 2018 on another Conagra website (www.readyseteat.com) that publishes recipes, coupons and information about Conagra Chicken Products and that re-iterated that Conagra's Chicken Products were "100% Natural" having no preservatives, artificial colors or flavors. Cohen also viewed Conagra marketing in local newspaper circulars for approximately 10 years.  Cohen was also exposed to the claims on each package of Chicken Products.

56.     Cohen began purchasing Conagra Chicken Products in approximately 2015 and has bought them each year since. In the first several years of purchasing Conagra Chicken Products from 2015 to early 2018, Cohen did not have any reason to doubt the 100% Natural claim or representations that the Conagra Chicken Products having no preservatives, artificial colors or flavors. Like most consumers, Cohen relied on truthful representations in large, bold type on the front of the package and he did not study the fine print ingredient list when he purchased the Chicken Products.

57.     After learning in 2018 about other chicken products sold by different companies that were wrongfully marketed as natural, Plaintiff became concerned in early 2018 about whether the express claims prominently displayed on Conagra Chicken Products he purchased were true. Plaintiff contacted Conagra with his concerns in early 2018. Conagra did not respond, other than an auto-reply in March 2018.

58.     Cohen continued to purchase Conagra Chicken Products in 2018, after receiving Conagra's March 2018 auto-reply, including Classic Chicken Strips, Banquet Chicken Nuggets, Banquet Fried Chicken, Banquet Sweet and Sour Chicken, Banquet Spaghetti and Chicken Nuggets, Classic Dinners, and Meals. He purchased Conagra Chicken Products one or two at a time from stores in Orange County, including: Walmart, located at 16555 Von Karman Avenue, Irvine, Orange County, California; Walmart, located at 71 Technology Drive,

Irvine, Orange County, California; 99 Cents Only, located at 22631 Lake Forest Drive, Lake Forest, Orange County, California; 99 Cents Only, located at 13721 Newport Avenue, Tustin, California; Albertson's, located at 3825 Alton Parkway, Irvine, California; and Ralph's located at 13321 Jamboree Road, Tustin, Orange County, California. In 2018, Cohen did begin to study the fine print ingredients list on the back of these packages.

59.   Plaintiff also contacted Conagra via email in approximately September 2018 to inquire about the identity of their chicken supplier. Conagra responded via email in October 2018 to state, "We source through multiple suppliers based on products currently available. While we like to stay transparent, there is some information that we simply cannot provide."

60.   Cohen continued to purchase in January 2019, including Conagra Chicken Breast Nuggets, Breaded Chicken Patties and Popcorn Chicken at stores including: Stater Bros., store #198, located at 15150 Kensington Park, Tustin, Orange County, California, and he was able to confirm that Conagra had not changed its marketing of the Chicken Products. Cohen became so concerned about the veracity of the 100% Natural claims that he issued a demand to Conagra pursuant to the Consumer Legal Remedies Act in May 2019.

61.   In total over several years, Plaintiff purchased several different Conagra Chicken Products that Conagra marketed as "100% NATURAL" and/or made with "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS." Plaintiff would not have purchased these products had he known that they not being advertised truthfully. At the time he purchased Conagra's Chicken Products in 2015 through early 2018 he fully believed the above-quoted representations were truthful because he was given no reason to doubt those claims.   Like most consumers, Cohen relied on truthful representations in large, bold type on the front of the package, and Cohen did not

study the fine print ingredient list when he purchased the Chicken Products until after several years of having relied on the large, bold representations on the front of the package.

62. Plaintiff, like most reasonable consumers, understood that Conagra's "100% NATURAL" and/or made with "NO PRESERVATIVES!," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS" representations mean, among other attributes, that a product is free of preservatives and synthetic ingredients. When Plaintiff questioned whether the advertising was truthful, Plaintiff investigated further by contacting Conagra, but Conagra did not respond to Plaintiff's query.

63. As result of Conagra's legal violations, Plaintiff has suffered injury in fact and has lost money or property.

64. Because of Conagra's marketing representations, Plaintiff purchased Conagra Chicken Products more than any other brand. He has lost money because he purchased the products in reliance on Defendant's materially false, misleading and deceptive representations regarding the Chicken Products. The injury to Plaintiff is not speculative; instead, expenses incurred by purchasing of Conagra Chicken Products, which resulted from Defendant's unlawful conduct, could have been spent on other products that accurately marketed their products as "100% Natural" and/or having no preservatives, artificial colors or flavors.

65. Conagra will continue to harm consumers by its misleading advertising unless injunctive relief is obtained.

## CLASS ACTION ALLEGATIONS

66. Plaintiff Cohen brings this action as a class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure for the purposes of asserting the claims alleged in this Complaint on a common basis. Plaintiff brings this action on behalf of himself and all members of the following

class comprised of:

> All persons, exclusive of Defendant and its employees, who purchased in the United States, one or more Chicken Products sold by Defendant within the applicable limitations period (the "Class Period"). (the "National Class").

67.     Plaintiff brings this action on behalf of himself and all members of the following subclass comprised of:

> All persons, exclusive of Defendant and its employees, who purchased in California, one or more Chicken Products sold by Defendant within the applicable limitations period (the "Class Period"). (the "California Class").

68.     The National and California Classes are referred to as the "Classes."

69.     Excluded from the Classes are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns. Plaintiff reserves the right to modify, change, or expand the class definition, including proposing additional subclasses, based upon discovery and further investigation.

70.     Upon information and belief, the scope of this Class definitions, including its temporal scope, may be further refined after discovery of Defendant's and/or third-party records.

71.     **Numerosity**. Class members are so numerous that joinder is impracticable. Thousands of individuals were deceived by Defendant's advertising.

72.     **Typicality.** Plaintiff Cohen's claims are typical of the claims of the Classes. Plaintiff Cohen is a member of a well-defined Class of similarly situated persons, and the members of the Classes were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of

the Classes are ascertainable from Plaintiff Cohen's description of the Classes and/or Defendant's records and/or records of third parties accessible through discovery.

73.   **Adequacy.** The representative Plaintiff will fairly and adequately represent the members of the Classes and has no interests that are antagonistic to the claims of the Classes. Plaintiff Cohen's interests in this action are antagonistic to the interests of the Defendant, and Plaintiff Cohen will vigorously pursue the claims of the Classes.

74.   **Commonality and Predominance.** Common questions of law and fact affect the rights of each member of the Classes, and a common remedy is sought for the Classes that will predominate over any individual issues. These common questions of law and fact include, without limitation:

a) whether Defendant advertised its Chicken Products with the intent not to sell them as advertised in violation of California Civil Code § 1770(a)(7);

b) whether Defendant represented in advertising for the Chicken Products that the Products has characteristics, ingredients, uses, or benefits that they do not have in violation of California Civil Code § 1770(a)(5);

c) whether Defendant is subject to liability for violating the CLRA, Cal. Civ. Code §§ 1750-1784;

d) whether Defendant has violated the FAL, Cal. Bus. & Prof. Code §§ 17500-17536;

e) whether Defendant has violated the UCL, Cal. Bus. & Prof. Code §§ 17200-17210; and

f) whether Plaintiff and the Classes were damaged;

g) whether the Classes are entitled to an award of restitution pursuant to California Business and Professions Code § 17203.

75. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Cohen and the Classes are nearly identical and will require evidentiary proof of the same kind and application of the same laws. there is no plain, speedy, or adequate remedy other than by maintenance of this class action.

76. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. trial of Plaintiff Cohen's and the Class members' claims is manageable.

77. Plaintiff Cohen has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising and who has successfully represented plaintiffs in complex class actions. Plaintiff Cohen's counsel currently represents other plaintiffs in several similar complex class actions involving false advertising.

78. Plaintiff Cohen knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## FIRST COUNT FOR RELIEF

### (VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT—CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*)

79. The allegations made in all preceding paragraphs are re-alleged and incorporated by reference.

80. Conagra falsely and misleadingly represented its Chicken Products,

in violation of the California CLRA, California Civil Code § 1750, et seq., by advertising its Chicken Products as "100% Natural" having no preservatives, artificial colors or flavors when in fact, Conagra knew, or in the exercise of reasonable care should have known, that the process by which it creates its Chicken Products and the product itself does not meet reasonable consumer expectations for a product marketed as "100% Natural" having no preservatives, artificial colors or flavors.

81.    Cal. Civ. Code § 1780(a) allows any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 to bring an action against that person to recover or obtain actual damages, injunctive relief, restitution of property, punitive damages, and any other relief that the court deems proper.

82.    Pursuant to Cal. Civ. Code § 1752, the provisions of the CLRA are not exclusive, and the remedies provided therein are in addition to any other procedures or remedies for any violation or conduct provided for in any other law.

83.    Plaintiff complied with Cal. Civ. Code § 1782(a) regarding notice to Defendant on his own behalf and on behalf of the class. On May 13, 2019, Plaintiff sent a letter via certified mail. Defendant did not respond. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

84.    Plaintiff's CLRA venue declaration is attached to this Complaint as Exhibit A, consistent with Cal. Civ. Code § 1780(d).

85.    Plaintiff and other members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d), because they bought the Products for personal, family, or household purposes.

86.     Plaintiff and other members of the Class have engaged in "transactions," as that term is defined by Cal. Civ. Code § 1761(e).

87.     Plaintiff is a "senior citizen," as that term is defined in Cal. Civ. Code § 1761(f); § 1780(b).

88.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

89.     Defendant violated Cal. Civ. Code § 1770(a)(2)-(9) in various aspects. These violations, include but are not necessarily limited to: (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, (7) by misrepresenting in marketing materials that Defendant's Chicken Products are "100% Natural" having no preservatives, artificial colors or flavors.; representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, by misrepresenting in marketing materials that Defendant's Chicken Products are "100% Natural" having no preservatives, artificial colors or flavors; (9) advertising goods or services with intent not to sell them as advertised, by misrepresenting in marketing materials that Defendant's Chicken Products "100% Natural" having no preservatives, artificial colors or flavors.

90.     As a direct and proximate result of Conagra's violations, Plaintiff suffered injury in fact because he purchased Conagra chicken with the reliance that the product was "100% Natural" having no preservatives, artificial colors or flavors.

91.     Plaintiff seeks an order enjoining the acts and practices described above, restitution of property, and any other relief that the Court deems proper.

CLASS ACTION COMPLAINT

92.    Plaintiff additionally seeks damages, restitution, punitive damages, attorneys' fees and costs, and any other relief under § 1780(a) of the CLRA pursuant to Civil Code § 1782(d), due to Defendant's failure to rectify or agree to adequately rectify their violations as detailed above.

### SECOND COUNT FOR RELIEF

### (VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW—CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.*)

93.    The allegations made in all preceding paragraphs are re-alleged and incorporated by reference herein.

94.    Conagra engaged in unlawful, unfair, and/or fraudulent conduct under the California UCL, California Business & Professions Code § 17200, et seq., by advertising its Chicken Products as "100% Natural" when in fact, Conagra knows that the process by which it creates its Chicken Products and the resulting product itself does not meet reasonable consumer expectations for a product marketed as "100% Natural" having no preservatives, artificial colors or flavors.

95.    Conagra's conduct is unlawful in that it violates the California FAL, California Business & Professions Code § 17500 et seq., described more fully in the Third Claim for Relief below.

96.    Conagra's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff, and California consumers. The harm to Plaintiff arising from Conagra's conduct outweighs any legitimate benefit Conagra derived from the conduct. Conagra's conduct undermines and violates the stated spirit and policies underlying the FAL and other legal regulations as alleged herein.

97.    Conagra's advertising actions and practices with regard to the food product and process constitute "fraudulent" business practices in violation of the

CLASS ACTION COMPLAINT

UCL because, among other things, they are likely to deceive reasonable consumers. As a direct and proximate result of Conagra's violations, Plaintiff suffered injury in fact because he purchased Conagra chicken with the reliance that the product was "100% Natural" having no preservatives, artificial colors or flavors.

98. Plaintiff seeks (a) injunctive relief in the form of an order requiring Conagra to cease the acts of unfair competition alleged here and to correct its advertising, promotion, and marketing campaigns or reformulate its products in ways that meet consumer expectations for "natural" and having no preservatives, artificial colors or flavors; (b) the payment of Plaintiffs' attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure Section 1021.5; and (c) interest at the highest rate allowable by law. Plaintiff also seeks restitution for himself and the class.

### THIRD COUNT FOR RELIEF

### (VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW—CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*)

99. The allegations made in all preceding paragraphs are re-alleged and incorporated by reference herein.

100. Conagra publicly disseminated untrue or misleading advertising, or intended not to sell the Chicken Products as advertised, in violation of California FAL, California Business & Professions Code § 17500, et seq., by advertising its Chicken Products as "100% Natural" having no preservatives, artificial colors or flavors when in fact, Conagra knew, or in the exercise of reasonable care should have known, that the process by which it creates its Chicken Products and the product itself does not meet reasonable consumer expectations for a product marketed as "100% Natural" having no preservatives, artificial colors or flavors.

CLASS ACTION COMPLAINT

101.   As a direct and proximate result of Conagra's violations, Plaintiffs suffered injury in fact because he purchased Conagra chicken with the reliance that the product was ""100% Natural" having no preservatives, artificial colors or flavors.

102.   Plaintiff seeks (a) injunctive relief in the form of an order requiring Conagra to cease the acts of unfair competition alleged here and to correct its advertising, promotion, and marketing campaigns or reformulate its products in ways that meet consumer expectations for "natural" with no preservatives, artificial colors or flavors; (b) the payment of Plaintiffs' attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure Section 1021.5; and (c) interest at the highest rate allowable by law. Plaintiff also seeks restitution for himself and the class.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that the Court enter judgment in his favor and in favor of the classes and against Conagra, as follows:

A.     Declare that Conagra violated the CLRA, UCL and FAL;

B.     Order an award of injunctive relief as permitted by law or equity, including enjoining Conagra from continuing the unlawful practices as set forth herein, and ordering Conagra to engage in a corrective advertising campaign or reformulate its products in ways that meet consumer expectations for "natural" and having no preservatives, artificial colors or flavors;

C.     Order Conagra to pay restitution to Plaintiff and the class;

D.   An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

E.   Order Conagra to pay attorneys' fees and litigation costs to Plaintiff pursuant to California Code of Civil Procedure Section 1021.5 and the common-law private-attorney-general doctrine;

F.   Order Conagra to pay both pre- and post-judgment interest on any amounts awarded; and

G.   Order such other and further relief as may be just and proper.

Dated: April 1, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Marc L. Godino*
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**HAEGGQUIST & ECK, LLP**
Alreen Haeggquist (SBN 221858)
Kathleen Herkenhoff (SBN 168562)
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Email: Kathleenh@haelaw.com

**ELSNER LAW & POLICY, LLC**
Gretchen Elsner (*Pro Hac Vice to be filed*)
314 South Guadalupe Street
Santa Fe, NM 87501
Telephone: (505) 303-0980
Email: gretchen@elsnerlaw.org

*Counsel for Plaintiff*

29