**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>*Defendant-Appellee.* | No. 20-55969<br><br>D.C. No.<br>8:20-cv-00637-DOC-ADS<br><br><br><br>OPINION |

---

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted September 3, 2021
Pasadena, California

Filed October 26, 2021

Before: Mark J. Bennett and Ryan D. Nelson, Circuit
Judges, and David A. Ezra,* District Judge.

Opinion by Judge Bennett

---

* The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

2                    COHEN V. CONAGRA

## SUMMARY[**]

### Product Labels / Preemption

The panel affirmed in part and reversed in part the district court's dismissal of a plaintiff's putative consumer class action alleging that ConAgra Brands, Inc. falsely advertised its frozen chicken products as natural and preservative-free, when in fact they contained synthetic ingredients.

The district court found that the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") had approved ConAgra's poultry labels, and therefore plaintiff's claims challenging both the label and ConAgra's website advertising were preempted by the federal Poultry Products Inspection Act ("PPIA"). The district court dismissed all of plaintiffs' claims.

A plaintiff who brings a state law claim that the approved label is false or misleading is seeking to impose a requirement different from the federal requirements, and that state law claim is preempted by 21 U.S.C. § 467e, which bars plaintiffs from challenging the agency's application of the PPIA's mislabeling standards through state law claims. Plaintiff alleged that the PPIA contained a savings clause that allowed his claims to survive preemption. Plaintiff mainly disputed whether there was enough evidence in the record to support the district court's finding that ConAgra's labels were reviewed and approved by FSIS. The panel held that the mere existence of the label was insufficient to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

establish that it was reviewed and approved by FSIS. Preemption is an affirmative defense, and when the parties dispute whether FSIS review occurred at all, the defendant must produce evidence that the label was reviewed and approved by FSIS. The panel reversed the district court's preemption of plaintiff's claims challenging the product label. On limited remand, the parties should submit evidence about (and the district court should decide) only whether ConAgra's label was reviewed and approved by FSIS. If the evidence shows that ConAgra's label was approved by FSIS, then plaintiff's claims are preempted. Plaintiff may not try to argue or show that FSIS's approval decision was wrong.

ConAgra's website representations were not reviewed by FSIS. The label and the website were not materially identical. The website representation about the chicken products read: "They're made with 100% natural, white meat chicken *and* without preservatives, artificial flavors, or artificial colors." The panel held, assuming that the product labels were reviewed by FSIS, plaintiff could not challenge the first half of that representation because it was essentially identical to the representation on the product label – "Made with 100% Natural White Meat Chicken." Any challenge to that phrase was premised ultimately upon the inadequacy of the product label, and preempted. The second half of the representation was materially different from the representations on the label. The panel held, accordingly, that plaintiff's state law claims challenging ConAgra's website representation that the chicken products as a whole contained no preservatives, artificial flavors, or artificial colors were not preempted.

The panel declined ConAgra's invitation to affirm the district court's decision on five different grounds. The panel

did not consider four of ConAgra's arguments.  The panel
did reach ConAgra's fifth argument, and concluded that the
primary jurisdiction doctrine was inapplicable here.  The
doctrine is a prudential doctrine under which courts may
determine that the initial decision-making responsibility
should be performed by the relevant agency rather than the
courts.  The panel held that none of the justifications for the
primary jurisdiction doctrine existed here.

## COUNSEL

Gretchen Elsner (argued), Elsner Law & Policy LLC, Santa
Fe, New Mexico; Marc L. Godino and Danielle L. Manning,
Glancy Prongay & Murray LLP, Los Angeles, California;
Alreen Haeggquist, Kathleen Herkenhoff, and Ian Pike,
Haeggquist & Eck LLP, San Diego, California; for Plaintiff-
Appellant.

Nowell Donald Berreth (argued) and Angela M. Spivey,
Alston & Bird LLP, Atlanta, Georgia; Rachel E. K. Lowe,
Alston & Bird LLP, Los Angeles, California; for Defendant-
Appellee.

Robert W. George, Friday Eldredge & Clark LLP, Rogers,
Arkansas; Joshua C. Ashley, Friday Eldredge & Clark LLP,
Little Rock, Arkansas; for Amici Curiae Consumer Brands
Association, North American Meat Institute, National
Turkey Federation, National Chicken Council, National
Pork Producers Council, American Association of Meat
Processors, and American Frozen Food Institute.

Stephen Gardner, Law Office of Stephen Gardner, Bend,
Oregon; John A. Yanchunis and Kenya J. Reddy, Morgan &
Morgan Complex Litigation Group, Tampa, Florida; for

Amici Curiae National Association of Consumer Advocates, Animal Legal Defense Fund, and Food & Water Watch Inc.

## OPINION

BENNETT, Circuit Judge:

Robert Cohen brings state claims alleging that ConAgra Brands, Inc. ("ConAgra"), falsely advertises its frozen chicken products as natural and preservative-free, when in fact they contain synthetic ingredients. But poultry products and their labeling are strictly regulated by the Poultry Products Inspection Act ("PPIA").[1] Under the PPIA, certain poultry labels, like the ones in this case, must be preapproved by a federal agency before the products go to market. *See* 21 U.S.C. § 457(c); 9 C.F.R. § 412.2(b), (e). The district court found that the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") had approved ConAgra's poultry labels, and thus Cohen's claims challenging both the label and ConAgra's website advertising were preempted. We have jurisdiction under 28 U.S.C. § 1291; we affirm in part, reverse in part, and remand.[2]

I.

In 2015, Cohen began purchasing various frozen chicken products such as chicken nuggets and fried chicken. These chicken products are produced by ConAgra and similarly

---

[1] 21 U.S.C. §§ 451–473.

[2] We **GRANT** the motion of the National Association of Consumer Advocates, et al. to become amici curiae in support of Cohen.

labeled, with prominent representations on the front of the packaging that read (in capital letters of varying sizes): "Made with 100% Natural White Meat Chicken"; "No Preservatives"; "No Artificial Colors"; "No Added Hormones"; "No Artificial Flavors"; and "0g Trans Fat per Serving." The chicken products allegedly contain three "synthetic" ingredients: sodium acid pyrophosphate, sodium tripolyphosphate, and modified corn starch. Sodium acid pyrophosphate improves the color of canned foods and is also a leavening agent often used in baked goods. Sodium tripolyphosphate is a preservative that slows the spoilage of meat, helps keep its natural color, and improves its texture. Modified corn starch has thickening properties.

Cohen alleges that, based on the representations on the product labels, he thought the entirety of the chicken products (as opposed to only the chicken meat contained in those products) was "free of preservatives and synthetic ingredients." Thus, he claims the labels are false or misleading. In early 2018, Cohen visited ConAgra's website, which provides descriptions of the chicken products with a picture of the front packaging. The description paraphrases the representations on the label, and states: "[The product is] made with 100% natural white-meat chicken, and without preservatives, artificial flavors, or artificial colors." Cohen claims that he relied on these representations and continued buying ConAgra's chicken products until January 2019. In April 2020, Cohen brought this putative class action against ConAgra, claiming that its product label and website representations violated California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"). *See* Cal. Civil Code §§ 1750–1784; Cal. Bus. & Prof. Code §§ 17200–17210; Cal. Bus. & Prof. Code §§ 17500–17536. He sought damages and injunctive relief.

The district court dismissed Cohen's claims as preempted by the PPIA. The court took judicial notice of the images of the front packaging submitted by ConAgra and concluded that the FSIS had "approved the labeling of the Chicken Products, including the specific representation challenged by [Cohen]." The court also found "no reason to distinguish between the packaging itself and an image of the packaging viewed over the Internet." Thus, it held that all of Cohen's claims were preempted and dismissed them with prejudice.

## II.

We review de novo a district court's dismissal for failure to state a claim upon which relief can be granted. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). Questions of preemption and statutory interpretation are also reviewed de novo. *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1145 (9th Cir. 2017). We review the denial of leave to amend for an abuse of discretion, but we review the futility of amendment de novo. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016).

## III.

Congress passed the PPIA to "assur[e] that poultry products . . . are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. The statute prohibits the sale of poultry "under any name or other marking or labeling which is false or misleading," but "marking and labeling . . . which are not false or misleading and which are approved by the Secretary are permitted." *Id.* § 457(c). The Secretary delegated authority to oversee poultry products to FSIS, 9 C.F.R. § 300.2(a), and FSIS promulgated regulations to govern the label approval

process: "No final label may be used on any product unless
the label has been submitted for approval to the FSIS
Labeling and Program Delivery Staff . . . and approved by
such staff, except for generically approved labels . . . ." *Id.*
§ 412.1(a). Generically approved labels can "bear claims
and statements that are defined in FSIS's regulations or the
Food Standards and Labeling Policy Book (except for
natural and negative claims)" and are deemed approved
without being submitted for evaluation. *Id.* § 412.2(b).
Almost all other claims are classified as "special statements
and claims," and must be submitted to FSIS in the form of a
final label for approval. *Id.* § 412.1(c), (e).[3] Thus, the PPIA
creates a regulatory scheme in which, depending on the
content of the representations, some labels must be reviewed
and approved by FSIS.

---

[3] The regulations define "special statements and claims" as:

> claims, logos, trademarks, and other symbols on labels
> that are not defined in the Federal meat and poultry
> products inspection regulations or the Food Standards
> and Labeling Policy Book, (except for "natural" and
> negative claims (e.g., "gluten free")), health claims,
> ingredient and processing method claims (e.g., high-
> pressure processing), structure-function claims, claims
> regarding the raising of animals, organic claims, and
> instructional or disclaimer statements concerning
> pathogens (e.g., "for cooking only" or "not tested for
> E. coli O157:H7"). Examples of logos and symbols
> include graphic representations of hearts and
> geographic landmarks. Special statements and claims
> do not include allergen statements (e.g., "contains
> soy") applied in accordance with the Food Allergen
> Labeling and Consumer Protection Act.

9 C.F.R. § 412.1(e).

The PPIA also includes an express preemption provision, which provides that any "[m]arking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under this chapter may not be imposed by any State or Territory . . . with respect to articles prepared at any official establishment." 21 U.S.C. § 467e. In *Webb v. Trader Joe's Co.*, we considered whether the PPIA preempted a plaintiff's challenge to a poultry product's retained water statement. 999 F.3d 1196, 1199 (9th Cir. 2021). We concluded that "FSIS [r]eviewed Trader Joe's [l]abels," including the retained water statement, so "[a]ny additional label requirements [plaintiff] seeks to place on Trader Joe's through [her state law claim] would necessarily be 'different than' those required by the PPIA, and her claims are thus preempted." *Id.* at 1203–04.[4] So when the agency reviews and approves a label, the agency is deciding that it is *not* false or misleading under the PPIA, and thus the agency "imposes" a federal requirement within the meaning § 467e. *Cf. Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322–23 (2008) ("Premarket approval . . . imposes 'requirements' under the [Medical Device Amendments of 1976] . . . . [I]t is in no sense an exemption from federal safety review—it *is* federal safety review."). If a plaintiff claims that such a label is false or misleading notwithstanding review and approval by FSIS, he is essentially claiming that the agency's decision to approve the label was wrong. *Cf. Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 118 (2d Cir. 2018). Thus, a plaintiff who brings a state law claim that the approved label

---

[4] Cohen claims that *Webb* is limited to situations in which federal regulations dictate the data collection process used to support certain label statements (such as retained water representations). But in *Webb*, we found two separate federal requirements that *each* preempted the plaintiff's claims: (1) the detailed regulation about measuring water retention, *and* (2) agency approval of the label. 999 F.3d at 1201–02.

is false or misleading is seeking to impose a requirement different from the federal requirements. That state law claim is preempted by § 467e, which bars plaintiffs from challenging the agency's application of the PPIA's mislabeling standards through state law claims. *See Webb*, 999 F.3d at 1204.

Cohen argues that, *Webb* notwithstanding, the PPIA includes a savings clause that allows his claims to survive preemption. Section 467e provides that any State "may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution . . . of any such articles which are adulterated or misbranded and are outside of [an official] establishment." But in *National Broiler Council v. Voss*, we explained that § 467e "authorizes states to undertake, concurrently with the USDA, efforts to enforce *federal* requirements." 44 F.3d 740, 746 (9th Cir. 1994) (per curiam) ("[Section 467e] does not grant states the authority to enact their own additional requirements."). Cohen's *policy* arguments against preemption are not only irrelevant, but also unpersuasive. The absence of a remedy for consumers in the PPIA is intentional. *See* 21 U.S.C. § 467d. Congress granted a federal agency the authority to uniformly determine the standard for poultry mislabeling and to apply that standard to labels before they go to market. *See Voss*, 44 F.3d at 744. Allowing private consumers to second-guess the agency's decisions through state law claims against producers would both circumvent that pre-approval process and conflict with the PPIA's goal of national uniformity. *See* 21 U.S.C. § 467e; H.R. Rep. No. 90-1333, (1968), *reprinted in* 1968 U.S.C.C.A.N. 3426, 3442 ("States would be precluded [under the amended PPIA] from imposing additional or different labeling . . . requirements for federally

inspected products. Both industry and consumers would benefit from . . . greater uniformity of labeling requirements . . . ."). Thus, if ConAgra's labels *were* reviewed and approved by FSIS, then Cohen's claims challenging the labels would be preempted.[5]

Cohen mainly disputes whether there is enough evidence in the record to support the district court's finding that ConAgra's labels *were* reviewed and approved by FSIS. The only evidence before us is the label itself—there are no affidavits or other documentary evidence showing that the label was submitted to and approved by FSIS.[6] In *Webb*, we

---

[5] *Webb* did leave a "possible 'narrow gap'" through which a plaintiff's claims might survive preemption. 999 F.3d at 1204. But that "gap" is limited to situations in which the plaintiff challenges the facts underlying the agency approval process. *See In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 621 F.3d 781, 797–99 (8th Cir. 2010). Cohen does not make those allegations (and it is unlikely any such allegations, if made, would be plausible given that the "synthetic" ingredients are listed in the ingredient list on the packaging of the chicken products).

[6] After argument, ConAgra filed a Federal Rule of Appellate Procedure 28(j) letter including an application for sketch approval for one of its chicken products, with a stamp showing FSIS approved the application. The "approved" label contains the same representations as those that Cohen challenges here. And because "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim," Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. 66826-01, 66830 (Nov. 7, 2013), ConAgra's evidence would preempt all of Cohen's product-label claims to all product labels, (unless he can plausibly allege the modification is misleading). Cohen does not do so here. Instead, he alleges that the special statements (which are unchanged) are misleading. Thus, ConAgra's evidence would establish

found that label evidence alone was enough to conclude that a retained water claim was federally approved, but the plaintiff in that case did not challenge whether the label was reviewed by FSIS. *See id.* at 1203–04.[7]  By contrast, Cohen contends that ConAgra used the generic approval process for its labels, improperly bypassing FSIS review.  Here, we find that the mere existence of the label is insufficient to establish that it was reviewed and approved by FSIS.  Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument.  *See Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018).  Thus, when the parties dispute whether FSIS review occurred at all, the defendant must produce evidence that the label was reviewed and approved by FSIS.  After all,

---

that the challenged statements were reviewed by FSIS and would preempt Cohen's claims.

"Rule 28(j) . . . is not designed to bring new evidence through the back door."  *Manley v. Rowley*, 847 F.3d 705, 710 n.2 (9th Cir. 2017) (citation omitted).  Even if we could take judicial notice of the approval (and ConAgra had so moved), we would remand for consideration of this new information, especially where we are remanding for consideration of Cohen's website claims.  On remand, ConAgra may submit its approval evidence to the district court, which may take judicial notice of the evidence (if appropriate) or allow limited discovery only into ConAgra's preempted-by-approval defense.  *See Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (recognizing court's authority to limit discovery to potentially dispositive issues).

[7] Instead, the plaintiff in *Webb* argued only that the retained water claim itself was a generic claim, which is true.  999 F.3d at 1203.  But a review of the agency's rules showed that "when a poultry label includes special statements in addition to general statements, FSIS reviews the entirety of the label."  *Id.*  And because the label contained special statements, we concluded that FSIS reviewed and approved all the statements on the label, including the generic retained water claim.  *Id.* at 1203–04.

the defendant producer and not the plaintiff will have access to evidence as to FSIS review and approval of its label.[8] *Cf. Molski v. Foley Ests. Vineyard & Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008).  And this is hardly a significant burden.[9]  Thus, we reverse the district court's preemption of Cohen's claims challenging the product labels.

We emphasize the limited nature of our remand.  On remand, the parties should submit evidence about (and the district court should decide) only whether ConAgra's label was reviewed and approved by FSIS.  If the evidence shows that ConAgra's label was approved by FSIS, then Cohen's claims are preempted.  Cohen may not try to argue or show that FSIS's approval decision was wrong.  Once the agency has decided that a poultry label meets the requirements of federal law, a plaintiff has no recourse through state law (except for the "possible 'narrow gap'" discussed *supra* note 5, which is inapplicable here).

IV.

ConAgra's website representations, however, were not reviewed by FSIS.  The federal regulations require only the review of labels, which "means a display of written, printed, or graphic matter upon any article or the immediate container . . . of any article."  21 U.S.C. § 453(s).  A website

---

[8] That a plaintiff could make a Freedom of Information Act request to FSIS is irrelevant. It is the defendant who will have the required information (assuming the defendant's review and approval claim is accurate).

[9] As if to prove our point, ConAgra evidently had no trouble producing records of FSIS review after oral argument.  But as we have discussed, ConAgra should have submitted that evidence to the district court, not on appeal, and not through a 28(j) letter.

representation is not a label.  But in *Taylor AG Industries v. Pure-Gro*, we held that state law claims related to advertising that are "premised ultimately upon the inadequacy of the product label" are treated the same as a state law claim about the label itself.  54 F.3d 555, 561 (9th Cir. 1995).  We further held that a plaintiff's state law claim that a manufacturer had inadequate warnings at the point-of-sale of a product is preempted if federal law does not require the label to include such warnings.  *Id.*  That rule is logical and necessary.  Otherwise, plaintiffs could circumvent preemption by simply challenging an online picture of a label rather than the label itself.[10]

But here, the label and the website are not materially identical. The key website representation about the chicken products reads: "They're made with 100% natural, white meat chicken *and* without preservatives, artificial flavors, or artificial colors."  Applying our holding in *Taylor AG Industries*, and assuming that the product labels were reviewed by FSIS, Cohen cannot challenge the first half of that representation.  The phrase "They're made with 100% natural, white-meat chicken" is essentially identical to the representation on the product label—"Made with 100% Natural White Meat Chicken."  Any challenge to that phrase is thus "premised ultimately upon the inadequacy of the product label" and preempted.  *Taylor AG Indus.*, 54 F.3d at 561.

But the second half of that representation—"They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors"—is materially different

_____

[10] It is not clear if Cohen is challenging the image of the chicken products as misleading, but if he is, that claim would be preempted (assuming FSIS reviewed and approved the label).

from the representations on the label. As ConAgra acknowledges, the label "nowhere claims that the products, as a whole, . . . contain 'no preservatives.'" But the website representation *does* claim that the chicken products as a whole are made without preservatives, artificial flavors, or artificial colors. The conjunction "and" shows that the phrase "without preservatives, artificial flavors, or artificial colors" modifies the whole product, not just the "natural, white-meat chicken." Thus, the website representation materially differs from the product label. Accordingly, Cohen's state law claims challenging ConAgra's website representation that the chicken products as a whole contain no preservatives, artificial flavors, or artificial colors, are not preempted (whether or not the product *labels* were reviewed and approved by FSIS).

## V.

ConAgra urges us to affirm the district court's decision on different grounds, but we decline its invitation. ConAgra argues that (1) there is no plausible claim that its representations are false or misleading under California's reasonable consumer standard, *see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); (2) Cohen has failed to plead "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b); (3) Cohen has not alleged an injury in fact; (4) Cohen has not alleged a future harm, and thus cannot seek injunctive relief; and (5) this case should be referred to the agency to decide in the first instance, under the primary jurisdiction doctrine.[11] We decline to consider ConAgra's first four arguments, which ConAgra may reassert on remand. We reach only

---

[11] ConAgra incorporates by reference another argument in a footnote. We do not consider that argument. *See* Ninth Cir. R. 28-1(b).

ConAgra's last argument and conclude that the primary jurisdiction doctrine is inapplicable here.

The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "Primary jurisdiction is properly invoked when a claim . . . requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).  "The doctrine does not require that all claims within an agency's purview to be decided by the agency.  Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir. 1987)).

The issue here, whether ConAgra's product labels are false or misleading, is not a complicated issue or even an issue of first impression, as FSIS may have already decided the question.  There is also no risk of conflict between FSIS and courts because the PPIA preempts any state law claims that would impose requirements different from the federal requirements imposed by FSIS.  *See Webb*, 999 F.3d at 1203. Thus, none of the justifications for the primary jurisdiction doctrine exist here.  Moreover, the doctrine would require us to "either stay[] proceedings or dismiss[] the case without prejudice, so that the parties may seek an administrative ruling." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).  But "'[t]here is no formal transfer

mechanism between the courts and the agency'; rather, the parties are responsible for initiating administrative proceedings themselves." *Id.* (quoting *Syntek*, 307 F.3d at 782 n.3).  Here, it is unclear how Cohen could seek an administrative ruling, and ConAgra does not suggest a path forward.  For these reasons, we decline to invoke the primary jurisdiction doctrine.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**.[12]

---

[12] The parties shall bear their own costs on appeal.