# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT B

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
IAN PIKE (329183)
  ianp@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorney for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 8:20-cv-00637-DOC-ADS<br><br>CLASS ACTION<br><br>[PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>**[REDACTED]**<br><br>Date: August 29, 2022<br>Time: 8:30 a.m.<br>Judge: Hon. David O. Carter<br>Courtroom: 10A<br><br>Complaint Filed: April 1, 2020<br>Trial date: Not set. |

## I. INTRODUCTION

Plaintiffs respectfully submit this sur-reply brief in opposition to Conagra's motion to dismiss to address an argument and evidence raised for the first time in Conagra's reply memorandum. Conagra asserted that Plaintiff lacked "plausible, good-faith" allegations that the chicken Conagra uses in its products is not "natural." Dkt. 53 at 21:9-11. Further, Conagra submitted, for the first time on reply, unredacted versions of the sketch approval applications for its chicken products. The newly exposed evidence in these documents, which provides only a glimpse of transparency into Conagra's supply chain, confirms Plaintiff's allegation that Conagra's chicken products do not meet any standard of "natural."

## II. THE UNREDACTED SKETCH LABEL APPROVALS CONFIRM THAT CONAGRA'S CHICKEN PRODUCTS ARE NOT "NATURAL"

Conagra waited until it filed its reply brief to provide the unredacted evidence on which it bases its preemption defense, and it only produced the evidence at all because Plaintiff (correctly) cried foul on Conagra asking for dispositive relief on the basis of redacted documents. Although Plaintiff still opposes Defendant's request to take judicial notice of the documents, even if the Court considers the newly produced documents, *they actually help Plaintiff* by showing how Conagra's chicken does not qualify as "natural" under any test.

Contrary to Conagra's argument, there is no distinction between Plaintiff's definition of "natural" and the USDA's informal definition, which can be accurately summarized as (1) no artificial ingredients and (2) not more than "minimally processed." *See* Dkt. 53 at 17:26-18:1 (citing Dkt. 48-25; Dkt. 48-26). As a threshold issue, the USDA's informal definition of "natural" arguably lacks the "force of law" because it was not promulgated in conformity with the rulemaking procedures of the Administrative Procedure Act. *See Erringer v. Thompson*, 371 F.3d 625, 629-30 (9th Cir. 2004). Conagra is thus on shaky ground asking this Court to treat this uncertain

1

Case No.: 8:20-cv-00637-DOC-ADS
[PROPOSED] SURREPLY IN OPPOSITION TO MOT TO DISMISS FIRST AMENDED COMPLAINT

1  standard as black letter law. In any event, because there is no hard definition of
2  "natural," the concepts of "minimally processed" and "no artificial ingredients" must
3  be interpreted based on how reasonable people understand those terms, not based on
4  how Conagra would like the terms to be employed. Thus, Plaintiff's definition of "all
5  natural" is **the same as** the definition employed by USDA. For the purposes of this
6  motion, this Court may assume the USDA Policy Book definition controls. *See* Dkt.
7  48-25 at 110-12. Even under that definition, Conagra's documents reveal the chicken
8  fails the USDA's test for naturalness.

9       As Conagra must concede, a product cannot be called "natural" if it contains
10 any artificial ingredients. *See* Dkt. 53 at 17:26-27. One of facts gleaned from the
11 unredacted sketch label approvals is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 56-1 at 33. As explicitly stated on the
13 ▮▮▮▮▮▮▮▮ website, that product line, also referred to as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮,
14 includes meat made from chickens that are raised with antibiotics.[1] Antibiotics are not
15 "natural" ingredients. Although the FAC could plead this contention more explicitly,
16 when the Court interprets the allegations of the FAC in the "light most favorable" to
17 the Plaintiff and draws "all reasonable inferences" in his favor, antibiotics are
18 allegedly an artificial ingredient in Conagra's products. *See Manzarek v. St. Paul Fire*
19 *& Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Mehta v. U.S. Dep't of State*,
20 186 F. Supp. 3d 1146, 1148 (W.D. Wash. 2016); Dkt. 43 ¶¶3, 53, 57, 71, 72. There is
21 no inconsistency between antibiotics being an "artificial ingredient" and the consumer
22 expectation test. As alleged in the FAC, chemicals, including antibiotics,
23 bioaccumulate in commercially raised poultry, and consumers do not consider
24 chicken to be "natural" if it has been given antibiotics. Dkt. 43 ¶¶26, 63. Thus, a
25 finding that Conagra's chicken misleads consumers because it improperly contains

---

27 [1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 (last visited July 25, 2022).

1  artificial ingredients would mean the violation of state and federal law is based on the
2  same conduct, and not preempted. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th
3  Cir. 2013).

4        Conagra cannot point to any federal regulation that affirmatively **permits**
5  chicken raised with antibiotics to be labelled "natural." The nebulous definition of
6  "natural," as expressed in the FSIS policy book, simply prohibits the inclusion of "any
7  other artificial or synthetic ingredient" in the chicken if it will be called "natural." *See*
8  Dkt. 48-25 at 110. In contrast, antibiotic usage in poultry is regulated in conjunction
9  with the Food and Drug Administration, which prescribes specific tolerances for
10 antibiotic residues in the edible portions of commercially processed chicken and other
11 meats. *See generally* 21 C.F.R., pt. 556. But the federal standard for meat is that it is
12 "safe for human consumption" if testing reveals antibiotic concentrations below the
13 regulatory threshold for a given substance. *Id.* §556.5(c). Crucially, this is a different
14 standard than the "no artificial ingredients" standard that applies to "natural"
15 products, and nothing suggests the two standards are necessarily coterminous. Food
16 may be "safe for human consumption," but nonetheless ineligible to be referred to as
17 "natural." In other words, although it is legal to put antibiotics in chicken, it is not
18 necessarily legal to sell that chicken as "natural" if consumers would thereby be
19 misled. This is wholly consistent with the expectations of consumers being misled by
20 "natural" labelling, because the reasons consumers pay more for "natural" products
21 do **not** include a belief that products not labelled natural are unfit for human
22 consumption. *See* Dkt. 43 ¶¶21-27. Thus, because the chicken Conagra uses contains
23 an artificial ingredient that does not mesh with consumer's understanding of the term
24 "natural," the products themselves are misbranded.

25       Conagra's newly revealed documents disclose that its products also contain
26 [REDACTED] Dkt. 56-1 at 31, 34. Previously, the ingredient list for the
27 chicken products identified only "chicken skin." However, [REDACTED] is
28

Haeggquist & Eck, LLP

1  a materially different product than regular chicken skin. Processors create ███

2  ████████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████[2]███████████████████

4  █████████████████████████████████████████████████████████[3]████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████[4]█████████

12 ████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14     The problem, of course, is that this meat-product does not actually exist as any

15 part of the chicken, and ████████████████████████████████████████████

---

[2] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███

[3] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█

[4] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

███████████████████████████████████████

████ Before Conagra revealed the unredacted documents, the products at issue were known only to contain "chicken skin" at an undefined level of processing. *See, e.g.*, Dkt. 55-3 at 6. Now, we know the nuggets and breast patties contain highly processed ███████████████, which fails the test for "natural" because it is more than "minimally processed." Taken in conjunction with the presence of artificial ingredients, this more-than-minimal processing renders' Conagra's chicken unfit for labelling as "natural."

## III. CONCLUSION

Conagra initially hid the unredacted versions of its sketch label approval. Now that the Court can see their full content, they support Plaintiff's allegations by showing Conagra's chicken (1) contains artificial ingredients in the form of antibiotics; and (2) has been more than minimally processed as part of the transformation from raw chicken to chicken nugget. Plaintiff has fought long and hard to gain even this tiny peek behind the proverbial curtain into Conagra's procedures, and the results corroborate the allegations of misbranding in violation of state and federal law. The Court should deny the Motion to Dismiss and set a scheduling conference so the parties may resolve, after adequate discovery, whether Conagra has an affirmative defense on the merits.

Respectfully submitted,

Dated: July 28, 2022

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
IAN PIKE (329183)

By: */s/ Ian Pike*
IAN PIKE

225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
alreenh@haelaw.com
ianp@haelaw.com

ELSNER LAW & POLICY LLC
GRETCHEN ELSNER *(Pro Hac Vice)*
314 South Guadalupe Street
Sante Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY (134180)
MARC L. GODINO (182689)
1925 Century Park, East Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancy.com
mgodino@glancy.com
info@glancylaw.com

GLANCY PRONGAY & MURRAY LLP
DAVID J. STONE (208961)
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
dstone@glancy.com

Attorneys for Plaintiff and the Proposed Class