ANGELA SPIVEY (*pro hac vice*)
ANDREW PHILLIPS (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:   angela.spivey@alston.com
                andrew.phillips@alston.com

RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail:   rachel.lowe@alston.com

Attorneys for Defendant
**CONAGRA BRANDS, INC.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>                Defendant. | Case No.: 8:20-cv-00637-DOC<br><br>Assigned to the Hon. David O. Carter<br><br>**DEFENDANT CONAGRA BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION REQUESTING CERTIFICATION OF ISSUE FOR IMMEDIATE APPEAL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**<br><br>[Filed concurrently with the Notice of Motion; and [Proposed] Order]<br><br>Date:          May 1, 2023<br>Time:          8:30 a.m.<br>Courtroom:          10A |

# **TABLE OF CONTENTS**

I.    QUESTIONS PRESENTED ..................................................................... 1

II.   OVERVIEW ......................................................................................... 1

III.  RELEVANT BACKGROUND ............................................................... 8

IV.   ARGUMENT ...................................................................................... 11

      A.    The Court Should Certify Its March 20, 2023 Order for Interlocutory
            Review ..................................................................................... 11

            1.    The Court's Decision Turns on a Controlling Question of
                  Law ............................................................................... 12

            2.    There Is Substantial Ground for Difference of Opinion
                  Concerning This Controlling Question of Law ............................ 14

            3.    Resolution of This Controlling Question of Law Will
                  Materially Advance the Litigation .................................................. 16

      B.    The Court Should Stay the Case Pending the § 1292(b) Appeal ............. 17

      C.    In the Alternative, Conagra Respectfully Moves for Reconsideration .... 18

V.    CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adewol v. Frickenschmidt Foods LLC*,
  No. 4:22-cv-254, 2023 U.S. Dist. LEXIS 51476 (E.D. Mo. Mar. 27,
  2023) ............................................................................................................ 6

*Ahrenholz v. Bd. of Trs.*,
  219 F.3d 674 (7th Cir. 2000) ..................................................................... 12

*Bassiri v. Xerox Corp.*,
  463 F.3d 927 (9th Cir. 2006) ..................................................................... 19

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
  254 F.3d 882 (9th Cir. 2001) ..................................................................... 18

*Cohen v. ConAgra Brands, Inc.*,
  16 F.4th 1283 (9th Cir. 2021) ..............................................................*passim*

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) ..................................................................... 14

*Gasser v. Kiss My Face, LLC*,
  No. 17-cv-01675, 2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23,
  2017) ............................................................................................................ 8

*Helman v. Alcoa Glob. Fasteners Inc.*,
  No. 09-cv-1353, 2009 U.S. Dist. LEXIS 64720 (C.D. Cal. June 16,
  2009) .......................................................................................................... 13

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) ....................................................... 11, 12, 16

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  No. 10-md-02184, 2011 U.S. Dist. LEXIS 171393 (N.D. Cal. July 18,
  2011) .......................................................................................................... 13

*Jaco v. Winco Holdings, Inc.*,
  No. 1:18-cv-00301, 2019 U.S. Dist. LEXIS 107289 (E.D. Cal. June
  26, 2019) .................................................................................................... 12

*Nacarino v. Kashi Co.*,
  584 F. Supp. 3d 806 (N.D. Cal. 2022) ....................................................... 19

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ..................................................................... 15

*San Antonio Winery v. Jiaxing Micarose Trade Co.*,
  No. 20-cv-9663, 2021 U.S. Dist. LEXIS 211687 (C.D. Cal. June 1,
  2021) ............................................................................................... 12, 16, 17

*Steering Comm. v. United States*,
6 F.3d 572 (9th Cir. 1993) ................................................................. 12

*Trendsettah United States v. Swisher Int'l*,
No. 14-cv-1664, 2020 U.S. Dist. LEXIS 89951 (C.D. Cal. Apr. 14,
2020) ......................................................................................... 17, 18

*Webb v. Trader Joe's Co.*,
999 F.3d 1196 (9th Cir. 2021) ........................................................... 6

STATUTES

28 U.S.C. § 1292(b) .................................................................*passim*

OTHER AUTHORITIES

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal
Practice & Procedure* § 3930 (3d ed. 2012) ..................................... 15

78 Fed. Reg. 66826 (Nov. 7, 2013) ......................................*passim*

88 Fed. Reg. 2798 (Jan. 18, 2023) ...................................................... 20

FSIS, *FSIS Guideline for Label Approval* (Jan. 2023) ....................... 8, 15

## I. QUESTIONS PRESENTED

(1) Should the Court amend its Order entered on March 20, 2023 (Dkt. 72) granting in part and denying in part Defendant Conagra Brands, Inc.'s ("Conagra") Motion to Dismiss to certify its decision for interlocutory appeal to permit the Court of Appeals for the Ninth Circuit to determine whether, under 9 C.F.R. § 412.2, a label on a poultry or meat product may be generically approved based on a sketch approval for a prior version of that product, where there have been no modifications related to the sketch-approved special claims?

(2) In the alternative, should the Court reconsider its prior Order in light of newly available guidelines from USDA's Food Safety and Inspection Service ("FSIS") that confirm Conagra's interpretation of the regulation?

## II. OVERVIEW

Conagra seeks interlocutory review of a purely legal issue of regulatory interpretation that has immense importance to the entire meat and poultry industry: the standard that applies in determining whether a label is deemed reviewed and approved under the FSIS generic approval process.

"Generic label approval refers to the prior approval of labels or modifications to labels by the Agency [USDA] without submitting such labels to FSIS for sketch approval. . . . Although such labels are not submitted to FSIS for approval, they are deemed to be approved and, therefore, may be applied to product in accordance with the Agency's prior label approval system." 78 Fed. Reg. 66826, 66827 (Nov. 7, 2013). Under existing regulations, establishments are required to submit for evaluation to FSIS—i.e., submit for sketch approval—"only certain types of labeling, e.g., labels for temporary approval, labels for products produced under religious exemption, . . . and

labels with claims and special statements [like 'All Natural']." *Id.* at 66827. All other claims may be generically (internally) approved by the establishment. In addition, "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim." *Id.* at 66830.

The generic approval system is immeasurably important to the meat and poultry producing industries. If meat and poultry producers were required to submit every single label to FSIS for review, FSIS would be overwhelmed by paperwork, long lead times for label approvals would stymie the introduction of food products into the market (harming consumers), and producers would have to redirect substantial resources to administrative tasks. *See id.* at 66828, 66833 (noting that Final Rule to expand the circumstances in which FSIS can generically approve the labels of meat and poultry products would decrease costs and utilize FSIS and industry resources more effectively, lead to the faster introduction of innovative products into the marketplace and the enhancement of food safety, and allow the marketplace to more efficiently meet demand "while not negatively affecting consumer protection from misbranded product").

This case threatens that regulatory regime, and would unwind the efficiencies FSIS gained in implementing, and then expanding, the generic approval process. Before the Ninth Circuit, Plaintiff alleged that Conagra "used the generic approval process for its labels, improperly bypassing FSIS review." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). Based on Plaintiff's argument that Conagra had "bypassed" FSIS review, the Ninth Circuit found that whether FSIS review "occurred at all" was in dispute. And when parties dispute whether FSIS review occurred, "the defendant must produce evidence that the label was reviewed and approved by FSIS." *Id.* Accordingly, the Ninth Circuit ordered a "limited" remand, focused solely on whether Conagra's

label was reviewed and approved by FSIS. If the evidence showed that Conagra's label was approved, then Plaintiff's claims would be preempted by the Poultry Products Inspection Act's ("PPIA") express preemption provision, which precludes a plaintiff from trying to "argue or show that FSIS's approval decision was wrong." *Id.* at 1290.

***Crucially***, the Ninth Circuit noted that because "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim," Conagra's evidence of sketch approval for one chicken product would allow generic approval of other products—unless Plaintiff could plausibly allege that there was a misleading modification between the products. *Id.* at 1289 n.6. But merely challenging that a previously approved special statement (e.g., an "All Natural" statement) was misleading, absent a misleading modification related to that special statement, could not save Plaintiff's claims from preemption. In reaching that conclusion, the Ninth Circuit relied on FSIS's own interpretation of the generic approval regulation set forth in the Final Rule expanding that process. *Id.* (citing *Prior Label Approval System: Generic Label Approval*, 78 Fed. Reg. 66826-01, 66830 (Nov. 7, 2013)). ***Moreover***, having reviewed the sketch approval that Conagra submitted as supplemental authority to the Ninth Circuit, the Ninth Circuit recognized that this "evidence would preempt all of [Plaintiff's] product-label claims to all product labels." *Id.*

On remand, Conagra produced irrefutable evidence that 7 of the 20 challenged Chicken Products received FSIS sketch approval. Conagra also submitted evidence for the remaining 13 products, showing that there was a previously sketch approved label that had the same challenged special claims, and that there were no modifications to the

product or label related to the special claim.[1] For instance, Conagra obtained sketch approval for the Original Chicken Nugget (Box), and then generic approval of the Original Chicken Nugget (Family Pack), given that: (1) there were no changes at all to the product (i.e., no additional or different ingredients, no changed product form, etc.); and (2) there were no labeling changes related to the special claims. Thus, it would have been a waste of Conagra's and FSIS's resources to seek re-approval of the product label, when nothing changed but the packaging size and type—which is precisely why generic approval exists in the first place. As another example, Conagra obtained sketch approval for Chicken Breast Nuggets, and then generically approved the Chicken Breast Patties. Again, there were no modifications related to the special claims: Conagra changed the shape of the product from a nugget to a patty and did not add any new ingredients. FSIS already approved the "All Natural" claim on the Chicken Nuggets, and changing the shape of the product is entirely unrelated to whether the product has natural ingredients.

Despite the Ninth Circuit's admonition that Plaintiff could only escape preemption if he plausibly alleged there was a *misleading* modification as between the sketch approved product and the generically approved product, Plaintiff did not point to *any* modification. Instead, Plaintiff challenged whether a meat or poultry producer could ever base generic approval for one product off of sketch approval for another product—i.e., whether changing the shape of the Chicken Breast Nuggets to Chicken Breast patties required seeking re-approval despite the fact there were no modifications

---

[1] In particular, Conagra submitted the label for each product, which includes its ingredient list, and a chart indicating which sketch approved product served as the predicate for each generically approved product and confirming that there were no modifications of the product that would relate to the special claim. *See* Dkt. 48-3 (Chart), 48-4 (Sketch Approvals), 48-5 through 48-24 (Product Labels).

related to the special claim that initially triggered sketch approval.[2] *See* Dkt. 72 at 10 ("Plaintiff disputes Defendant's interpretation [of the generic approval regulation], arguing that Defendant cannot receive sketch approval for one product label and unilaterally decide another product is sufficiently similar so as to be subject to generic approval. . . . Put differently, Defendant 'cannot use sketch approval for the chicken nugget as a gateway to generically approve the labelling on a chicken patty or some other product.'").

The Court appears to have agreed with Plaintiff's interpretation of the regulation, finding that the evidence Conagra presented—that Conagra received sketch approval for a prior iteration of a product (e.g., Chicken Breast Nuggets) and then generically approved a version of that product where the "modifications . . . involve changes to the . . . products' shapes, so the modifications are unrelated to the special claims already reviewed and approved by FSIS" (e.g., Chicken Breast Patties)—fails to establish that the products have been reviewed and approved by FSIS. Dkt. 72 at 10. In other words, if the evidence that Conagra simply changed the packaging of the Original Chicken Nugget from Box to Family Pack or changed the shape of the Chicken Breast Nuggets to a patty is insufficient to establish that the Original Chicken Nugget (Family Pack) and Chicken Breast Patties were generically approved by FSIS, then the Court appears to have sided with Plaintiff's view of the regulation. If a poultry manufacturer wants to sell both an All-Natural dinosaur shaped nugget and the same nugget in alphabet-form, using the same formulation and ingredients, the manufacturer would apparently need to

---

[2] For clarity, while the parties and the Court have referred to chicken nuggets and chicken patties as different "products," the reality is that a chicken nugget reshaped into a chicken patty using the same ingredients and labeling is just a different version of a prior product.

burden FSIS by seeking sketch approval of both.

The impact of this interpretation of the regulation is far-reaching. As an initial matter, the interpretation upends industry practice of relying on prior sketch approved special claims to generically approve subsequent versions of a product that have not undergone any modifications related to the special claims. This will require the submission of more sketch approval applications, stretching thin the resources of FSIS and the industry. More broadly, as this case currently stands, it threatens to open the floodgates of meat and poultry labeling lawsuits. As is the case here, plaintiffs can challenge a host of products that have already received FSIS approval, dispute (without any supporting factual allegations) that the labels underwent FSIS review at all, force the defendant to submit approval evidence at the motion to dismiss stage, and then challenge any generically approved products by disagreeing with the premise that those products were entitled to undergo generic review.[3] Indeed, here, the only relevant allegations in Plaintiff's Complaint are that:

> Conagra evaded the federal regulatory regime by using a much less rigorous process known as "generic" approval for its Chicken Products labels. When a manufacturer like Conagra uses generic approval, the federal agency does not actually review the labels before the products are marketed to consumers. Thus, Conagra made an end-run around the

---

[3] Indeed, prior to the Ninth Circuit opinion in this case, courts routinely found that plaintiffs' labeling claims were preempted based on the product label alone, which includes a stamp indicating it has been subject to FSIS approval (sketch or generic). *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("The district court took judicial notice of the labels, and properly considered the inspection of the labels as part of the preemption analysis, and we agree that the . . . statement on the label was federally approved."); *Adewol v. Frickenschmidt Foods LLC*, No. 4:22-cv-254, 2023 U.S. Dist. LEXIS 51476, at *9 (E.D. Mo. Mar. 27, 2023) (finding claims challenging label of meat product were preempted and relying on inspection mark). And the Ninth Circuit previously held that a plaintiff cannot rely on "gross speculation" that a product had not received FSIS approval and announced that it would not "condone the use of discovery to engage in fishing expeditions." *Webb*, 999 F.3d at 1204.

MEMORANDUM ISO DEF.'S MOT. FOR CERT. OF IMMEDIATE APPEAL
Case No. 8:20-cv-00637-DOC

federal regulatory regime . . . .

First Amended Complaint ("FAC") ¶ 55 (Dkt. 43 at 20).[4] And, even though Conagra submitted evidence showing the challenged products underwent generic approval (i.e., the prior sketch approvals and the chart showing there were no modifications related to special claims) and Plaintiff has never identified a misleading modification that would preclude generic approval, Plaintiff has survived a motion to dismiss. This provides a playbook for an all-out assault on the industry.

Conagra accordingly seeks to certify the following important question for interlocutory review:

> Whether a label may be generically approved based on a sketch approval for a prior version of that product, where there have been no modifications related to the sketch-approved special claims?

Interlocutory review is appropriate and warranted here. This is a pure legal question involving the interpretation of a regulation. There is substantial ground for difference of opinion. Although the Court seemingly adopted Plaintiff's view that a sketch-approved chicken nugget could never be used to generically approve a chicken patty, the Ninth Circuit's opinion (based on FSIS's interpretation) concludes otherwise. *See Cohen*, 16 F.4th at 1289 n.6 (noting that "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim" and that Conagra's evidence "would preempt all of [Plaintiff's] product-label claims to all product labels"). Moreover, FSIS released industry guidelines earlier this year that reaffirm this interpretation. FSIS's January 2023 Guidelines for Label Approval state "once a label is approved there are several

---

[4] What Plaintiff calls an "end-run around the federal regulatory regime" is simply Conagra's use of the generic approval process, which is undeniably part of that federal regulatory regime—a part which FSIS has been intent on expanding, not curtailing.

changes that can be made to the label that do not impact the previously approved claims." One of those changes is "**[c]hanges to the form of the product (e.g., changing from link sausage to bulk sausage or changing from sausage patties to sausage links)**." *See* January 2023 FSIS Guideline for Label Approval.[5] (emphasis added). Finally, resolution of this controlling question of law would materially affect the ultimate outcome of the litigation, as it would substantially narrow the scope of this case. In the event the Court certifies the Order for interlocutory appeal, Conagra also respectfully requests a stay, which would best serve the interests of judicial economy.

In the alternative, Conagra respectfully requests that the Court reconsider its prior Order in light of this new FSIS guidance, which confirms Conagra's interpretation of the regulations.

## III.   **RELEVANT BACKGROUND**

Plaintiff challenges the product labeling of Conagra's "Chicken Products," twenty different varieties of Banquet-brand chicken manufactured by Conagra, such as chicken nuggets and chicken patties. Dkt. 43 ¶ 17. According to Plaintiff, the Chicken Products are falsely or misleadingly labeled and marketed as "100% NATURAL," "NO PRESERVATIVES," "NO ARTIFICIAL COLORS," and "NO ARTIFICIAL FLAVORS," when they actually contain non-natural ingredients and preservatives. *Id.*

---

[5] Available at https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf, and attached as **Exhibit A**. The Court previously found that judicial notice is not necessary for documents such as the FSIS's *Food Standards and Labeling Policy Book* and FSIS guidance on its website because these are more akin to legal authority than adjudicative facts of which the Court could take notice. Dkt. 72 at 7. In any event, "[g]overnment agency websites, and the information contained therein, are matters of public record appropriate for judicial notice under Rule 201," *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675, 2017 U.S. Dist. LEXIS 175273, at *31 (N.D. Cal. Oct. 23, 2017), so to the extent judicial notice is required, it is proper here. The Guidelines are publicly available on FSIS's website.

at ¶¶ 4, 31. Plaintiff has asserted claims under California's Consumers Legal Remedy Act, Unfair Competition Law, and False Advertising Law.

The Court previously dismissed all of those claims with prejudice, finding they were preempted under the federal PPIA. In particular, the Court held that the PPIA preempted Plaintiff's claims because Plaintiff was attempting to challenge USDA's FSIS pre-approval of the labeling of the Chicken Products through his state law consumer protection claims. Dkt. 29 at 4. That challenge fell squarely within the PPIA's preemption clause, which precludes a state from imposing labeling requirements in addition to or different than the PPIA. *Id.* "[E]xposing Defendant to liability under state law on the basis of said labeling" approved by FSIS would impose "a different or additional standard under state law." *Id.* Plaintiff appealed.

During oral argument on appeal, Plaintiff for the first time alleged—wrongly, and based on nothing in the Complaint or the appellate record—that the challenged product labels were never actually reviewed and approved by FSIS. In fact, as Conagra later explained in a Fed. R. App. P. ("FRAP") 28(j) letter to the Ninth Circuit, Conagra had already provided Plaintiff with FSIS sketch approvals (i.e., non-generic approval) for two of the challenged products during settlement discussions.[6] When Conagra provided Plaintiff with those two sketch approvals, Conagra also explained that the remaining products were generically approved based on those same sketch approvals, because they only differed from the sketch-approved products in ways unrelated to the special claims (e.g., a chicken nugget versus a chicken patty using the same ingredients). Indeed, as

---

[6] *See Cohen v. Conagra Brands, Inc.*, No. 20-55969 (Sept. 8, 2021), Dkt. 57. Conagra only submitted those sketch approvals in the first instance on appeal because Plaintiff raised a new argument on appeal, during oral argument, without any basis in the Complaint or appellate record.

Conagra noted in its FRAP 28(j) Letter to the Ninth Circuit, FSIS had previously confirmed that it "intended to permit the generic approval of previously approved labels containing special claims when the only modification involves changes unrelated to the special claim." 78 Fed. Reg. 66826, 66830 (Nov. 7, 2013). In addition, "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim." *Id.*

As a result of Plaintiff's assertions, the Ninth Circuit found in its October 26, 2021 opinion that "when the parties dispute whether FSIS review occurred at all, the defendant must produce evidence that the label was reviewed and approved by FSIS." *Cohen*, 16 F.4th at 1289. Further, when the fact of whether FSIS review occurred at all is disputed, "the mere existence of the label is insufficient to establish that it was reviewed and approved by FSIS." *Id.* Given that the only evidence of approval before the Ninth Circuit was the label itself (because Plaintiff had not previously challenged whether FSIS had approved the labels), the Ninth Circuit reversed the Court's decision that all labeling claims were preempted and remanded. But the Ninth Circuit emphasized "the ***limited nature***" of its remand. *Id.* at 1290 (emphasis added).

And, critical for this Motion, the Ninth Circuit directly addressed whether prior sketch approvals could be used for generic approval where a product has not undergone any modifications related to the approved special claims in its footnote 6:

> After argument, ConAgra filed a Federal Rule of Appellate Procedure 28(j) letter including an application for sketch approval for one of its chicken products, with a stamp showing FSIS approved the application. The "approved" label contains the same representations as those that Cohen challenges here. And because "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim," Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. 66826-01, 66830 (Nov. 7, 2013), ***ConAgra's evidence would preempt <u>all</u> of Cohen's product-label claims to***

10

***all product labels, (unless he can plausibly allege the modification is misleading). Cohen does not do so here.*** Instead, he alleges that the special statements (which are unchanged) are misleading. Thus, ConAgra's evidence would establish that the challenged statements were reviewed by FSIS and would preempt Cohen's claims. . . .

On remand, ConAgra may submit its approval evidence to the district court, which may take judicial notice of the evidence (if appropriate) or allow limited discovery only into ConAgra's preempted-by-approval defense.

*Id.* at 1289 n.6 (emphasis added).

The Ninth Circuit's limited remand left one issue on the table with respect to preemption—whether to take judicial notice of Conagra's evidence that its labels were reviewed and approved by FSIS. Once the Court decided to do so in its March 20, 2023 Order (Dkt. 72 at 6), the Ninth Circuit already laid out the consequence of that decision, namely a finding that the evidence preempts "all of Cohen's product-label claims to all product labels." *Id.* This Court ultimately departed from the Ninth Circuit's interpretation of the generic approval regulation, and instead concluded that Conagra's "evidence fails to establish that the [products Conagra subjected to generic approval] have been reviewed and approved by FSIS." Dkt. 72 at 10.

## IV.   <u>ARGUMENT</u>

### A.   <u>The Court Should Certify Its March 20, 2023 Order for Interlocutory Review</u>

A district court may certify an order for interlocutory appellate review under 28 U.S.C. § 1292 if the following three requirements are met: (1) the issue to be certified must involve a "controlling question of law," (2) there must be "substantial ground for difference of opinion" on the issue, and (3) it must be likely that an interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Here, all three factors are met.

## 1.  The Court's Decision Turns on a Controlling Question of Law

For purposes of § 1292(b), "controlling" means that "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. The controlling question of law in an interlocutory appeal generally is a pure legal question involving no factual issues; however, so long as at least one pure legal question is identified, the presence of another mixed question of law and fact is of no moment and an order can be certified for appeal to resolve all questions "material to the order." *Steering Comm. v. United States*, 6 F.3d 572, 576 (9th Cir. 1993) (finding it proper to certify a mixed question of law and fact material to the order when it is coupled with a pure legal question).

The hallmarks of a "pure legal question" are that the issue is "free from a factual contest" and is something "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 677 (7th Cir. 2000). An oft-cited example of a pure question of law is a question over "the meaning of a statutory or constitutional provision [or] regulation." *San Antonio Winery v. Jiaxing Micarose Trade Co.*, No. 20-cv-9663, 2021 U.S. Dist. LEXIS 211687, at *7 (C.D. Cal. June 1, 2021) (quoting *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1089 (E.D. Cal. 2008)); *see also Ahrenholz*, 219 F.3d at 676 ("We think 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to the question whether the party opposing summary judgment had raised a genuine issue of material fact."); *Jaco v. Winco Holdings, Inc.*, No. 1:18-cv-00301, 2019 U.S. Dist. LEXIS 107289, at *6 (E.D. Cal. June 26, 2019) (noting that the question of whether an employee's right to accrued and unused vacation time upon

termination can be forfeited by the terms of a CBA is a pure question of law involving the interpretation of California Labor Code § 227.3"); *In re Google Inc. St. View Elec. Commc'ns Litig.*, No. 10-md-02184, 2011 U.S. Dist. LEXIS 171393, at *10 (N.D. Cal. July 18, 2011), *appeal accepted*, No. 11-80186 (9th Cir. Oct. 17, 2011) (certifying for appeal court's interpretation of the term "radio communication" in the Wiretap Act); *Helman v. Alcoa Glob. Fasteners Inc.*, No. 09-cv-1353, 2009 U.S. Dist. LEXIS 64720, at *16 (C.D. Cal. June 16, 2009), *appeal accepted*, No. 09-56501 (9th Cir. Sept. 16, 2009) (certifying for appeal issue of statutory interpretation concerning the Death on the High Seas Act).

Here, the issue Conagra seeks to certify for immediate appeal is a pure legal question involving whether a label may be generically approved based on a sketch approval for a prior version of that product, where there have been no modifications related to the sketch-approved special claims. As reflected in the Court's Order (Dkt. 72 at 10), under Conagra's interpretation of the regulation—based on a Final Rule promulgated by FSIS—the answer to that question is "yes." Plaintiff, however, "dispute[d] Defendant's ***interpretation***" of the generic approval regulation, "arguing that Defendant cannot receive sketch approval for one product label and unilaterally decide another product is sufficiently similar so as to be subject to generic approval." (Dkt. 72 at 10 (emphasis added)). Plaintiff's interpretation of the generic approval regulation was based on what he referred to as the "legislative history of generic approval," (Dkt. 51 at 21), which were earlier generic approval provisions that were *removed and replaced* after FSIS decided to "expand the circumstances" in which it would generically approve the labels of meat and poultry products. 78 Fed. Reg. 66826, 66827 (Nov. 7, 2013).

This issue is indisputably a "pure legal question." It is a matter of regulatory interpretation, a quintessential abstract legal question divorced from the facts. The Court referred to the parties' competing "interpretations" of the regulation. The parties supported those interpretations by looking to how the relevant federal agency has interpreted its own regulation and by pointing to prior iterations of generic approval regulations. This is not a situation where the Ninth Circuit must hunt through a voluminous *factual* record. Moreover, this legal question is "controlling" as it would materially affect the outcome of litigation. If the answer to the question is yes, as Conagra contends, then the labeling claims related to the products at issue that received generic approval are preempted. The Court has already taken judicial notice of the sketch approvals submitted by Conagra, Conagra has affirmatively shown that the modifications are unrelated to the special claims already reviewed and approved by FSIS (*see* Dkt. 48-3), and Plaintiff has *never alleged* or argued otherwise.

### 2.  There Is Substantial Ground for Difference of Opinion Concerning This Controlling Question of Law

To determine if a "substantial ground for difference of opinion" exists under § 1292(b), courts must examine to what extent the controlling law is unclear. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Courts traditionally will find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (citation omitted). To be clear, interlocutory appellate jurisdiction "does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief. . . . [W]hen novel legal issues are presented, on which

fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Moreover, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3930, at 494-95 (3d ed. 2012).

Here, there is tension between the Ninth Circuit's opinion and the result reached by this Court. Again, the Ninth Circuit noted in footnote 6 of its opinion that: (1) previously approved labels containing special claims ***may be generically approved*** if the only modification involves changes unrelated to the special claim (based on FSIS's interpretation of the regulation); and (2) Conagra's evidence would establish that the challenged statements were reviewed by FSIS and would preempt "all of" Plaintiff's claims for "all product labels." *Cohen*, 16 F.4th at 1289 n.6. Plaintiff's only out was to plausibly allege there was a misleading modification as between the sketch approved product and generically approved product. *Id.* He did not do so.

Moreover, FSIS has reaffirmed its view that a product sketch approved in one form can be used to generically approve a product in another form. FSIS specifically provided the following example of when a sketch approval from one product could be used for another: "[c]hanges to the form of the product (e.g., changing from link sausage to bulk sausage or changing from sausage patties to sausage links)." *See* Exhibit A at p. 22. There is no conceivable difference between generically approving sausage links based on a sketch-approved sausage patty (where there have been no modifications related to the approved special claims) and generically approving chicken patties based

on a sketch-approved chicken nugget.

This Court reached a different conclusion, failing to find that the challenged products that underwent generic approval had been "reviewed and approved by FSIS." Dkt. 72 at 10. That conclusion implicitly rejects the regulatory interpretation proffered by Conagra (and echoed by the Ninth Circuit and FSIS), that the label of a product that previously received sketch approval can be generically approved where there are modifications to the product unrelated to the approved special claims. Otherwise, the Court would have arrived at the same outcome as the Ninth Circuit and found that all product-label claims as to all product labels were preempted. The daylight between the Ninth Circuit's opinion (and FSIS's interpretation of the regulation) and this Court's order demonstrates there is a "substantial ground for difference of opinion" among reasonable and fair-minded jurists.

But even if there were no apparent conflict between the Court's Order and the Ninth Circuit's footnote, certification for interlocutory appeal would still be warranted given that this is a novel legal question that no court has addressed beyond this Court and the Ninth Circuit.

### 3. Resolution of This Controlling Question of Law Will Materially Advance the Litigation

When determining whether an issue meets the third criteria of § 1292(b), courts consider whether immediate appellate review could "avoid protracted and expensive litigation" and "materially affect the eventual outcome of the litigation." *San Antonio Winery*, 2021 U.S. Dist. LEXIS 211687, at *8 (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026-27). However, "[t]he Ninth Circuit has not limited 1292(b) motions to actions where the question is dispositive of the entire action," so the

controlling question of law "does not need to dispose of the litigation, only advance its ultimate termination." *Id.* (citation omitted).

Appellate review could materially advance the ultimate termination of this litigation because a decision in Conagra's favor would "preempt all of [Plaintiff's] product-label claims to all product labels." *Cohen*, 16 F.4th at 1289 n.6. Although that would not dispose of the entire case, it would drastically reduce the size and scope of the lawsuit, leaving only Plaintiff's website-based claims related to representations that "the chicken products as a whole contain no preservatives, artificial flavors, or artificial colors." *See id.* at 1291. In that posture, the case would be well-situated for an early motion for summary judgment addressing whether any ingredient qualifies as a preservative, artificial flavor, or artificial color; or, a narrowly tailored challenge as to proving reliance on website representations on a classwide basis.

## B.   The Court Should Stay the Case Pending the § 1292(b) Appeal

If the Court certifies the Order for interlocutory appeal, Conagra also respectfully requests that the case be stayed here until the Ninth Circuit resolves the appeal. If the Ninth Circuit adopts Conagra's interpretation of the relevant regulation, then the scope of this case will have been substantially reduced, and the stay will have saved the parties and the Court from the time and expense of any needless discovery. *See Trendsettah United States v. Swisher Int'l*, No. 14-cv-1664, 2020 U.S. Dist. LEXIS 89951, at *3 (C.D. Cal. Apr. 14, 2020) (noting that "the parties will have incurred any discovery costs inefficiently, or possibly needlessly, if the Court does not issue a stay, and the Ninth Circuit issues a ruling contrary to this Court's"). Plaintiff will not be materially prejudiced by a relatively brief stay that will provide the parties clarity on the scope of remaining issues, and Plaintiff will benefit from not undertaking the cost of inefficient

or needless discovery. The additional factors of likelihood of success on the merits—which need not rise to the level of "more likely than not"—and the public interest also weigh in favor of a stay. *Id.* at *3-4. Given the Ninth Circuit's prior order and FSIS's interpretation, Conagra has at least a "substantial" case for relief on the merits, and the public interest would be served by a stay because "it is a more efficient use of judicial resources and will help avoid costly and unnecessary litigation." *Id.* at *4.

## C.   In the Alternative, Conagra Respectfully Moves for Reconsideration

"As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Under the Local Rules of this Court:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

Here, Conagra requests reconsideration based on the recent January 2023 FSIS Guidelines, which were not available at the time of the parties' briefing.[7] These

---

[7] The "[c]hanges to the form of the product" entry in the FSIS Guidelines bears a red asterisk, denoting that this is a new example of when revisions do not impact the previously approved special statement and the label can be generically approved, which was not included in previous guidelines. Despite the exercise of diligence, Conagra's litigation counsel was unaware of this new entry until it received the Court's Order and began to research this Motion. Prior to the update, Conagra had consistently operated under the well-founded belief that generic approval was appropriate where there were changes to the form of a sketch approved product that did not relate to the approved special claims, which belief was further buttressed by the Ninth Circuit's ruling.

Guidelines make unmistakably clear that FSIS does permit generic approval of a chicken patty based on a sketch approved chicken nugget. And FSIS's interpretation of the generic approval regulation is highly persuasive, if not controlling authority. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) ("[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" (quoting *Auer*)); *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 811 (N.D. Cal. 2022) (assuming without deciding that FDA interpretation did not warrant *Auer* deference, but noting it served as "persuasive—if ultimately redundant—support" for defendant's position and adopting FDA interpretation).

Finally, although it is not entirely clear from the Court's Order, if the Order does accept Conagra's (and the Ninth Circuit's and FSIS's) interpretation of the generic approval regulation and still found that Conagra's evidence is insufficient to establish that the challenged products received generic approval, Conagra seeks reconsideration on the ground that the Court failed to consider the evidence presented demonstrating that there were no modifications related to the special claims as between the sketch approved and generically approved products. The Ninth Circuit counseled that the only way Plaintiff could escape preemption as to ***all claims for all product labels*** was to plausibly allege a misleading modification (e.g., the addition of a synthetic ingredient from the prior sketched approved version of the product to the generically approved version). Conagra submitted a chart demonstrating that there were no such modifications, and Plaintiff failed to point to any modification at all (instead, simply challenging the availability of generic approval for these products). Under the Ninth Circuit's order, if Conagra is correct about the interpretation of the regulation (and it

19

is), then all of Plaintiff's labeling claims must be dismissed as preempted.

It is also unclear what additional evidence would be required to show there has been no modification between the sketch approved and generically approved products. Conagra submitted the labels of the sketch approved and generically approved products, which shows that: (1) there were no misleading labeling changes related to the special claims; and (2) there was no misleading ingredient changes related to the special claims. FSIS's Labeling and Program Delivery Staff ("LPDS"), which reviews sketch applications, only considers written labeling materials. 88 Fed. Reg. 2798, 2799, 2803 (Jan. 18, 2023). Conagra has submitted the relevant written materials. All that is needed to see if a modification related to the special claims has occurred or not is a comparison of the generic approved labels and sketch approved labels. Here, that comparison shows there have been no such modifications, and Plaintiff has not alleged or even argued otherwise. Accordingly, all of Plaintiff's labeling claims are preempted.

## V.     **CONCLUSION**

For the foregoing reasons, Conagra respectfully requests that the Court amend its Order to certify for interlocutory appeal the legal question of the proper interpretation of 9 C.F.R. § 412.2 (the generic approval regulation) and, if certified, stay this matter pending that appeal. In the alternative, Conagra respectfully requests that the Court reconsider its prior Order.

DATED: April 3, 2023          */s/ Angela Spivey*
                              ANGELA SPIVEY
                              Attorney for Defendant
                              **CONAGRA BRANDS, INC.**