ANGELA SPIVEY (*pro hac vice*)
ANDREW PHILLIPS (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:   angela.spivey@alston.com
             andrew.phillips@alston.com

RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail:   rachel.lowe@alston.com

Attorneys for Defendant
**CONAGRA BRANDS, INC.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 8:20-cv-00637-DOC<br><br>Assigned to the Hon. David O. Carter<br><br>**DEFENDANT CONAGRA BRANDS, INC.'S REPLY IN SUPPORT OF MOTION REQUESTING CERTIFICATION OF ISSUE FOR IMMEDIATE APPEAL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**<br><br>Date:         May 1, 2023<br>Time:        8:30 a.m.<br>Courtroom:         10A |

## TABLE OF CONTENTS

I. ARGUMENT ..........................................................................................................4

    A. The Court Should Certify Its March 20, 2023 Order for Interlocutory Review ...............................................................................................................4

        1. Conagra's Motion Raises a Controlling Question of Law ..............5

        2. There Is Substantial Ground for Difference of Opinion..................7

        3. Resolution of This Controlling Question of Law Will Materially Advance the Litigation....................................................................9

    B. The Court Should Stay Discovery .........................................................12

    C. In the Alternative, the Court Should Grant Conagra's Motion for Reconsideration................................................................................................12

II. CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambrosio v. Cogent Communs., Inc.*,
   No. 14-cv-02182, 2016 U.S. Dist. LEXIS 25429 (N.D. Cal. Feb. 29, 2016) ...... 6

*Cohen v. ConAgra Brands, Inc.*,
   16 F.4th 1283 (9th Cir. 2021) ................................................................. *passim*

*Kennedy v. District of Columbia*,
   145 F. Supp. 3d 46 (D.D.C. 2015) ................................................................ 3, 9

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................ 8

*Steering Comm. v. United States*,
   6 F.3d 572 (9th Cir. 1993) ....................................................................... 5, 6, 8

*Webb v. Trader Joe's Co.*,
   999 F.3d 1196 (9th Cir. 2021) ...................................................................... 7, 9

**STATUTES**

28 U.S.C. § 1292(b) ............................................................................... *passim*

**OTHER AUTHORITIES**

78 Fed. Reg. 66826 (Nov. 7, 2013) ................................................................ 9, 13

88 Fed. Reg. 2798 (Jan. 18, 2023) ....................................................................... 5

FSIS, *FSIS Labeling Overview and Generic Approval* (Oct. 21, 2014) ................ 13

Plaintiff[1] incorrectly characterizes Conagra's Motion as raising a fact-laden question for immediate appeal based on nothing more than Conagra's disagreement with the Court's ruling that would do little to impact the outcome of this case, and that would only delay inevitable discovery into a host of wide-ranging topics. None of that is true.

**Conagra's Motion presents a purely legal issue**. Conagra seeks interlocutory review of the legal issue of how to interpret USDA's Food Safety and Inspection Service's ("FSIS") generic label regulation found at 9 C.F.R. § 412.2 and, in particular: whether a label on a poultry or meat product can be generically approved under § 412.2 based on a sketch approval for a prior version of that product, where there have been no modifications related to the sketch-approved claims (such as changing the product's shape)? Or, using FSIS's terminology: do "[c]hanges to the form of the product" qualify as "[c]hanges to labels approved with special statements and claims not requiring additional LPDS [FSIS's Labeling and Program Delivery Staff] review?" Dkt. 73-2 at 21-22. The hypothetical ancillary questions posed in Plaintiff's Opposition brief do not convert this issue of regulatory interpretation into a question of fact, they are red herrings that do not impact the preemption analysis, and the fact that the Ninth Circuit could remand the case following its decision so that this Court can apply the law to undisputed, judicially noticed facts does not militate against certifying the question for appeal.

**The question presents a substantial ground for difference of opinion.** FSIS has already answered the question posed in Conagra's Motion in the affirmative. According to FSIS's Guideline for Label Approval:

> 9 CFR 412.2 allows for labels to be generically approved provided they do not fall into any of the categories of the labels that must be evaluated by

---

[1] Plaintiff's response to Conagra's Motion was due on April 10, 2023 (21 days before the scheduled hearing). However, Plaintiff did not file his Opposition until April 17, 2023. (ECF No. 79.) Accordingly, Conagra is submitting this Reply within seven days of receipt of Plaintiff's Response.

>LPDS. Included in that group of labels are those labels that have a special statement or claim that were previously approved by LPDS. Thus, once a label is approved there are several changes that can be made to the label that do not impact the previously approved claims. **These revisions do not impact the previously approved special statement or claim. In addition, for the additional changes to be generically approved, there cannot be any formulation changes or addition of ingredients that were not part of the previously approved label.** . . .
>
>Examples of types of label changes permitted are:
>- . . . Changes to the descriptive name
>- Changes to the design of the label including layout. . . .
>- Changes to the form of the product (e.g., changing from link sausage to bulk sausage or changing from sausage patties to sausage links) . . .
>- Changes to net weight . . .
>- Changes to the packaging (e.g., going from plastic container to plastic bag)
>- Changes to the product name . . .
>- Removal of ingredients in product without the addition of new ingredients.

*See* Dkt. 73-2 at 21-22 (emphasis in bold added).

FSIS's Guideline is entirely consistent with footnote 6 in the Ninth Circuit's opinion. There, the Ninth Circuit explained that because "[p]reviously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim," Conagra's evidence of prior sketch approval "would preempt all of Cohen's product-label claims to all product labels, (unless he can plausibly allege the modification is misleading)," which he "does not do so here." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 n.6 (9th Cir. 2021).

Plaintiff, meanwhile, "disputes [this] *interpretation*, arguing that Defendant cannot receive sketch approval for one product label and unilaterally decide another product is sufficiently similar so as to be subject to generic approval. . . . Put differently, Defendant 'cannot use sketch approval for the chicken nugget as a gateway to generically approve the labelling on a chicken patty or some other product.'" *Cohen v. Conagra Brands, Inc.*, No. SA CV 20-00637-DOC-ADS, 2023 U.S. Dist. LEXIS 48037, at *16 (C.D. Cal. Mar. 20, 2023) (emphasis added). The Court ultimately sided

with Plaintiff, reciting his interpretation of the regulation and then denying Conagra's Motion to Dismiss.

FSIS's Guideline shows, first and foremost, that Plaintiff's interpretation of the regulation, bereft of legal support, is wrong. Relevant for purposes of this Motion, it also establishes that there is a substantial ground for difference of opinion on this issue. While FSIS (and the Ninth Circuit) interpret the regulation to mean that the challenged labels have been "approved" by FSIS, such that "all of Cohen's product-label claims to all product labels" are preempted (16 F.4th at 1289 n.6), Plaintiff and the Court disagree with that interpretation. The disagreement between FSIS's Guideline (coupled with the Ninth Circuit opinion) and this Court in adopting Plaintiff's interpretation satisfies the requirements of 28 U.S.C. § 1292(b). *See Kennedy v. District of Columbia*, 145 F. Supp. 3d 46, 52 (D.D.C. 2015) (noting that agency Guidance Document furnished a "basis for disagreement with the Court's Memorandum Opinion" under § 1292(b)). Thus, Plaintiff is incorrect in suggesting that the only difference in opinion is Conagra's "strongly held" disagreement with the Court's Order. FSIS's interpretation of its own regulation provides a substantial ground for a difference of opinion.

**An appeal could materially advance this case's outcome.** Immediate appeal of this issue would also substantially alter the landscape of this case and therefore materially advance the ultimate termination of the litigation. If the Ninth Circuit endorses FSIS's interpretation of 9 C.F.R. § 412.2, all of Plaintiff's labeling claims would be preempted—the already dismissed claims on labels that underwent sketch approval and the currently pending claims on labels that were generically approved based on a prior sketch approval. Plaintiff could (rightfully) no longer pursue mislabeling claims against (FSIS-approved) labels on behalf of potentially all purchasers of the products and would instead be limited to pursuing advertising claims based on three limited representations (no artificial colors, no artificial flavors, and no artificial preservatives) on behalf of only those consumers who specifically viewed those online representations and relied on them in making their purchasing decisions.

*See Cohen*, 16 F.4th at 1291. Plaintiff's sweeping, generalized grievances about industry-wide animal husbandry practices, which he tenuously ties to the products' "All Natural" representations, would also be dismissed as preempted. And much of the costly, time-consuming discovery Plaintiff references throughout his Opposition brief would be moot—including discovery about natural and purportedly artificial ingredients, discovery about Conagra's labeling and pre-approval practices, discovery about animal husbandry, and potential discovery propounded on FSIS itself. Accordingly, all of the 28 U.S.C. § 1292(b) factors are satisfied here.

In the alternative, FSIS's January 2023 Guideline, issued after briefing on Conagra's Motion to Dismiss was complete, provides a compelling basis for reconsideration. Plaintiff cannot provide any cogent basis for distinguishing between the example FSIS provided of a permitted practice—using a sketch approval for sausage patties to then generically approve sausage links—from Conagra's practice here—using a sketch approval for chicken nuggets to generically approve chicken patties.[2]

I. **ARGUMENT**

    A. **The Court Should Certify Its March 20, 2023 Order for Interlocutory Review**

All three factors for interlocutory review set forth in 28 U.S.C. § 1292(b) are satisfied here: (1) the issue to be certified involves a "controlling question of law," (2) there is "substantial ground for difference of opinion" on the issue, and (3) an interlocutory appeal is likely to "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

---

[2] Although not relevant to the present Motion, Plaintiff continues to invoke an Office of Inspector General report, and related materials, purportedly finding that the FSIS review process was deficient. As FSIS itself has explained, that "audit was flawed in several areas, and . . . OIG misinterpreted specific labeling regulations and how they are applied to the labeling review process." 88 Fed. Reg. 2798, 2801.

### 1. Conagra's Motion Raises a Controlling Question of Law

For purposes of § 1292(b), so long as one pure legal question is identified, an order may be certified for appeal to resolve all questions "material to the order." *Steering Comm. v. United States*, 6 F.3d 572, 576 (9th Cir. 1993) (finding it proper to certify a mixed question of law and fact material to the order when it is coupled with a pure legal question). The question presented by Conagra—whether a label on a poultry or meat product can be generically approved based on a sketch approval for a prior version of that product, where there have been no modifications related to the sketch-approved claims—can be resolved in the abstract, yes or no, without resort to consideration of any outside facts.[3] Granted, the Ninth Circuit could also address a mixed question of fact and law, the proper application of that regulatory interpretation to the undisputed facts in the record of which this Court has already taken judicial notice (and the facts as pled in the First Amended Complaint). That is what ultimately happened in *Steering Committee*, where the Ninth Circuit addressed both a question of law (whether the district court properly articulated the standard of conduct for pilots under 14 C.F.R. § 91.67(a)) and a mixed question of law and fact (whether the court properly applied the regulatory standard to the facts of the case). 6 F.3d at 575, 576-80 (9th Cir. 1993). As such, Plaintiff has failed to show there is no controlling question of law here.

In any event, the extraneous "factual" questions Plaintiff insists must be answered to resolve the legal issue presented are red herrings, are not fact issues, or are not even open questions. Discovery is certainly not required to address any of these questions.

---

[3] As Conagra previously explained, the meaning of a regulation is a paradigmatic example of a pure legal question. *See* Dkt. 73-1 (collecting cases); *Steering Comm*, 6 F.3d at 575 (appropriate standard under federal regulation "is a question of law appropriate for interlocutory appeal"). Plaintiff's suggestion that a "controlling question of law" is limited to inquiry into who are necessary and proper parties, whether the court has jurisdiction, or whether state or federal law applies (which are just "a few examples" of controlling questions, *see Ambrosio v. Cogent Communs., Inc.*, No. 14-cv-02182, 2016 U.S. Dist. LEXIS 25429, at *6 (N.D. Cal. Feb. 29, 2016)), should be rejected out of hand.

- Plaintiff asks "*which purportedly generically approved labels*" would be subject to the question presented on appeal. Answer: the labels for the 13 products for which there is a dispute over FSIS approval, all clearly listed in this Court's Order. *See Cohen*, 2023 U.S. Dist. LEXIS 48037, at *15.

- *Based on which sketch approvals?* The sketch approvals identified in the briefing before this Court, which the Court judicially noticed. *See* Dkt. 48-3 (listing the corresponding sketch approval for each generically approved product); *Cohen*, 2023 U.S. Dist. LEXIS 48037, at *9 (taking judicial notice).

- *Which prior versions?* Again, the version associated with the sketch approval listed in the briefing of which the Court took judicial notice. *Id.*

- *What constitutes the same product?* This is not a fact question, but an abstract legal question that is well within the Ninth Circuit's wheelhouse. But it is not a relevant question here. As FSIS has explained, where there has been no formulation change or addition of ingredients that were not part of the previously approved label, and all that has changed is the packaging and the form of the product (e.g., changing from sausage patties to sausage links), a label does not have to be resubmitted for FSIS approval. Asking whether a chicken nugget and a chicken patty are the same "product" in common parlance is not the right question. What matters is whether the formulation for the chicken nugget has changed and ingredients have been added. Dkt. 73-2 at 21-22. They have not.

- *How do we know which special claims were approved?* This too can be answered as a matter of law. All special claims (and even generic claims) on labels that undergo sketch approval are approved by FSIS[4]—so unless Plaintiff can identify a new special claim on the chicken patties that was not present on the chicken

---

[4] *See Cohen*, 16 F.4th at 1288 (noting that when FSIS review a label, the agency is deciding that the label—i.e., all claims on the label—are not false or misleading); *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (explaining that even generic claims on a sketch approved label are reviewed and approved by FSIS and cannot be challenged).

nuggets (he can't), he cannot challenge any special claims.

- *What constitutes an unrelated modification?* As FSIS has explained, a change that does "not impact the previously approved claims." Dkt. 73-2 at 21-22. FSIS provides over 40 examples in its Guideline of what constitutes an unrelated modification, including changes to the packaging (e.g., going from plastic container to plastic bag) and changes to the form of the product (e.g., changing from sausage patties to sausage links).

The upshot is that Conagra has identified a pure question of law. That is all that is required under § 1292(b)—even if there is an attendant mixed question of law and fact as to how to apply the legal interpretation of the regulation to the facts in the First Amended Complaint (and the facts of which the Court took judicial notice). *Steering Comm.*, 6 F.3d at 575. In any event, none of the questions haphazardly posed in Plaintiff's brief require any "factual investigation" or preclude the Court from certifying this question.[5]

## 2. There Is Substantial Ground for Difference of Opinion

A circuit split is not required to demonstrate a substantial ground for difference of opinion. In fact, the Ninth Circuit's interlocutory appellate jurisdiction does not even require "a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). The touchstone of a substantial ground for difference is opinion is that "reasonable jurists *might* disagree on an issue's resolution," not that they "have *already* disagreed." *Id.* (emphasis added). Here, the reason there is not a mountain of case law "that would suggest there is a substantial ground for difference of opinion," Dkt. 79 at 16, is because courts have uniformly and routinely dismissed state law claims challenging poultry labeling as preempted under the PPIA or FMIA without first

---

[5] That Plaintiff unsuccessfully opposed Conagra's Request for Judicial Notice also does not somehow create a "factual contest." Dkt. 79 at 13-14.

delving into specific circumstances surrounding the approval of the labeling. *See* Dkt. 48-1 (citing nearly a dozen such cases).[6]

But even that does not mean there are not authorities suggesting a substantial ground for difference of opinion. The FSIS Guideline, FSIS's comments during the rulemaking process (78 Fed. Reg. 66826-01, 66830 (Nov. 7, 2013)), and the Ninth Circuit opinion stating that previously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim all furnish sound bases for disagreement with the Court's opinion and are sufficient to satisfy the requirement of § 1292(b). *See Kennedy*, 145 F. Supp. 3d at 52 (finding substantial ground for difference of opinion based on Guidance Document reflecting agency's interpretation of statute's application and a non-binding opinion consistent with that Guidance Document).

Indeed, the Court's Order specifically lays out that there is a difference of opinion with respect to interpreting the generic approval regulation, first summarizing Conagra's interpretation and citing to the FSIS comments in its 2013 Final Rule that Conagra and the Ninth Circuit relied on, and then noting that "Plaintiff disputes Defendant's interpretation" and setting forth Plaintiff's interpretation of the regulation. Immediately thereafter, the Court denies Conagra's motion to dismiss, demonstrating the Court agreed with Plaintiff's interpretation and thus arrived at a different opinion than FSIS and the Ninth Circuit. *Cohen*, 2023 U.S. Dist. LEXIS 48037, at *16. Accordingly, this § 1292(b) factor is satisfied as well.

---

[6] The Ninth Circuit would have done so too, based solely on the label itself as in *Webb*, except that Plaintiff challenged whether approval even occurred for the first time before the Ninth Circuit, and the approved sketch applications were therefore not already in the record. Had those approvals been in the record, that evidence would have "preempt[ed] all of Cohen's product-label claims to all product labels." *Cohen*, 16 F.4th at 1289 n.6.

### 3. Resolution of This Controlling Question of Law Will Materially Advance the Litigation

Plaintiff's contention that resolving this controlling issue of law would not materially advance the litigation is based on a mischaracterization of the impact of that decision and wishful thinking. If the Ninth Circuit agreed with FSIS and Conagra that labels may be generically approved based on a previous sketch approvals if the only modifications involve changes unrelated to the special claims, then ***all*** of Plaintiffs' state law claims based on challenges to labeling would be preempted and subject to dismissal. *See Cohen*, 16 F.4th at 1289 n.6 (9th Cir. 2021) ("ConAgra's evidence would preempt all of Cohen's product-label claims to all product labels"). The only remaining claims would therefore be Plaintiff's state law claims challenging Conagra's website representations that are not "essentially identical" to the representation on the product label. The Ninth Circuit made clear that the only actionable representations would therefore be "that the chicken products as a whole contain no preservatives, artificial flavors, or artificial colors." *Id.* at 1291.

Accordingly, if the Ninth Circuit resolved this controlling question in Conagra's favor: (1) all of Plaintiff's labeling claims would be preempted, mooting Plaintiff's generalized grievances about the FSIS approval process, rendering any discovery into Conagra's approval practices unnecessary, and removing any need to conduct discovery on or into FSIS itself; (2) all of Plaintiff's challenges to the "All Natural" representation would be preempted, ending any need for discovery into the "naturalness" of the chicken products' ingredients and eliminating Plaintiff's animal-husbandry-based allegations which are all based on Plaintiff's contention that the chicken products are not "natural" because of how the chickens were raised; (3) the putative class size would be substantially reduced to only those consumers who viewed and relied on the website representations before purchase; and (4) the remaining claims would be limited to the narrow issue of whether any of the ingredients in the chicken products are properly

1   classified as preservatives, artificial flavors, or artificial colors.[7] As a result, an
2   immediate appeal unquestionably has the potential to streamline this litigation.

3         Plaintiff's attempts to argue that resolution of this question would have little
4   impact on the case are utterly unavailing.

5         *First*, Plaintiff argues that the "pending motion for interlocutory appeal addresses
6   only certain product labels, not the entirety of Cohen's challenge to Conagra's
7   misrepresentations." Dkt. 79 at 18. That is false. Plaintiff's First Amended Complaint
8   defines the challenged "Chicken Products" at paragraph 17 as twenty different varieties
9   of Banquet-brand chicken products. These are the same twenty products the parties have
10  addressed through many rounds of briefing, the same twenty products for which
11  Conagra submitted evidence of approval (either sketch or generic), and—critically—
12  the same twenty products that were subject to the Court's initial order dismissing
13  Plaintiff's claims with prejudice and terminating the case. In reaching that decision, the
14  Court took judicial notice of those twenty products' labels, which bore the USDA
15  inspection emblem and evidenced that the products' labels had been subject to FSIS
16  review. Plaintiff never contended then that the case should not have terminated because
17  there were other products at issue for which Conagra never submitted labels. Moreover,
18  the Court's latest Order is clear that "Plaintiff challenges *twenty* of Defendant's
19  products as false and misleading" and cites to paragraph 17 of the First Amended
20  Complaint. *Cohen*, 2023 U.S. Dist. LEXIS 48037, at *2 (emphasis added).

21        In addition, while Plaintiff now disingenuously claims that the twenty products
22  are "exemplars" (Dkt. 79 at 18), and other products were identified (in passing) at
23  paragraphs 76 and 78 of the First Amended Complaint, Plaintiff failed to include ***a***
24  ***single allegation about the labeling*** of those products in the First Amended Complaint.
25  Plaintiff does not identify what the labels of those products say, much less that the labels

---

[7] Given that Plaintiff was unable to identify a single artificial color or flavor in his First Amended Complaint or briefing, those claims in particular are amenable to speedy resolution.

1. are misleading. All Plaintiff contends with respect to those products are that he purchased them in 2018 and 2019. Worse still, Plaintiff does not even provide sufficient information to identify certain of those products, vaguely referring to "Classic Dinners" and "products sold as Mega Meals and Meals." Dkt. 43 at ¶ 76. In any event, even if those products could conceivably be considered as part of the lawsuit, resolution of the question presented in this Motion would apply equally to those products (except for products which directly received sketch approval and would already be subject to dismissal on that basis).

*Second*, Plaintiff suggests he has valid claims relating to a "newspaper circular" that could survive preemption. But the entirety of Plaintiff's allegation with respect to the newspaper circular is "Cohen also viewed Conagra marketing in local newspaper circulars for approximately 10 years." Dkt. 43 at ¶ 73. Again, Plaintiff has not alleged what the newspaper circular said, much less that it contained any false representation. This is not an actionable allegation that Conagra ever needed to move to dismiss, as evidenced by the fact that the "newspaper circular" did not rate a single mention in either of the Court's motion to dismiss orders (including the order dismissing Plaintiff's case in its entirety and terminating the action), or the Ninth Circuit opinion. And, for this claim to survive preemption, Plaintiff would have to show it does not include "materially identical" representations as the product labeling. *Cohen*, 16 F.4th at 1290. Because he has not even alleged what the newspaper circular said, he cannot do so.

*Third*, Plaintiff's speculative assertion that discovery may reveal other product labels never submitted for approval or reviewed by USDA is apropos of nothing. As an initial matter, all of Conagra's labels on all products have been approved by FSIS because generic approval *is* approval. *See, e.g.*, 78 Fed. Reg. 66826-01, 66827 (Nov. 7, 2013) "Although [generically approved] labels are not submitted to FSIS for approval, **they are deemed to be approved** and, therefore, may be applied to product in accordance with the Agency's prior label approval system." (emphasis added)); FSIS, *FSIS Labeling Overview and Generic Approval* (Oct. 21, 2014) ("FSIS approves labels

11

through generic labeling regulations.").[8] Further, an allegation that a label failed to comply with FSIS's approval process does not give rise to an actionable claim. Plaintiff would need to show the label contains a false or misleading statement and that he relied on that statement—discovery is not necessary to establish those facts uniquely in Plaintiff's possession.

As a result, Plaintiff cannot show that resolution of this question would ***not*** significantly impact the scope of this case, and thus materially affect its ultimate resolution.

### B. The Court Should Stay Discovery

For the reasons discussed above, the scope of this case would be substantially impacted by resolution of the question presented, so a stay is appropriate to avoid costly and time-consuming discovery into issues that would not survive a preemption analysis. Once again, Plaintiff is wrong about the impact of resolving the question in Conagra's favor. Plaintiff argues "false and misleading natural claims on Conagra's website and claims concerning animal husbandry" are "not affected by the Motion." Dkt. 79 at 19. That is incorrect. The Ninth Circuit made clear that, if Plaintiff's labeling claims are preempted, he cannot challenge the website representation "They're made with 100% natural, white-meat chicken." *Cohen*, 16 F.4th at 1290. Thus, if the issue presented to the Ninth Circuit is resolved in Conagra's favor no "all natural" claims (which includes the animal husbandry claims) survive, and any discovery into those claims would have been needless and wasteful.

### C. In the Alternative, the Court Should Grant Conagra's Motion for Reconsideration

Plaintiff's attempt to sidestep the newly issued FSIS Guideline, which provides a compelling basis for reconsideration, also fails. Plaintiff contends that following the

---

[8] *Available at* https://www.fsis.usda.gov/sites/default/files/import/labeling-generic-label-approval.ppt.

Guideline would require retroactively applying it to Plaintiff's claims concerning the 2015-2018 time period. The Ninth Circuit rejected this exact same argument just this week. In *Pardini v. Unilever United States Inc.*, the Ninth Circuit relied on a 2018 FDA guidance document interpreting the regulation at issue. In doing so, the court explained there was "no retroactivity problem" in relying on this document to dismiss the operative complaint filed in 2013 and dismissed in 2014. No. 21-16806, 2023 U.S. App. LEXIS 9166, at *20 n.2 (9th Cir. Apr. 18, 2023). "There has been no relevant change to the statute or regulations, and the 2018 guidance merely makes clearer what the 1994 guidance already conveyed . . . ." *Id.* So too, here, there has been no relevant change to the regulation, and the FSIS Guideline merely makes clearer FSIS's established position that previously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim. In particular, the Guideline clarifies that a change of the shape of the product from a sausage link to a sausage patty allows an establishment to generically approve the sausage links based on the sketch approved sausage patties.

      Plaintiff otherwise cannot articulate how the FSIS Guideline does not control here. Plaintiff contends that the scenario presented here is not changing the form of a product, but rather changing from one product to another. But the labels Conagra submitted showed that Conagra did not add any new ingredients in switching from a chicken nugget to a chicken patty—Conagra changed the shape of the breaded chicken. That is exactly the same as changing the shape of a sausage from a patty to a link. The FSIS Guideline unambiguously shows that Conagra's interpretation of the regulation is correct, and the Court should adopt that interpretation now, rather than allowing this case to proceed through discovery, only to reach the exact same conclusion at summary judgment.[9]

---

[9] Plaintiff also contends Conagra did not exercise reasonable diligence in bringing this Guideline to the Court's attention prior to the issuance of the Court's Order. But there was no reason for Conagra to comb through FSIS guidance documents to find a single

13

## II. CONCLUSION

For these reasons, Conagra respectfully requests that the Court amend its Order to certify for interlocutory appeal the legal question of the proper interpretation of 9 C.F.R. § 412.2 (the generic approval regulation) and, if certified, stay this matter pending that appeal. In the alternative, Conagra respectfully requests that the Court reconsider its prior Order.

DATED: April 24, 2023        /s/ Angela Spivey
                             ANGELA SPIVEY
                             Attorney for Defendant
                             **CONAGRA BRANDS, INC.**

---

new example that was consistent with Conagra's interpretation of the regulation when Conagra had a Ninth Circuit ruling in hand already agreeing that previously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim.