**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-CV-00637-DOC-ADS                                   Date: July 7, 2023

Title: ROBERT COHEN V. CONAGRA BRANDS, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING MOTION FOR RECONSIDERATION [73]**

Before the Court is Defendant's Motion for Certification for Immediate Appeal, or in the alternative, for Reconsideration ("Motion" or "Mot.") (Dkt. 73). The Motion is fully briefed. *See* Dkt. 79 ("Opposition" or "Opp'n"), Dkt. 80 ("Reply"). The Court held oral argument and took the matter under submission on May 1, 2023 (Dkt. 82) and issued an Order requiring supplemental evidence (Dkt. 84). The parties have now submitted their additional filings. *See* Dkt. 85 ("Defendant's First Decl. of Suppl. Evid."), Dkt. 86 ("Pls.' Opp'n"), Dkt. 87 ("Defendant's Second Decl."), Dkt. 88 (Defendant's Reply"). (reply)).  For the reasons stated below, the Court **GRANTS** the motion for reconsideration and **DENIES AS MOOT** the request for interlocutory appeal. The Court further **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss as stated herein.

**I.    Background**

In this putative class action, Plaintiff Robert Cohen alleges that he purchased frozen chicken products sold by Defendant ConAgra Brands, Inc.  First Amended Complaint ("FAC" or "First Am. Compl.") (Dkt. 43) ¶ 1. The product labels stated, inter alia, "Made with 100% Natural White Meat Chicken," "No Preservatives," "No Artificial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                    Date: July 7, 2023

Page 2

Colors," "No Added Hormones," "No Artificial Flavors." *Id.* ¶¶ 28, 29. Plaintiff alleges that he relied on these representations and continued buying Defendant's chicken products until January 2019. *Id.* ¶¶ 73-79. Plaintiff challenges twenty of Defendant's frozen chicken product labels as false and misleading. *Id.* ¶ 17. Thirteen of those products remain at issue in this Order.

After the Court granted Defendant's motion to dismiss the initial Complaint, Plaintiff appealed. The Ninth Circuit issued an opinion affirming-in-part and reversing-in-part. Dkt. 35; *see Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). As relevant here, the Ninth Circuit reversed the Court's preemption ruling regarding Cohen's product-labeling claims, explaining that the preemption analysis turns on whether Defendant could "produce evidence that the label was reviewed and approved by FSIS [the Food Safety Inspection Service of the USDA]." *Id.* at 1289. Thus, the Ninth Circuit instructed that "the parties should submit evidence about (and the district court should decide) only whether ConAgra's label was reviewed and approved by FSIS." *Id.* at 1283. The Ninth Circuit cautioned, "[i]f the evidence shows that ConAgra's label was approved by FSIS, then Cohen's claims are preempted." *Id.* at 1290.

Following remand, Plaintiff filed his FAC and Defendant again moved to dismiss. *See* Dkts. 43, 48. On March 20, 2023, the Court granted in part and denied in part the motion to dismiss. Dkt. 72. *First*, the Court ruled that six of the disputed products had been reviewed and approved by FSIS. *Id.* at 9. Thus, the Court concluded that Plaintiff's state law claims related to the "natural" designation on those product labels were preempted, and the motion was granted in part on that basis. *Id.*

*Second*, the parties disputed whether, despite not having received sketch approval, the remaining thirteen products are subject to FSIS's generic approval pursuant to 9 CFR § 412.2. *Id.* The Court found that the evidence submitted by Defendant failed to establish that the remaining thirteen products were reviewed and approved by FSIS. *Id.* at 10. Thus, preemption had not been shown and the motion was denied in part on that basis. *Id.*

After the Court issued its order, Defendant filed the instant Motion, seeking leave to appeal, or in the alternative, for reconsideration. *See generally* Motion. In the Motion, Defendant argues that the Court should certify its March 20, 2023 order for interlocutory review because the decision turns on a controlling question of federal preemption law, there is a substantial ground for difference of opinion about that question, and resolving

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-CV-00637-DOC-ADS	Date: July 7, 2023

Page 3

that question will materially advance the litigation. *See generally* Dkt. 73-1. Alternatively, Defendant requests that the Court reconsider its ruling based on a recent January 2023 FSIS guideline of which Defendant was unaware until after the Court issued its ruling. *Id.* at 18-19 & n.7. Defendant contends that the guideline "make[s] unmistakably clear that FSIS does permit generic approval of a chicken patty based on a sketch approved chicken nugget," and "FSIS's interpretation of this generic approval regulation is highly persuasive, if not controlling authority." *Id.* at 19.

Additionally, Defendant argues that, to the extent the Court found Defendant's evidence "insufficient to establish that the challenged products received generic approval," then "the Court failed to consider the evidence presented demonstrating that there were no modifications related to the special claims as between the sketch approved and generically approved products." *Id.* Defendant asserts that "[i]t is also unclear what additional evidence would be required to show there has been no modification between the sketch approved and generically approved products." *Id.* at 20. Defendant avers that "[a]ll that is needed to see if a modification related to the special claims has occurred or not is a comparison of the generic approved labels and sketch approved labels." *Id.*

Plaintiff opposes, arguing that Defendant has not met the standard for an interlocutory appeal, that the Court's order does not involve a substantial ground for difference of opinion, and that an immediate appeal would not materially advance the litigation. *See generally* Dkt. 79. Plaintiff also argues that the request for reconsideration should be denied because Defendant's attempt to rely on the January 2023 FSIS guideline violates Local Rule 7-18. *Id.* at 14 (citing L.R. 7-18 (requiring a material difference that "could not have been known to the party" when the order was entered)). Accordingly, Plaintiff argues that this demonstrates that Defendant was not reasonably diligent. *Id.* at 15. Plaintiff further argues that the language of the new guideline is consistent with the Court's prior order because the guideline is "current thinking"—*not* binding interpretive rules. *Id.* Moreover, the new guideline—according to Plaintiff—is not applicable to labels published in 2015-2018, as alleged in the FAC. *Id.* Plaintiff also argues that the request for reconsideration is an improper attempt to relitigate the motion. *Id.* at 16.

On June 1, 2023, the Court observed that the "the ingredients labels that Defendant contends are subject to generic approval are unreadable." Dkt. 84 at 2. Thus, to aid in consideration of the motion, the Court ordered Defendant to submit a chart providing a comparison between the relevant ingredients labels that received sketch approval from FSIS on the one hand, alongside the ingredients labels for each product

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                              Date: July 7, 2023

Page 4

that Defendant contends is properly subject to generic approval deriving from the sketch approval, which is based on the contention that the ingredients are the same, and only changes immaterial to the "natural" designation have bene made (*e.g.*, change in product shape, change in product quantity). *Id.* at 1. The Court also gave Plaintiff an opportunity to file a response. *Id.* at 3.

Having received and considered the additional filings provided by the parties, the Court is prepared to rule on the Motion.

## II.   Legal Standards

### A.  Modifying Interlocutory Orders

Under Rule 54(b), the Court may revise any interlocutory order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" as long as the Court retains jurisdiction. This is an exercise of the Court's inherent authority. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). Such a modification is justified "if sufficient cause is shown." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 13 n. 14 (1983). "A request from a party for a court to exercise this authority generally comes in the form of a motion for reconsideration." *Allergan Inc. v. Athena*, No. SA CV 08-427, 2012 WL 12898344, at *2 (C.D. Cal. May 24, 2012) (collecting cases).

### B.  Reconsideration

Reconsideration is an "extraordinary remedy, to be used sparingly." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). It is appropriate when an order "is demonstrably wrong, or if new developments would affect the outcome of the motion." *Network Signatures, Inc. v. ABN-AMRO, Inc.*, No. SA CV 06-629 JVS-RNBx, 2007 WL 7601871, at *1 (C.D. Cal. Apr. 10, 2007). Thus, it should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *see also* L.R. 7-18.

## III.  Analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADSDate: July 7, 2023

Page 5

### A. Whether Reconsideration is Appropriate

A review of Defendant's request for reconsideration suggests that Defendant likely has not met its burden for showing that such relief is warranted. This is especially true where the request for reconsideration was necessitated by Defendant submitting deficient evidence in support of its motion to dismiss. In an exercise of its inherent authority, however, the Court will **GRANT** the request for reconsideration. To be sure, Defendant has demonstrated neither "the emergence of new material facts or a change of law occurring after the Order was entered," nor "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." L.R. 7-18.

Nonetheless, in the interest of complying with the express "limited nature" of the Ninth Circuit's remand—instructing that "defendant must produce evidence that the [relevant] label[s] [were] reviewed and approved by FSIS so this Court can decide "only whether ConAgra's label[s] [were] reviewed and approved by FSIS"— the Court will reconsider its ruling on the motion to dismiss the FAC. *See Cohen*, 16 F.4th at 1289-90. *Id.* at *13. The Ninth Circuit cautioned, "[i]f the evidence shows that ConAgra's label was approved by FSIS, then Cohen's claims are preempted." *Id.* at 1290. Thus, because the Ninth Circuit ordered Defendant to take specific action (produce evidence), and ordered this Court to take specific action (review that evidence), the Court finds limited reconsideration appropriate to comply with that directive.

The Court rejects Defendant's assertions that it is "unclear what additional evidence would be required to show there has been no modification between the sketch approved and generically approved products," and "[a]ll that is needed to see if a modification related to the special claims has occurred or not is a comparison of the generic approved labels and sketch approved labels." Dkt. 73 at 20. When the evidence Defendant submitted was literally unreadable, the "additional" evidence that is required is simply readable versions of the labels the Ninth Circuit ordered Defendant to produce and this Court to review. This should come as no surprise to Defendant. What is "unclear" is how Defendant thought the Court would be able to discern the contents of the unreadable labels. The Court would have been well within its discretion to deny Defendant's motion to dismiss based on preemption (as it initially did) where Defendant failed to present sufficient evidence as directed by the Ninth Circuit.

Despite this glaring shortcoming, in the interest of efficiency and in the interest of not wasting more of this Court's (and the Ninth Circuit's) time, the Court ordered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                              Date: July 7, 2023

Page 6

Defendant to provide such readable evidence and Defendant has done so. *See* Dkt. 84. The Court strongly admonishes Defendant that if, in support of any future motion, Defendant carelessly submits "evidence" that is strewn across the docket in a disorganized fashion not amenable to efficient review, the text of key portions of which is unreadable, the Court will summarily deny such a motion and decline to entertain any request for reconsideration.

### B. Motion to Dismiss Based on Preemption

#### 1. Previously Sketch-Approved Special Claims and Subsequent Generic Approval For Non-Special Changes

As explained in the Court's prior order, USDA FSIS approves packaging through various methods, including sketch approval and generic approval. *See* 9 C.F.R. § 412.1. Generically approved labels can "bear claims and statements that are defined in FSIS's regulations or the Food Standards and Labeling Policy Book (except for natural and negative claims)." 9 C.F.R. § 412.2(b)). Sketch approval, which applies to any label making a special claim such as "natural," requires submission to FSIS for approval before it can be used in commerce. *See id.* § 412.1(c).

One exception to the sketch approval requirement is that, if a label has been previously sketch approved for a special claim (*e.g.*, a "natural" claim), it can be generically approved after subsequent modifications to the label if the modifications in question do not affect the special claim. *See* 78 Fed. Reg. 66826, 66830 (Nov. 7, 2013). When such generic approval occurs, the modified labels do not need to be submitted to FSIS because they only use "pre-approved" terms and definitions contained in the USDA's labelling policy book. *See* 9 C.F.R.§ 412.2.

In his supplemental opposition, Plaintiff strenuously disputes whether a "label with a special claim, even a claim of 'natural,' may be generically approved if the modifications involve changes unrelated to the special claim." Dkt. 86 at 1. Plaintiff contends that "the USDA's most recent final rule (Prior Label Approval System: Expansion of Generic Label Approval, 88 Fed. Reg. 2798 (Jan. 18, 2023)), interpreting regulation (9 C.F.R. § 412.2), makes clear that, unlike other special claims, 'natural' label claims are not generically approvable." *Id.* In support, Plaintiff avers that "the Agency [] said: 'After reviewing the comments, FSIS has determined it would be inappropriate to allow the following types of labels to be deemed approved without Agency evaluation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                     Date: July 7, 2023

Page 7

and review: Labels bearing negative, "natural," and "organic" claims: These labels are not generically approvable because they are special claims, as defined in [the amended] 9 CFR 412.1(e) of this final rule.'" *Id.* at 2 (quoting 78 Fed. Reg. at 66830).

Plaintiff misconstrues the applicable regulations and guidelines. The above-quoted language relates to whether FSIS would allow *initial* generic approval for products claiming to be "natural," not whether generic approval would be appropriate for label changes in products that *previously obtained* sketch approval for a "natural" claim and wanted to make subsequent label changes unrelated to the "natural" claim.

*First*, in its November 7, 2013, Final Rule, FSIS "amend[ed] the meat and poultry products inspection regulations to expand the circumstances in which FSIS will generically approve the labels of meat and poultry products." 78 FR 66826-01. During the rulemaking process FSIS was "asked by a commenter if [it] intended to permit the generic approval of previously approved labels containing special claims when the only modification involves changes unrelated to the special claim," and FSIS explained, "[t]he answer is yes." *Id.* at 66830. "Previously approved labels containing special claims may be generically approved if the only modification involves changes unrelated to the special claim." *Id.* Although "[m]any commenters asked that FSIS allow the generic approval" out of the gate for several expanded categories of products, FSIS responded that it "determined that it would be inappropriate to allow the following types of labels to be deemed approved without Agency evaluation and review: Labels bearing negative, 'natural,' and 'organic' claims: These labels are not generically approvable because they are special claims, as defined in 9 CFR 412.1(e) of this final rule." *Id.* Thus, special claims such as "natural" still require initial sketch approval.

*Second*, in its January 18, 2023, Final Rule, FSIS "amend[ed] its regulations to expand the circumstances under which it will generically approve the labels of meat, poultry, and egg products." 88 FR 2798-01. For example, FSIS expanded generic approval to include "organic" claims and "negative" claims that identify the absence of a certain ingredient. *Id.* at 2798. Although FSIS considered whether to allow generic approval for all types of labels, it rejected this option after concluding that it "may increase the number of misbranded products going into commerce." *Id.* "FSIS believes the labels that will still require prior evaluation under the final rule, such as labels with animal raising, natural, or front of package nutrition labeling claims, benefit from LPDS evaluation due to the complex nature and need for supporting documentation of these

Case 8:20-cv-00637-DOC-ADS   Document 90   Filed 07/07/23   Page 8 of 17   Page ID #:1834

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                                  Date: July 7, 2023

Page 8

claims." *Id.* at 2810. Thus, under § 412.1, "special statements and claims" to be "natural," still require initial sketch approval. *Id.* at 2812.

FSIS's decision to leave intact the requirement for initial sketch approval of special claims that a product is "natural" did not disturb its stance on whether previously sketch approved labels for "natural" products may receive generic approval for subsequent changes unrelated to the "natural" claim. FSIS has made clear that this is a permissible practice. For example, FSIS provides the following guidance on its website, which is consistent with the final rule issued at 78 FR 66826-01 at 66830.

**Food Safety and Inspection Service:**
**Modifications to Sketch Approved Labels with Special Statements and Claims**

- Once a label is approved with a special statement or claim, changes can be made generically that are unrelated to the special claim, e.g.,:
  - brand name, net weight, updating nutrition facts values, serving sizes (must be based on RACCs or longstanding appetizer RACC) and in some cases formulation changes

- Changes are generically approved when they do not impact the special claim:
  - removing ingredients, changes in the order of predominance of ingredients;
  - changes to the form of the product (e.g. link and pattie form); and
  - changes to brand names, vignettes, logos, and design are examples of changes that are generically approved

- With LPDS sketch approval can add to other labeling at Est.
  - Front of Pack nutrition statements if same format as on the approval
  - May transfer label approval to another Est.  Excludes organic products

*See* FSIS, "Generic Labeling Overview at Slide 39 (Sept. 25, 2019), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/2021-02/generic-labeling-webinar.pdf.

In January 2023, FSIS again affirmed this policy:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS     Date: July 7, 2023

Page 9

### Changes to Labels with Approved Special Statements and Claims That Do Not Require Additional LPDS Review

Once a label is approved by LPDS for compliance with 9 CFR 412.1, there are several changes that can be made to the label that do not require resubmission to LPDS. These changes are generically approved under 9 CFR 412.2. For such a change to be made, it must be unrelated to the special statement or claim. Some common examples include:

- The removal of an ingredient or change in order of predominance of an ingredient in a product formula for a label that was previously approved with a negative claim (e.g., "certified gluten free"). In this case, the removal of an ingredient or change in its order of predominance will not affect the special statement or claim.

- Changing the name of the cut of meat or poultry for a label previously approved with an animal-raising claim (e.g., raised without antibiotics). An example would include changing the name from chicken breast to chicken thigh. The change is generically approved provided the supporting documentation for the chicken is the same as documented in the previously approved label. In this case, changing the name of the cut of poultry will not affect the special statement or claim.

- Changing information such as the establishment number (except for products labeled as organic), signature line, preparation instructions, Hazard Analysis and Critical Control Points Category, or vignette for a label that was previously approved with a special statement or claim. These changes are generically approved as they will not affect the special statement or claim.

See Appendix 3 for a list of changes to labels with special statements and claims that can be generically approved.

See FSIS Guideline For Label Approval, FSIS-GD-2023-0001 at 9 (Jan 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf.[1]

---

[1] *See also id.* at 21-23, Appendix 3 ("Thus, once a label is approved there are several changes that can be made to the label that do not impact the previously approved claims. These revisions do not impact the previously approved special statement or claim. In addition, for the additional changes to be generically approved, there cannot be any formulation changes or addition of ingredients that were not part of the previously approved label. . . . Examples of the types of label changes permitted [include]: . . . "Changes to the form of the product (*e.g.*, changing from link sausage to bulk sausage or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS						Date: July 7, 2023

Page 10

Thus, the Court concludes that nothing in the November 7, 2013 Final Rule, the January 18, 2023 Final Rule, the September 2019 guidance, or the January 2023 guidance supports Plaintiff's contention that sketch approved labels with a special claim of "natural" cannot use generic approval for subsequent label changes unrelated to the "natural" claim. Plaintiff's position is contrary to the FSIS's Final Rules and guidance.

## 2. Analysis of Defendant's Supplemental Evidence

Given the illegible evidence submitted by Defendant in support of its motion to dismiss, to determine whether reconsideration was warranted, the Court ordered Defendant to provide a side-by-side comparison table so the Court could compare the previously sketch-approved labels with the subsequent label changes that Defendant contends are subject to generic approval, thereby preempting Plaintiff's claims. *See* Dkt. 84. Defendant filed a declaration attaching the requested comparison table. Dkt. 85.

The Court has reviewed Defendant's supplemental evidence and concludes that this is the evidence the Ninth Circuit ordered the Court to review. Thus, the Court now conducts that review.

| Product and Label Changes | Ruling |
| --- | --- |
| **Chicken Breast Nuggets (Family Pack)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Nuggets (Box)**<br>Ingredient Differences: | Per the FSIS January 2023 guidance, removing |

---

changing from sausage patties to sausage links)[,] . . . Changes to the order of predominance or product formula without the addition of new ingredients[,] Changes to the packaging (*e.g.*, going from plastic container to plastic bag)[,] . . . Changes to values in the nutrition facts panel[,] . . . Removal of ingredients in product without the addition of new ingredients").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                  Date: July 7, 2023

                                                                                                       Page 11

| Product and Label Changes | Ruling |
|---|---|
| • Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>• Change in predominance of ingredients in Batter (Garlic Powder)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Changes to packaging | ingredients without adding new ingredients, and changing the net weight / nutritional value / ingredients predominance / packaging are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Patties (Bag)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value / packaging / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Patties (Box)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>• Change in predominance of ingredients in Batter (Garlic Powder)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name<br>• Changes to packaging | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value / ingredients predominance/ packaging / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Strips (Bag)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value / ingredients |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                                  Date: July 7, 2023

Page 12

| Product and Label Changes | Ruling |
|---|---|
| • Change in predominance of ingredients in Batter (Garlic Powder)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name | predominance / packaging / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Tenders (Bag)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Chicken Breast Tenders (Box)**<br>Ingredient Differences:<br>• Removal of Isolated Soy Protein from Patties<br>• Removal of Dextrose, Sugar, Autolyzed Yeast Extract, Modified Corn Starch from Batter<br>• Change in predominance of ingredients in Batter (Garlic Powder)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name<br>• Changes to packaging | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / nutritional value / ingredients predominance/ packaging / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Original Chicken Nuggets (Box)**<br>Ingredient Differences:<br>• Removal of Yeast from Breader<br>• Change in predominance of ingredients in Breader (Salt)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to packaging | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / ingredients predominance / packaging are generically approved under 9 C.F.R. § 412.2. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                     Date: July 7, 2023

Page 13

| Product and Label Changes | Ruling |
|---|---|
| **Original Chicken Nuggets (Family Pack)**<br>Ingredient Differences:<br>• None<br>Other Differences:<br>• Changes to the net weight | Per the FSIS January 2023 guidance, changing the net weight is generically approved under 9 C.F.R. § 412.2. |
| **Original Chicken Patties (Bag)**<br>Ingredient Differences:<br>• None<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name | Per the FSIS January 2023 guidance, changing the net weight / nutritional value / shape / name are generically approved under 9 C.F.R. § 412.2. |
| **Original Chicken Patties (Box)**<br>Ingredient Differences:<br>• Removal of Yeast from Breader<br>• Change in predominance of ingredients in Breader (Salt)<br>Other Differences:<br>• Changes to the net weight<br>• Changes to values in the nutrition facts panel<br>• Different shape (nuggets to patties) and name<br>• Changes to packaging | Per the FSIS January 2023 guidance, removing ingredients without adding new ingredients, and changing the net weight / ingredients predominance / nutritional value / shape / name / packaging are generically approved under 9 C.F.R. § 412.2. |

Because these products received initial sketch approval for their special claims of "natural," and because all subsequent label changes are subject to generic approval under 9 C.F.R. § 412.2, the labels have therefore been approved by FSIS. Accordingly, Plaintiff's state law claims regarding product mislabeling are preempted as to these products and must be dismissed. *See Cohen*, 16 F.4th at 1290.

In opposition to Defendant's supplemental evidence, Cohen argues that "Defendant failed to submit evidence of the date(s) the products were placed into commerce or that it obtained FSIS approval before the products hit the shelves." Dkt. 86 at 1. Plaintiff claims that he "alleged in his First Amended Complaint" that "by placing the products in commerce prior to agency approval, Defendant 'violated the federal PPIA.'" *Id.* (quoting FAC ¶ 55). The FAC does not contain such an allegation, however. Although Plaintiff alleged that Defendant "violated the federal PPIA," FAC ¶ 55, this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                    Date: July 7, 2023

Page 14

allegation is not based on the contention that Defendant placed the products into commerce *before* receiving agency approval. Rather, the FAC alleges that, "[p]rior to releasing the Chicken Products into commerce, ConAgra was required to secure FDA approval of every one of its product labels to ensure they meet the standards imposed by the PPIA." FAC ¶ 54. Specifically, "[e]ach product label" for a product that claims to be "natural" "must be individually approved before it can be marketed to consumers." *Id.* "Plaintiff is informed and believes that Conagra *received no such approval* for all of its Chicken Products." *Id.* (emphasis added). "Rather, Conagra *evaded the federal regulatory regime by using a much less rigorous process known as 'generic' approval* for its Chicken Products labels." *Id.* (emphasis added). Thus, Plaintiff does not allege that Defendant belatedly obtained approval—he alleges that Defendant "received *no* such approval" because Plaintiff believes generic approval is "an end-run" around the regulations and unacceptable for these types of products. *See id.* For the reasons explained above, this argument is legally erroneous. As stated, products that have received sketch approval for a special claim of "natural" may receive generic approval for subsequent label changes unrelated to that special claim.

      Accordingly, Cohen's allegations as pleaded do not change the outcome and his state law claims as to mislabeling the foregoing products are **DISMISSED** as preempted under the Poultry Products Inspection Act. *See Cohen*, 16 F.4th at 1290. Defendant's motion to dismiss is **GRANTED IN PART** on this basis.[2]

---

[2] In a footnote, Plaintiff suggests that he should be allowed to further amend to plead "more specific facts . . . regarding how and why Defendant's modification to the generically approved labels is misleading and/or how Defendant's conduct violated the PPIA." Dkt. 86 at n.5. Until a Scheduling Order issues, amendment is governed by Rule 15; thereafter, it is governed by Rule 16. If Plaintiff believes he can plead additional facts consistent with the governing standard and the rulings in this Order as to the eleven dismissed products, he may file a motion for leave to file a Second Amended Complaint explaining how he proposes to do that. But Plaintiff is advised that such a request must be consistent with this Order. The Court will not entertain further arguments that subsequent generic approval for label changes unrelated to previously sketch approved special claims like "natural" is improper for changes unrelated to the special claim (*e.g.*, shape, size, packaging). Plaintiff should also heed the Ninth Circuit's guidance that, where labels have been approved by FSIS (including generic approval – which is a well-established form of approval), the claims are preempted and must be dismissed. *See Cohen*, 16 F.4th at 1290.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                                                 Date: July 7, 2023

Page 15

### 3. Popcorn Chicken

Instead of submitting a comparison table regarding a popcorn chicken product, Defendant has submitted a "copy of FSIS sketch approval for the Popcorn Chicken product," including "the FSIS stamp 'Sketch Approved Subject to Compliance with FMIA & PPIA & Regulations,' indicating the application for sketch approval has been approved by FSIS." Dkt. 85, Phillips Decl., ¶ 3, Ex. B. Defendant explains that "[b]ecause the Popcorn Chicken product received FSIS sketch approval, Conagra has not included it on the side-by-side comparison table" as a product subject to generic approval. *Id.* ¶ 4. Due to filing errors, Defendant also submitted a second copy that properly shows the FSIS approval stamp for the box product. *See* Dkt. 87, Phillips Decl., ¶¶ 2, 4 & Ex. A.[3]

Plaintiff argues that the generic approval on which Defendant initially sought to rely was improper because a comparison of the labels shows that "the formulation was changed and unapproved ingredients were added – it was not simply a change to the 'shape.'" Dkt. 86 at 4 (citing Dkt. 86-1, Olsen Decl., ¶ 2 & Ex. 1). Specifically, Plaintiff avers that "Defendant added 'Modified Corn Starch' and 'Soy Flour' to the chicken (aside from the Breader and Batter)," and "also changed the Breader formulation, and added 'Soybean Oil' and 'Whey' ingredients." *Id.* at 4. Plaintiff contends that, even assuming generic approval can be used for certain types of changes to a previously sketch approved "natural" label (*e.g.*, shape), "adding ingredients and changing the formulation make Popcorn Chicken ineligible for 'generic' approval based on sketch approval of a different product;" and additionally this violates the PPIA because the changes "relate to the special claim that the chicken was allegedly made with '100% Natural White Meat Chicken,' when in fact it contained the food additive of "Modified Corn Starch." *Id.* at 4 (citing FAC ¶¶ 29, 31, 40, 47). Even if the Court considers the newly submitted sketch approval evidence, Plaintiff argues that it does not undermine his claim because "the sketch date of February 18, 2022 is almost two years *after* this lawsuit was filed and *after* the product had already been in commerce." *Id.* at 5.

In its reply, which the Court did not authorize, Defendant does contend that any popcorn chicken product was subject to generic approval (*i.e.*, Defendant has not

---

[3] As to the two popcorn chicken products referenced in the FAC, "Popcorn Chicken (Bag)" and "Popcorn Chicken (Box)," Defendant states that the box product "was discontinued at the time ConAgra sought sketch approval." Dkt. 85 at ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                                    Date: July 7, 2023

Page 16

provided a comparison table like for the other products). Defendant also does not address Plaintiff's arguments that Defendant began selling the popcorn chicken products *before* it obtained sketch approval. Defendant's statement that the box product "was discontinued at the time ConAgra sought sketch approval" suggests it was already being sold before such approval was obtained. Dkt. 85 at ¶ 4.

Unlike the other products for which Defendant filed the requested supplemental evidence (asserting generic approval based on prior sketch approval), Defendant has presented no such evidence supporting any popcorn chicken product (box or bag). To the extent Defendant seeks to rely on sketch approval only, that approval does not preempt Plaintiff's claim for the popcorn chicken products for at least two reasons. *First*, the sketch approval on which Defendant seeks to rely, which is dated Feb. 24, 2022, was obtained after this lawsuit was filed on April 1, 2020. *Compare* Dkt. 43 (FAC) *with* Dkt. 87-1 (corrected sketch approval attachment).

| U.S. DEPARTMENT OF AGRICULTURE FOOD SAFETY AND INSPECTION SERVICE **APPLICATION FOR APPROVAL OF LABELS, MARKING OR DEVICE** FSIS has determined that information provided in items 11, 15, and 16 is exempt from mandatory disclosure under Freedom of Information Act 5 U.S.C. 552(b)(4) APPLICANT: See Page 5 for instructions. | 1. AGENT NAME, ADDRESS, TELEPHONE NO. *(If using an Agent, complete this block, otherwise leave blank.)* | 2. FOR USDA USE ONLY **SKETCH APPROVED SUBJECT TO COMPLIANCE WITH FMIA & PPIA & REGULATIONS** Feb 24, 2022 **FSIS U.S. DEPT. OF AGRICULTURE** | 3 |
|---|---|---|---|
| 5a. NAME OF PRODUCT BANQUET Popcorn Chicken - Chicken Breast Patty Fritters With Rib Meat | | | |

*Second*, as stated, Defendant's own statement suggests that at least the box product was on the market before sketch approval was sought. *See* Dkt. 85 at ¶ 4 (noting that the box product "was discontinued at the time Conagra sought sketch approval"). As Plaintiff observes, it is unlawful to place products requiring initial sketch approval into commerce without preapproval. *See, e.g.*, 9 C.F.R. §412.1(a); *see also* Dkt. 73-2 at 7 (FSIS Guideline for Label Approval).

Accordingly, because Defendant has produced insufficient evidence of FSIS approval for the popcorn chicken products (either sketch, generic, or both) from which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-00637-DOC-ADS                                      Date: July 7, 2023

Page 17

the Court can conclude that Plaintiff's claims as to the popcorn chicken products are preempted, Defendant's motion to dismiss is **DENIED-IN-PART** on this ground.

### C. Request for Leave to File Interlocutory Appeal

In view of the Court's ruling on Defendant's request for reconsideration, Defendant's request for permission to appeal is **DENIED AS MOOT**.

### IV. Conclusion

For the reasons stated in this Order, Defendant's motion for reconsideration (Dkt. 73) is **GRANTED**. The request for permission to appeal is **MOOT**. The Court reconsiders its prior order on Defendant's motion to dismiss (Dkt. 72) and further **GRANT IN PART** the motion as to the eleven products identified in this Order, and **DENIES IN PART** the motion as to the popcorn chicken products.

Due to the passage of time since the parties filed their initial joint report, the Court **ORDERS** the parties to file an updated Joint Rule 26(f) Report within fourteen days of this order. The Court will set a further Scheduling Conference by separate order.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                         Initials of Deputy Clerk: kdu

CIVIL-GEN