ANGELA SPIVEY (*pro hac vice*)
ANDREW PHILLIPS (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:   angela.spivey@alston.com
          andrew.phillips@alston.com

RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail:   rachel.lowe@alston.com

Attorneys for Defendant
**CONAGRA BRANDS, INC.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>            Defendant. | Case No.: 8:20-cv-00637-DOC<br><br>Assigned to the Hon. David O. Carter<br><br>**DEFENDANT CONAGRA BRANDS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with the Notice of Motion; Declaration of Andrew G. Phillips; and [Proposed] Order]<br><br>Date:          January 22, 2024<br>Time:          8:30 a.m.<br>Courtroom:   10A |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................. 6

III.   PROCEDURAL HISTORY .................................................................... 8

IV.    LEGAL STANDARD ............................................................................ 8

V.     ARGUMENT.......................................................................................... 9

    A.   Plaintiff's Labeling Claims Are Expressly Preempted by Federal
        Law........................................................................................................ 9

        1.   Plaintiff's Attempt to Parse the FSIS's Approval Decision
                Is Not Permitted and His Analysis Is Wrong in Any
                Event ....................................................................................... 11

        2.   Plaintiff's Claims Based on Allegations Regarding
                Animal Husbandry Are Preempted and Those Allegations
                Independently Fail to Support Any Cognizable Claim ........... 12

        3.   Plaintiff's Displeasure with the Alleged Rigor of the FSIS
                Approval Process Does Not Allow Him to Second-Guess
                FSIS's Decision ..................................................................... 15

    B.   Plaintiff's Popcorn Chicken Claims Fail ............................................ 16

    C.   Plaintiff Cannot Maintain His Website-Based Claims Because They
        Are Materially Identical to the Approved Labeling Claims .............. 21

    D.   Plaintiff Cannot Bring a Nationwide Unjust Enrichment Claim ........ 22

    E.   Plaintiff Lacks Standing to Seek Injunctive Relief and Cannot
        Maintain His Claims for Equitable Relief .......................................... 24

VI.    CONCLUSION ..................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

C<small>ASES</small>

4

*Ablaza v. Sanofi-Aventis United States LLC*,
No. 21-cv-01942, 2023 U.S. Dist. LEXIS 68391 (N.D. Cal. Apr. 13, 2023) ....22

*Akpan v. N.Y. State Div. for Youth*,
97-cv-9379, 1999 U.S. Dist. LEXIS 15366 (S.D.N.Y. Sep. 30, 1999) ..............14

*Allen v. ConAgra Foods, Inc.*,
331 F.R.D. 641 (N.D. Cal. 2019) .................................................................................23

*Amezcua v. Pentagon Fed. Credit Union*,
No. 8:21-cv-01641, 2022 U.S. Dist. LEXIS 109081 (C.D. Cal. May 3,
2022) ...................................................................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................8

*Auer v. Robbins*,
519 U.S. 452 (1997).........................................................................................................16

*Banks v. R.C. Bigelow, Inc.*,
536 F. Supp. 3d 640 (C.D. Cal. 2021) .....................................................................25

*Bartling v. Apple Inc. (In re Apple Processor Litig.)*,
No. 22-16164, 2023 U.S. App. LEXIS 24257 (9th Cir. Sep. 13, 2023) ............24

*Brazil v. Dole Food Co.*,
No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sep. 23, 2013) ..20

*Cohen v. ConAgra Brands, Inc.*,
16 F.4th 1283 (9th Cir. 2021) ...................................................................*passim*

*Fernandez v. Atkins Nutritionals, Inc.*,
No. 3:17-cv-01628, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018).......24

*Forsher v. J.M. Smucker Co.*,
612 F. Supp. 3d 714 (N.D. Ohio 2020) ..................................................................14

*Goldstein v. GM LLC*,
445 F. Supp. 3d 1000 (S.D. Cal. 2020) ....................................................................23

*Ibarra v. Pharmagenics LLC*,
No. 23-cv-00116, 2023 U.S. Dist. LEXIS 39991 (C.D. Cal.
Mar. 8, 2023) ............................................................................................................24, 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Joslin v. Clif Bar & Co.*,
    No. 4:18-cv-04941, 2019 U.S. Dist. LEXIS 192100 (N.D. Cal. Aug. 26,
    2019) ...................................................................................................... 24

*Lemus v. Rite Aid Corp.*,
    613 F. Supp. 3d 1269 (C.D. Cal. 2022) ............................................... 23

*Loh v. Future Motion, Inc.*,
    No. 5:21-cv-06088, 2022 U.S. Dist. LEXIS 121848 (N.D. Cal. July 11,
    2022) ........................................................................................................ 8

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ....................................................... 22, 23

*Podpeskar v. Dannon Co.*,
    No. 16-cv-8478, 2017 U.S. Dist. LEXIS 198948 (S.D.N.Y. Dec. 3,
    2017) .................................................................................................. 13, 14

*Shay v. Apple Inc.*,
    No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415 (S.D. Cal. May 3, 2021) ......... 24

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. June 17, 2020) ................................................ 24

*Swearingen v. Amazon Pres. Partners, Inc.*,
    No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014) .... 20

*Swearingen v. Pac. Foods of Or., Inc.*,
    No. 13-cv-04157, 2014 U.S. Dist. LEXIS 105730 (N.D. Cal. July 30, 2014) ... 20

*Swearingen v. Pac. Foods of Or.*,
    No. 13-cv-04157, 2017 U.S. Dist. LEXIS 39924 (N.D. Cal. Mar. 20, 2017) ...... 6

*Tabler v. Panera LLC*,
    No. 19-cv-01646, 2020 U.S. Dist. LEXIS 114716 (N.D. Cal. June 30, 2020) .. 22

*Vinci v. Hyundai Motor Am.*,
    No. 17-cv-0997, 2018 U.S. Dist. LEXIS 139979 (C.D. Cal. Apr. 10, 2018) .... 23

*Walcoff v. Innofoods USA, Inc.*,
    No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474 (S.D. Cal. May 4, 2023) ......... 23

*Weiss v. Trader Joe's Co.*,
    No. 8:18-cv-01130, 2018 U.S. Dist. LEXIS 220863 (C.D. Cal. Nov. 20,
    2018) ...................................................................................................... 12

*Wilson v. Odwalla, Inc.*,
    No. 17-cv-2763, 2018 U.S. Dist. LEXIS 137456 (C.D. Cal. July 30, 2018) ..... 16

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................8, 22

Fed. R. Civ. P. 12(b)(1) .............................................................................9

Fed. R. Civ. P. 12(b)(6) ............................................................................8

**STATUTES**

21 U.S.C. §§ 451 *et seq.* .........................................................................1

21 U.S.C. § 467e ............................................................................10, 13

**OTHER AUTHORITIES**

7 C.F.R. § 205.605 ...................................................................................19

9 C.F.R. § 412.1 .........................................................................................9

9 C.F.R.§ 412.2 ..........................................................................................9

9 C.F.R. § 424.21 .....................................................................................18

21 C.F.R. § 101.22 ...................................................................................18

78 Fed. Reg. 66826 (Nov. 7, 2013) ...........................................................9

88 Fed. Reg. 2798 (Jan. 18, 2023) .............................................................3

FSIS, "FSIS Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submissions" (Dec. 2019)...........................13

FSIS, "FSIS Guidelines for Label Approval" (Jan. 2023) ................10, 16

FSIS, "Generic Labeling Overview" (Sept. 2019) ...................................10

USDA, Audit Report 24601-0002-23 ........................................................15

USDA, Food Standards and Labeling Policy Book (Aug. 2005)...................*passim*

iv

MEMORANDUM ISO DEFENDANT'S MOTION TO DISMISS SECOND AM. COMPL.

Case No. 8:20-cv-00637-DOC

## I.   __INTRODUCTION__

This third iteration of Plaintiff's complaint against Conagra Brands, Inc. ("Conagra") (1) quixotically pursues claims previously found preempted and dismissed by either this Court or the Ninth Circuit Court of Appeals, (2) lards the complaint with additional, but immaterial, allegations in support of clearly preempted claims, and (3) ultimately suffers from the same fatal flaws as before. Plaintiff continues to challenge statements related to certain Conagra Banquet-brand chicken products (the "Chicken Products") that the United States Department of Agriculture's ("USDA") Food Safety and Inspection Service ("FSIS") has repeatedly approved for use. In particular, the challenged Chicken Products bear some combination of the following statements, all of which have been approved by FSIS: (1) "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients" or "Made with 100% Natural** Chicken Breast with Rib Meat **Minimally Processed, No Artificial Ingredients"; (2) "No Preservatives"; (3) "No Artificial Colors"; and/or (4) "No Artificial Flavors."

Under the statutory regime governing poultry inspection—the Poultry Products Inspection Act (21 U.S.C. §§ 451 *et seq.*, the "PPIA")—pre-approval requires that FSIS determine that the product marking and labeling is not false or misleading. The PPIA also includes an express preemption clause precluding states from imposing marking, labeling, packaging or ingredient requirements "in addition to, or different than" those under the PPIA. Accordingly, all of Plaintiff's claims based on labels that were reviewed and approved by FSIS are preempted. This Court has already twice reached that conclusion, and it should do so again here. Indeed, Plaintiff admits that he has included claims for many Chicken Products that were previously dismissed, but has re-asserted those claims in the Second Amended Complaint ("SAC") to preserve them for appeal.[1]

---

[1] The Court has been clear that any amendment by Plaintiff must be consistent with the Court's prior Orders, that the Court would not entertain further arguments about

Plaintiff's claims based on website representations must also be dismissed as preempted. As the Ninth Circuit previously held in this case, where the representations made on a website and a label are "materially identical," the website representations are preempted based on FSIS label approval. Otherwise, plaintiffs could circumvent preemption by simply challenging an online picture of a label, or ad copy parroting label claims, rather than the label itself. The Ninth Circuit found that ad copy from the Banquet website stating "They're made with 100% natural, white-meat chicken" was essentially identical to the representation on the product labels—"Made with 100% Natural White Meat Chicken"—and thus claims based on the online "100% Natural" representation were preempted.

The Ninth Circuit—before the sketch approvals and FSIS labeling guidance were in the record—previously declined to find that website representations that the Chicken Products were made "without preservatives, artificial flavors, or artificial colors" were preempted. According to the Ninth Circuit, although FSIS approved the labeling claims "No Preservatives," "No Artificial Colors," and "No Artificial Flavors," the label did not specify that these claims applied to the products as a whole (as opposed to just the white meat chicken portion of the Chicken Products), while the website representations referred to "the whole product, not just the 'natural, white-meat chicken.'" However, FSIS's Guidelines for Label Approval, which were not before the Ninth Circuit, make clear that FSIS evaluates negative claims with respect to the product as a whole, not just the poultry or meat portion of the product.[2] Thus, FSIS approved label claims that the

---

subsequent generic approval for label changes unrelated to the special claims, and that Plaintiff should heed the Ninth Circuit's guidance. *See* Dkt. 90 at 14 n.2.

[2] *See* FSIS Guidelines for Label Approval" at p. 25 (Jan. 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf ("Negative claims are claims that state a **product** does not contain a certain ingredient." (emphasis added)). Plaintiff has taken the position that it is unnecessary to request judicial notice of documents from FSIS's website because these documents are "more akin to legal authority," and the Court has agreed. Dkt. 52 at 3 n.1; Dkt. 72 at 7.

Chicken Products, not just the chicken portion of the products, contained "No Preservatives," "No Artificial Colors," and "No Artificial Flavors." The website representations stating "They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors"—are materially identical to the approved label statements and thus must be preempted.

The new allegations in Plaintiff's SAC, meanwhile, do not bring Plaintiff any closer to stating a viable claim. In the SAC, Plaintiff has: (1) added or expanded on allegations impugning the FSIS approval process; (2) expanded on (unfounded and irrelevant) allegations about animal husbandry practices; (3) added claims specifically about Popcorn Chicken; (4) emphasized that his claims relate to the entire putative class period, from April 2016 to the present; and (5) added a nationwide unjust enrichment claim. These allegations do not save Plaintiff's claims for multiple reasons.

*First*, Plaintiff's displeasure with the PPIA and FSIS's approval process cannot be channeled into consumer products litigation. This is the statutory scheme Congress has enacted, and Plaintiff cannot rely on state law to impose different requirements than Congress. Moreover, it is worth noting that while Plaintiff repeatedly cites to an Office of Inspector General audit he claims shows deficiencies in the label approval process, FSIS has "expressed concerns that the audit was flawed in several areas, and that OIG misinterpreted specific labeling regulations and how they are applied to the labeling review process." 88 Fed. Reg. 2798, 2801 (Jan. 18, 2023).

*Second*, Plaintiff claims that reasonable consumers expect that poultry advertised as "natural" is derived from a "natural" source "e.g., the raising, feeding and husbandry practices enable the product to remain 'natural'" (Dkt. 98 ¶ 36)—but that the poultry in the Chicken Products has been subjected to "unnatural" animal raising, feeding, and slaughtering practices. Because these claims seek to challenge the pre-approved "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients" or "Made with 100% Natural** Chicken Breast with Rib Meat **Minimally Processed, No Artificial Ingredients" representations, they are also

preempted under the PPIA. No further consideration of these allegations is necessary or permitted. Moreover, Plaintiff cannot bring claims based on animal husbandry allegations for the additional reasons that: (1) Conagra never made any representations about how the poultry in the Chicken Products is raised or slaughtered—rather it represented that the chicken **meat** is "100% natural" and further defined what that meant on the product label: the *meat* is minimally processed with no artificial ingredients; (2) FSIS has likewise defined "natural" to mean minimally processed and containing no artificial ingredients and Plaintiff cannot substitute his judgment and interpretation for FSIS's; (3) Plaintiff's animal husbandry allegations are generalized, speculative, and not specific to Conagra; and (4) Plaintiff has not sufficiently alleged Conagra had knowledge of the alleged animal husbandry practices of third-party suppliers.

*Third*, Plaintiff cannot show Conagra made any misleading or false statement that he relied on with respect to the Popcorn Chicken products. As set forth in Exhibit A, Conagra received sketch approval for the Popcorn Chicken product label bearing the claim "Made with 100% Natural* Chicken Breast with Rib Meat *Minimally Processed, No Artificial Ingredients" in 2016, *before* introducing the Popcorn Chicken product into commerce. In 2022, after Conagra reformulated the ingredients in the Popcorn Chicken product, Conagra obtained sketch approval for the Popcorn Chicken product label bearing the claims: (1) "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients"; (2) "No Preservatives"; (3) "No Artificial Colors"; and (4) "No Artificial Flavors." Thus, Plaintiff cannot assert any claim based on the pre-approved 2016 and 2022 labels of the Popcorn Chicken product.

In between these time periods, from 2018-2022, the Popcorn Chicken product (with the same ingredients as in 2016) was sold with the same label claims as were approved in 2022. None of the claims on the 2018 label are false or misleading, as confirmed by FSIS. The "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients" claim on the 2018 label is synonymous with the approved "Made with 100% Natural* Chicken Breast with Rib Meat *Minimally

Processed, No Artificial Ingredients" claim on the 2016 label, and there are no differences between the ingredients as between 2016 and 2018. Thus, FSIS already approved the "100% Natural" claim for those specific ingredients. In 2022, FSIS approved the "No Preservatives," "No Artificial Colors," and "No Artificial Flavors" claims for the reformulated 2022 Popcorn Chicken product. The only differences in ingredients between the 2018 Popcorn Chicken product and the 2022 Popcorn Chicken product were that the 2018 product included Soy Flour and the 2022 product included Textured Soy Flour, and that the 2018 product included Sugar and Whey, while the 2022 product did not. But Plaintiff does not claim that Soy Flour, Sugar, or Whey are preservatives, artificial colors, or artificial flavors. The only ingredients Plaintiff contends are preservatives—Sodium Phosphates (or Sodium Tripolyphosphate), Sodium Acid Pyrophosphate, and Modified Corn Starch—are all included in the 2022 Popcorn Chicken product, for which FSIS approved the no preservatives claims (demonstrating FSIS does not share Plaintiff's view). Autolyzed Yeast Extract, which Plaintiff claims is a "flavoring agent," is also present in the 2022 Popcorn Chicken product, with the approved no artificial flavors claim.[3] And Plaintiff does not identify any artificial colors. Accordingly, FSIS has confirmed that the ingredients in the 2018 Popcorn Chicken product are not preservatives, artificial ingredients, or artificial colors, and the Court should defer to FSIS's expertise in implementing its own regulations.

Plaintiff alternatively claims he was deceived by the sheer act of placing the Popcorn Chicken into the market, which represented that the Popcorn Chicken complied with the PPIA. But courts in this Circuit have resoundingly rejected this theory of liability, finding a Plaintiff cannot claim to have "relied on defendant's representation that the misbranded food products were legal" and that he "would not have bought the

---

[3] In addition, according to the USDA Food Standard and Labeling Policy Book, "[a]utolyzed yeast extract *is not considered an artificial flavoring*." USDA, Food Standards and Labeling Policy Book (Aug. 2005), *available at* https://www.fsis. usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf (emphasis added).

misbranded food products if defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess." *Swearingen v. Pac. Foods of Or.*, No. 13-cv-04157, 2017 U.S. Dist. LEXIS 39924, at *4 (N.D. Cal. Mar. 20, 2017). Rather, a plaintiff must plead reliance on allegedly false labeling statements. But, here, FSIS has determined those statements were not false or misleading in the context of the 2016 Popcorn Chicken product and 2022 Popcorn Chicken Product.

*Fourth*, for all remaining labels, the chart in Exhibit A conclusively shows FSIS pre-approval of all versions of the labels (from 2016 onward). For each of those labels, Conagra either: (1) received sketch approval from FSIS; or (2) generically approved based on a prior sketch approval because the modifications to the product or label (removal of ingredient, change in predominance of ingredients, change in packaging from bag to box, change in net weight, change in patty shape, or change in nutrition facts panel) did not relate to the already sketch-approved special claims.

*Fifth*, Plaintiff cannot maintain a nationwide unjust enrichment claim because he lacks standing to bring claims under the laws of states where he did not purchase the Chicken Products and there are material conflicts among the fifty states' laws with respect to unjust enrichment claims.[4]

For all of these reasons, as discussed in more detail below, the Court should grant Conagra's Motion to Dismiss the SAC.

## II.  FACTUAL BACKGROUND

Plaintiff challenges the product labeling of 13 varieties of Banquet-brand chicken manufactured by Conagra, such as chicken nuggets and chicken patties. Dkt. 98 ¶ 24 (defining the challenged Chicken Products). Plaintiff claims the Chicken Products' advertising and product packaging stated that they were "'100% Natural' and contained

---

[4] In the event any claims survive dismissal, the Court should also dismiss Plaintiff's request for injunctive relief because he cannot plausibly be deceived by the product labeling in the future.  Plaintiff also cannot maintain claims seeking equitable relief because he has not plausibly alleged an inadequate remedy at law.

'no preservatives,' 'no artificial colors,' and 'no artificial flavors.'" *Id.* at ¶ 3. The full versions of the actual representations made on the labels are: "(1) "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients" or "Made with 100% Natural** Chicken Breast with Rib Meat **Minimally Processed, No Artificial Ingredients"; (2) "No Preservatives"; (3) "No Artificial Colors"; and/or (4) "No Artificial Flavors." *See* Ex. A; Exs. B-O.[5] Plaintiff alleges Conagra's representations on the Chicken Products' labels are false and misleading because the products allegedly "do contain preservatives"—Sodium Acid Pyrophosphate, Sodium Tripolyphosphate, and/or Modified Corn Starch. *Id.* at ¶¶ 40. Plaintiff also claims the Chicken Products contain Autolyzed Yeast Extract, an alleged "flavoring agent," although he does not go so far as to characterize this as an artificial flavor (it is not). *Id.* at ¶ 43. Plaintiff does not identify any artificial colors allegedly used in the Chicken Products. Notably, all the ingredients Plaintiff identifies in his SAC are clearly listed on the Chicken Products' ingredient lists. *See* Exs. B-O. Plaintiff also alleges that animal husbandry practices employed across the chicken processing industry by Conagra's purported suppliers[6] means the chicken used by Conagra does not meet a reasonable consumer's expectation of "natural." *Id.* at ¶¶ 44-53.

In 2018, after having purchased the Chicken Products for three years, Plaintiff visited Conagra's Banquet website for the first time—which he located through a search engine. *Id.* at ¶¶ 77-78. The website predominantly features an image of the front

---

[5] Exhibit A to the Declaration of Andrew G. Phillips ("Phillips Declaration") is a table specifying the challenged claims on each of the Chicken Products and comparing the product labeling to a sketch approval. Exhibits B through O of the Phillips Declaration are the various iterations of the product labels from 2016 onward for each type of packaging, organized by product (e.g., all Chicken Breast Nuggets labels are grouped together). Exhibit P contains the sketch approvals. The Court has previously concluded that it may judicially notice the sketch approvals and Chicken Product labels summarized in the chart. *See* Dkt. 72 at 6.

[6] Plaintiff alleges on information and belief that Conagra sources its chicken from "companies such as Tyson, Sanderson Farms and Pilgrim's Pride," but does not identify the source of that belief. Dkt. 98 at ¶ 47.

packaging of the product. The website also includes a short description paraphrasing the representations on the label, stating, e.g.: "[The product is] made with 100% natural white-meat chicken, and without preservatives, artificial flavors, or artificial colors." *Id.* at ¶ 72. By early 2018, Plaintiff purportedly began to question the accuracy of the representations concerning the Chicken Products. *Id.* at ¶ 79. In May 2019, Plaintiff issued a CLRA demand letter. *Id.* at ¶ 82. In April 2020, Plaintiff filed his initial Complaint, which he amended for a second time on September 12, 2023. He now asserts claims under the CLRA, FAL, and UCL on behalf of a putative California-only class and a putative unjust enrichment nationwide class.

## III.   **PROCEDURAL HISTORY**

On August 20, 2020, this Court dismissed all of Plaintiff's claims with prejudice, finding they were preempted under the PPIA: "Because the FSIS approved the labeling of the Chicken Products, including the specific representations challenged by Plaintiff, exposing Defendant to liability under state law on the basis of said labeling would establish a different or additional standard under state law. This is expressly prohibited by the PPIA and FMIA." Dkt. 29 at 4. Plaintiff appealed. The Ninth Circuit held that: (1) if Conagra's labels were approved by FSIS, then Plaintiff's labeling claims were preempted; and (2) website representations that were "materially identical" or "essentially identical" to the approved label claims were also preempted. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1290 (9th Cir. 2021). The Ninth Circuit remanded for the limited purpose of determining whether Conagra's labels were reviewed and approved by FSIS. *Id.* Through orders issued March 20, 2023 and July 7, 2023, the Court dismissed as preempted labeling claims for all the challenged Chicken Products except Popcorn Chicken. *See* Dkt. 72 at 12; Dkt. 90 at 17.

## IV.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory." *Amezcua v. Pentagon Fed. Credit Union*, No. 8:21-

8

cv-01641, 2022 U.S. Dist. LEXIS 109081, at \*5 (C.D. Cal. May 3, 2022) (Carter, J.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This pleading standard also applies to Plaintiff's unjust enrichment, CLRA, UCL, and FAL claims based on a fraud theory. *Loh v. Future Motion, Inc.*, No. 5:21-cv-06088, 2022 U.S. Dist. LEXIS 121848, at \*15 (N.D. Cal. July 11, 2022). Finally, a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1).

## V.   ARGUMENT

### A.   Plaintiff's Labeling Claims Are Expressly Preempted by Federal Law

Setting aside the Popcorn Chicken product, as labeled from 2018-2022 (which is addressed separately), all of Plaintiffs' claims based on the labeling of the Chicken Products are preempted.

As the Court has previously explained, FSIS approves packaging through various methods, including sketch approval and generic approval. *See* 9 C.F.R. § 412.1. Labels subject to sketch approval, including labels that make special claims such as "natural," are submitted to FSIS for approval. *Id.* Other labels, without such special claims, may be generically approved. "Generic label approval refers to the prior approval of labels or modifications to labels by the Agency [USDA] without submitting such labels to FSIS for sketch approval. . . . Although such labels are not submitted to FSIS for approval, they are deemed to be approved and, therefore, may be applied to product in accordance with the Agency's prior label approval system." 78 Fed. Reg. 66826, 66827 (Nov. 7, 2013).

In addition, if a label has been previously sketch approved for a special claim (e.g., a "natural" claim), it can be generically approved after subsequent modifications to the label if the modifications in question do not affect the special claim. *See* 78 Fed.

Reg. 66826, 66830 (Nov. 7, 2013). When such generic approval occurs, the modified labels do not need to be submitted to FSIS because they only use "pre-approved" terms and definitions contained in the USDA's labeling policy book. *See* 9 C.F.R. § 412.2; *see also* Dkt. 90 at 6. Among the permissible changes that can be made to a label with an already approved special claim that do not require re-submission for sketch approval (and can instead be generically approved) are: removing ingredients, changing the predominance of ingredients, changing the form of a product (e.g., link to patty form), updating nutrition facts values, changing net weight, and changing the type of packaging (e.g., back to box). *See* Dkt. 90 at 8.[7]

The PPIA includes an express preemption provision, which provides that any "[m]arking, labeling, packaging, or ingredient requirements . . . **in addition to, or different than**, those made under [this chapter] **may not be imposed by any State** or Territory . . . with respect to articles prepared at any official establishment." 21 U.S.C. § 467e (emphasis added). Thus, for any label reviewed and approved by FSIS, Plaintiff's labeling-based claims—which would attempt to impose liability on Conagra under labeling requirements that are different than the PPIA—are expressly preempted. *See* Dkt. 29 at 4; Dkt. 90 at 2; *Cohen*, 16 F.4th at 1290.

As set forth in Exhibit A, for each of the labels of the challenged Chicken Products at issue, Conagra either: (1) received sketch approval for the label; or (2) received sketch approval for a prior version of the label and only made product and label changes unrelated to the special claims, which do not require re-submission for sketch approval and may be generically approved.[8] These changes include removing

---

[7] *See also* FSIS, "Generic Labeling Overview" at Slide 39 (Sept. 25, 2019), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/2021-02/generic-labeling-webinar.pdf; FSIS, "FSIS Guidelines for Label Approval" at p. 21-23 (Jan. 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf.

[8] The chart does not contain an "Original Chicken Breast Tenders" product because Conagra has never manufactured or sold a product by that name.

ingredients, changing the predominance of ingredients, changing net weight, changing values in the nutrition facts panel, changing product shape and name (e.g., nugget to strip), and changing product packaging (e.g., bag to box)—all of which the Court previously found were permissible changes that can be generically approved. *See* Dkt. 90 at 10-13. Indeed, the Court has already dismissed claims related to the labeling of most of these Chicken Products. *See id.*[9]

Plaintiff tries to circumvent preemption by: (1) arguing that FSIS reached the wrong conclusion when pre-approving Conagra's claims related to "100% Natural White Meat Chicken"; (2) proffering a definition of "natural" based on how the chickens were raised and slaughtered that is different from FSIS's interpretation of "natural"; and (3) attacking the FSIS approval process. All of these arguments run headfirst into the Ninth Circuit's admonishment that Plaintiff "may not try to argue or show that FSIS's approval decision was wrong" and "[o]nce the agency has decided that a poultry label meets the requirements of federal law, a plaintiff has no recourse through state law . . . ." *Cohen*, 16 F.4th at 1290. Plaintiff's arguments fail for additional independent reasons as well.

### 1.    Plaintiff's Attempt to Parse the FSIS's Approval Decision Is Not Permitted and His Analysis Is Wrong in Any Event

According to Plaintiff, the ingredient list for the Chicken Products is "separated into three categories (1) meat; (2) Breader; and (3) Batter." Dkt. 98 ¶ 43. Plaintiff contends that the "100% Natural White Meat Chicken" representation is misleading because "[i]n the 'meat' category (aside from the breader and batter), the meat includes ingredients other than '100% Natural White Meat Chicken,' such as modified corn starch, soy flour, isolated soy protein, and autolyzed yeast extract." *Id.*

---

[9] The Court previously dismissed claims relating to all previously asserted products except Popcorn Chicken, which included (in various sizes and packaging) Chicken Breast Tenders – Buffalo Style; Chicken Breast Nuggets; Hot & Spicy Bone-in Wings; Original Chicken Nuggets; Original Crispy Fried Chicken; Whole Grain Chicken Breast Strips; Chicken Breast Patties; Chicken Breast Strips; Chicken Breast Tenders; and Original Chicken Patties. *See* Dkt. 72 at 9; Dkt. 90 at 10-13.

As an initial matter, this is nothing more than an improper attempt to second-guess FSIS's decision. FSIS received sketch approval applications listing out both the Chicken Product ingredients including Modified Corn Starch, Soy Flour, Isolated Soy Protein, and Autolyzed Yeast Extract and the claims Conagra intended to make, including "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients"—and approved use of that claim with use of those ingredients. Plaintiff may not argue that decision was wrong. *Cohen*, 16 F.4th at 1290.

Regardless, it is Plaintiff's analysis that is wrong. "Meat" is not one of three "categories" of the ingredients listed for the Chicken Products. Rather the categories are, e.g., "Chicken Nugget Patties," "Breader," and "Batter."[10]



One of the ingredients included in the Chicken Nugget Patties is "Chicken Breast with Rib Meat." The challenged representation only states that the "White Meat Chicken"—i.e., the Chicken Breast with Rib Meat—is 100% Natural (meaning "Minimally Processed, No Artificial Ingredients"). The label does ***not*** state "Made with 100% Natural Chicken Nugget Patties." The actual representation made on the product label thus could not mislead a reasonable consumer because a reasonable consumer would not "assume things about a product other than what the statement actually says." *Weiss v. Trader Joe's Co.*, No. 8:18-cv-01130, 2018 U.S. Dist. LEXIS 220863, at *13 (C.D. Cal. Nov. 20, 2018) (cleaned up) (citation omitted).

### 2.   Plaintiff's Claims Based on Allegations Regarding Animal Husbandry Are Preempted and Those Allegations Independently Fail to Support Any Cognizable Claim

Plaintiff also claims that the "Made with 100% Natural* White Meat Chicken

---

[10] Example provided is Chicken Breast Nuggets – 2020 Label (Box).

*Minimally Processed, No Artificial Ingredients" claim is misleading because the poultry used in the Chicken Products was subjected to purportedly "unnatural" animal husbandry and slaughtering practices. But again, FSIS has approved Conagra's use of the "Made with 100% Natural White Meat Chicken" claim on the label, and Plaintiff cannot second-guess that decision. *Cohen*, 16 F.4th at 1290.

Plaintiff argues FSIS approval does not extend to whether the source of the Chicken Products was "natural" because FSIS defines natural as referring solely to the ingredients in the final physical product. Dkt. 98 ¶ 58. Plaintiff is correct as to how FSIS interprets natural.[11] Plaintiff is wrong, however, that he may bring a claim based on an interpretation of "natural" that end runs FSIS's interpretation. Doing so would clearly impose a requirement that is ***different than*** that which is required under the PPIA. 21 U.S.C. § 467e. In other words, the requirement under the PPIA, as implemented through FSIS's review and approval process,[12] is that "natural" must comply with the definition "minimally processed and no artificial ingredients." A requirement that "natural" must meet the standard put forth by Plaintiff—relating to animal husbandry practices—is a different requirement altogether. Thus, Plaintiff's claims based on animal husbandry are preempted.

In addition, Plaintiff's position is implausible and unreasonable as a matter of law. As one court explained, "[t]here is no legal support for the idea that a cow that eats GMO feed or is subjected to hormones or various animal husbandry practices produces 'unnatural' products." *Podpeskar v. Dannon Co.*, No. 16-cv-8478, 2017 U.S. Dist.

---

[11] In fact, FSIS has promulgated an entirely separate set of guidelines for animal welfare and environmental stewardship claims, living/raising/raising conditions claims, negative antibiotics use, etc. *See* FSIS, "FSIS Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submissions" (Dec. 2019), *available at* https://fsis.usda.gov/sites/default/files/media_file/2021-02/RaisingClaims.pdf. But the Chicken Products do not include any of these types of claims on the labels.

[12] *See* Cohen, 16 F.4th at 1288 (explaining that FSIS imposes a federal requirement within the meaning of § 467e when it reviews and approves a label).

LEXIS 198948, at *12 (S.D.N.Y. Dec. 3, 2017). Plaintiff's position here is even more untenable because the natural representations on the label refer to the chicken **meat** and include the clarification that natural means the meat is minimally processed and contains no artificial ingredients. Meat is not raised or fed—birds are. And no reasonable consumer would interpret claims about meat (animal flesh) being minimally processed and containing no artificial ingredients as referring to whether chickens were raised in sunlight. *See* Dkt. 98 ¶ 52.

Further, Plaintiff's animal husbandry allegations are grossly speculative, based on allegations concerning "the commercial chicken processing industry" in general—not facts specific to Conagra.[13] Dkt. 98 at ¶ 53. Even as to the identity of Conagra's chicken supplier, Plaintiff proceeds only on information and belief.[14] These types of speculative allegations are insufficient to survive a motion to dismiss, particularly with respect to a complaint grounded in fraud. *See Podpeskar*, 2017 U.S. Dist. LEXIS 198948, at *3 n.1, *9-10 (rejecting plaintiff's speculative claims where she "broadly describe[d] animal husbandry practices . . . nationwide" and "allege[d] very little about [defendant's] specific practices"); *Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 724 (N.D. Ohio 2020) (dismissing plaintiff's attenuated claims based on allegations that sugar in industry is largely derived from GMO crops, so defendant's sweetened product was not natural).

Finally, and relatedly, Plaintiff has not "sufficiently established [Conagra's] knowledge of the problem that led to the deception at the time of the sale" as required for each of his claims. *Forsher*, 612 F. Supp. 3d, at 721. Plaintiff's animal husbandry

---

[13] Indeed, under Plaintiff's theory, virtually every poultry product labeled "natural" throughout the country is deceptively labeled (notwithstanding that FSIS reviews and approves all poultry labeling) because the chicken has been subjected to allegedly un-natural animal husbandry practices that are "uniform" across the entire industry.

[14] "'[U]pon information and belief' . . . is just another way of saying, 'I don't have any facts, but I would like it to be true.'" *Akpan v. N.Y. State Div. for Youth*, 97-cv-9379, 1999 U.S. Dist. LEXIS 15366, at *14 (S.D.N.Y. Sep. 30, 1999).

allegations all relate to how third-party suppliers raise their chickens, and Plaintiff in no way shows Conagra was aware of or endorsed these practices.

Accordingly, Plaintiff cannot sustain labeling or advertising claims premised on animal husbandry practices rendering the "natural" claims misleading.

### 3. Plaintiff's Displeasure with the Alleged Rigor of the FSIS Approval Process Does Not Allow Him to Second-Guess FSIS's Decision

Plaintiff claims that FSIS has merely "rubber-stamp[ed] the labels" for the Chicken Products and its review process was "arbitrary, capricious, and/or without observance of the procedures required by law." Dkt. 98 ¶¶ 60-66. Plaintiff's support for this brazen claim is that the Chicken Products labeled as "Made with 100% Natural White Meat Chicken" contained ingredients such as Isolated Soy Protein (in the chicken patty, *not* the white meat chicken ingredient). Plaintiff's unreasonable interpretation of the claims actually made on the label is not evidence of a lack of government oversight. Moreover, this is just another way of Plaintiff saying he disagrees with FSIS's final decision to pre-approve the labels. But "[a]llowing private consumers to second-guess the agency's decisions through state law claims against producers would both circumvent that pre-approval process and conflict with the PPIA's goal of national uniformity." *Cohen*, 16 F.4th at 1288.

Plaintiff's contention that Conagra did not provide sufficient documentation to FSIS to support the claims fares no better. Dkt. 98 ¶ 67. Whether Conagra provided sufficient documentation is part of FSIS's decision-making process. As explained in the OIG report Plaintiff clings to, once FSIS's Labeling and Program Delivery Staff ("LPDS") receive a sketch application, LPDS may approve the label, approve the label with modifications, or "return the label application to an establishment and request additional documentation."[15] It is not up to Plaintiff to decide that FSIS based its

---

[15] USDA, Audit Report 24601-0002-23, *available at* https://www.oversight.gov/sites/default/files/oig-reports/24601-0002-23.pdf (incorporated by reference in the SAC).

decision on insufficient information.[16]

In short, FSIS approved the labels of the Chicken Products and that approval decision preempts Plaintiff's attempt to use state law to impose different requirements on Conagra.

**B.   Plaintiff's Popcorn Chicken Claims Fail**

As an initial matter, Conagra's Exhibit A demonstrates that (1) the 2016 Popcorn Chicken label and (2) the 2022 Popcorn Chicken label were pre-approved by FSIS. Thus, the only Popcorn Chicken label remaining at issue is the 2018 Popcorn Chicken label.

The Popcorn Chicken product sold from 2018-2022 had the same ingredients as the Popcorn Chicken product sold in 2016. The label for the 2016 Popcorn Chicken product approved by FSIS included the claim "Made with 100% Natural* Chicken Breast with Rib Meat *Minimally Processed, No Artificial Ingredients." That claim is synonymous with the claim made on the 2018 Popcorn Chicken label: "Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients." FSIS's decision in 2016 to approve the claim relating to the "100% Natural" chicken meat should be given preemptive effect. Changing an approved claim to a synonymous claim is a label change that does not require additional FSIS review, just like changing the patty shape or packaging type.[17] In addition, under the Ninth Circuit's rationale, the claims are "essentially identical" or "materially identical," which further supports a finding of preemption as to the "100% Natural" claim. *Cohen*, 16 F.4th at 1290. And, even if the Court stops short of finding preemption, it should still defer to FSIS's

---

[16] Further, Plaintiff claims that Conagra has not substantiated any claim that the chicken is "100% Natural," but Plaintiff has put forth a definition of "natural" to which FSIS does not adhere. Conagra was not required to submit documentation on how the chickens were raised because it does not make any animal raising claims.

[17] "FSIS Guidelines for Label Approval" at p. 21-23 (Jan. 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf.

interpretation of its own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Wilson v. Odwalla, Inc.*, No. 17-cv-2763, 2018 U.S. Dist. LEXIS 137456, at *6 (C.D. Cal. July 30, 2018) (explaining that agency's interpretation of its regulations is entitled to judicial deference, even where the agency's guidance is the product of an informal process). Here, FSIS has expressed its view that the ingredients in the 2016 Popcorn Chicken products (which are the same as the 2018 Popcorn Chicken products) are consistent with a claim that the Popcorn Chicken contains "100% Natural" chicken meat through the formal FSIS label review process.

With respect to the remaining claims regarding no preservatives, no artificial colors, and no artificial flavors, FSIS pre-approved those claims for use with the 2022 Popcorn Chicken products. The only differences in ingredients as between the 2018 Popcorn Chicken products and the sketch approved 2022 Popcorn Chicken products are: (1) the 2018 Popcorn Chicken products used Soy Flour while the 2022 Popcorn Chicken Sketch Approval lists Textured Soy Flour; and (2) the 2018 Popcorn Chicken Products contain Whey and Sugar, which the 2022 Popcorn Chicken Sketch Approval does not list.

| **2018 Popcorn Chicken Label** | **2022 Popcorn Chicken Sketch Approval** |
|---|---|
| CHICKEN PATTIES (Chicken Breast with Rib Meat, Water, **Soy Flour**, Modified Corn Starch, Salt, Autolyzed Yeast Extract, Sodium Phosphates, Natural Flavoring), BREADER (Wheat Flour, Salt, Dextrose, Spice, Soybean Oil, **Whey**, Extractives of Paprika), BATTER (Water, Yellow Corn Flour, Corn Starch, Spices, Salt, **Sugar**, Autolyzed Yeast Extract,[18] Guar Gum, Leavening [Sodium Acid Pyrophosphate, | CHICKEN PATTIES (Chicken Breast With Rib Meat, Water, **Textured Soy Flour**, Modified Corn Starch, Salt, Autolyzed Yeast Extract, Sodium Phosphates, Natural Flavoring), BREADER (Wheat Flour, Dextrose, Salt, Spice, Soybean Oil, Extractives Of Paprika), BATTER (Water, Yellow Corn Flour, Corn Starch, Salt, Spices, Guar Gum, Leavening [Sodium Acid Pyrophosphate, Sodium Bicarbonate, |

---

[18] The 2018 Popcorn Chicken includes Autolyzed Yeast Extract in the Chicken Patties and the Breader. The 2022 Popcorn Chicken Sketch Approval contains Autolyzed Yeast Extract just in the Chicken Patties.

| Sodium Bicarbonate, Monocalcium Phosphate], Garlic Powder). Fried in Vegetable Oil. CONTAINS: SOY, MILK, WHEAT | Monocalcium Phosphate], Garlic Powder). Fried In Vegetable Oil. CONTAINS: SOY, WHEAT |
| --- | --- |

Thus, FSIS has already expressed its view for all of the ingredients in the 2018 Popcorn Chicken label—aside from Soy Flour, Whey, and Sugar—that those ingredients may be included in a product labeled as containing "No Preservatives," "No Artificial Colors," and "No Artificial Flavors." And, to be clear, FSIS has stated in its Guidelines that "[n]egative claims are claims that state *a product* does not contain a certain ingredient."[19] In other words, FSIS's approval of the 2022 Popcorn sketch application necessarily serves as FSIS's recognition that none of the ingredients in that 2022 ingredient list constitute preservatives, artificial colors, or artificial flavors. Plaintiff is asking the Court to wade into dangerous territory by asking it to weigh in on a label that FSIS has already approved, regardless of the timing of that decision. Allowing the claim to proceed means a fact-finder would be in a position of coming to a conclusion different than the USDA, which is precisely why doctrines such as preemption and judicial deference exist.

That leaves only Soy Flour, Whey, and Sugar, which Plaintiff has never contended are preservatives, artificial colors, or artificial flavors. Indeed, Plaintiff alleges only that "STPP [Sodium Tripolyphosphate] and SAPP [Sodium Acid Pyrophosphate] are preservatives." FAC ¶ 41. But as USDA's regulations show, Sodium Tripolyphosphate is approved for use in meat and poultry products to "decrease the amount of cooked out juices." 9 C.F.R. § 424.21. Although other ingredients are listed in that regulation as preservatives, Sodium Tripolyphosphate is not.[20] Thus, FSIS

---

[19] FSIS Guidelines for Label Approval" at p. 25 (Jan. 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added).

[20] *See e.g.*, *id.* (entry for sorbic acid: purpose is to "preserve product and to retard mold growth"). According to USDA's Food Standards and Labeling Policy Book, USDA defines preservative in accordance with 21 C.F.R. § 101.22, which means "any chemical

does not view Sodium Tripolyphosphate as a preservative. Sodium Acid Pyrophosphate, meanwhile, is used as a leavening agent, not a preservative, as disclosed on the Chicken Product labels themselves:



In fact, USDA allows for a product to be labeled as "organic" even when it contains Sodium Acid Pyrophosphate used as a leavening agent. *See* 7 C.F.R. § 205.605(b)(30).[21] Meanwhile, the closest Plaintiff comes to identifying any alleged artificial flavor is claiming that Autolyzed Yeast Extract is a "flavoring agent from yeast." SAC ¶ 43. But USDA's Food Standards and Labeling Policy Book is clear that "[a]utolyzed yeast extract is not considered an artificial flavoring."[22] Finally, Plaintiff has not identified any artificial color in any of the Chicken Products.

In short, FSIS has already determined that every ingredient in the Popcorn Chicken, with the exception of Soy Flour, Whey, and Sugar, is not a preservative, artificial flavor, or artificial color—and the Court should defer to FSIS's expertise in reaching that determination. So, to plausibly allege deception here, Plaintiff must allege that Soy Flour, Whey, and Sugar are preservatives, artificial colors, or artificial flavors. He has not and cannot do so. Accordingly, the Court should dismiss the Popcorn Chicken claims as well.

---

that, when added to food, tends to prevent or retard deterioration thereof." *See* USDA, Food Standards and Labeling Policy Book (Aug. 2005), *available at* https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf.

[21] It is unclear from the SAC whether Plaintiff contends that Modified Corn Starch is a preservative, or just a synthetic ingredient. *Compare* SAC ¶ 40, *with* SAC ¶ 73. But FSIS classifies modified food starches like modified corn starch as a "bulking agent," not a preservative. *See* USDA, Food Standards and Labeling Policy Book (Aug. 2005), *available at* https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf.

[22] USDA, Food Standards and Labeling Policy Book (Aug. 2005), *available at* https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf (emphasis added).

Plaintiff also claims he was misled by the sheer act of the Popcorn Chicken product being placed into commerce because he relied on the Popcorn Chicken product's compliance with the PPIA.[23] Courts in this Circuit have consistently rejected similar theories where a plaintiff brought claims "based solely upon allegations that he would not have purchased a product that was misbranded." *Brazil v. Dole Food Co.*, No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921, at *31 (N.D. Cal. Sep. 23, 2013) (dismissing UCL, CLRA, and FAL claims), *aff'd* 660 F. App'x 531, 534 (9th Cir. 2016) ("The district court correctly dismissed [plaintiff's] claims for the sale of 'illegal products.'"); *Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830, at *5 (N.D. Cal. Mar. 18, 2014) (rejecting argument that plaintiffs adequately pled reliance by claiming they purchased the product implicitly relying on the defendant to sell a product that did not violate labeling laws and that was legal to sell).

These courts have explained, for instance, that "[f]or standing under the UCL, the California Supreme Court has required actual reliance on the alleged product label misrepresentation." *Swearingen v. Pac. Foods of Or., Inc.*, No. 13-cv-04157, 2014 U.S. Dist. LEXIS 105730, at *4 (N.D. Cal. July 30, 2014). "In addition, 'as with the UCL, plaintiffs must allege reliance on the specific marketing materials claimed to be misleading in order to establish standing to bring claims under the CLRA'" or FAL. *Id.* These statutes, in other words, extend to a specific type of misrepresentation—the mislabeling of products—and do not provide a right of action solely based on the alleged introduction of an "illegal" or "noncompliant" product into the marketplace. *Swearingen*, 2014 U.S. Dist. LEXIS 36830, at *5. Thus, Plaintiff is left with the specific

---

[23] This position is inconsistent with every other claim Plaintiff has asserted. The crux of Plaintiff's other claims is that FSIS reached the wrong decision in pre-approving the product and a consumer cannot reasonably rely on FSIS's decision. Now, Plaintiff claims that he was misled by relying on the FSIS approval process. Plaintiff cannot have it both ways, and he cannot show reasonable reliance because of his insistence that the FSIS approval process is unreliable.

labeling and advertising representations that FSIS has already approved in connection with all of the targeted Popcorn Chicken ingredients.

**C.**   **Plaintiff Cannot Maintain His Website-Based Claims Because They Are Materially Identical to the Approved Labeling Claims**

In addition to labeling claims, Plaintiff asserts claims based on alleged misrepresentations made on the Banquet website (and in unidentified circulars, coupons, and other media). These claims, too, fail.

The Ninth Circuit previously held that any website representation that is "materially identical" to a claim approved by FSIS would also be preempted under the PPIA. *Cohen*, 16 F.4th at 1290. The Ninth Circuit analyzed the website representation "They're made with 100% natural, white meat chicken and without preservatives, artificial flavors, or artificial colors," and found the first portion of the sentence— "They're [(the Chicken Products)] made with 100% natural, white meat chicken"—was essentially identical to the label representation "Made with 100% Natural White Meat Chicken" and thus preempted. *Id.* Accordingly, claims based on the "100% Natural" representation must be dismissed here consistent with the Ninth Circuit's Order.

The Ninth Circuit could not conclude that the second half of the website representation—"They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors"—was materially identical to the label representations because the label did not expressly state whether the "No Preservatives," "No Artificial Colors," and "No Artificial Flavors" representations referred to the product as a whole or just the white-meat chicken. However, the Ninth Circuit did not have the benefit of FSIS's Guidelines before it, which make clear that FSIS evaluates negative claims (including no preservatives, no artificial colors, and no artificial flavors claims) with respect to the entire product.[24] Thus, FSIS has determined

---

[24]   FSIS Guidelines for Label Approval" at p. 25 (Jan. 2023), *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf; *see also id.* at p. 31 ("No preservatives is a negative claim that means ***the product*** would not contain any source of preservatives ***in the product***." (emphasis

that the representations "No Preservatives," "No Artificial Flavors," and "No Artificial Colors" apply to the Chicken Products as a whole. As such, the website representations are materially identical to the claims FSIS has approved and should be dismissed along with the labeling claims.

In addition, because Plaintiff has failed to allege that the Chicken Products contain any artificial color and because USDA has clearly stated that the Autolyzed Yeast Extract that Plaintiff characterizes as a "flavoring agent" is ***not*** an artificial flavor,[25] at minimum Plaintiff's claims related to artificial colors and flavors should be dismissed.

Finally, Plaintiff cannot assert claims based on statements supposedly made in "circulars, coupons, and other media" because he has not identified any such statements, let alone any statements he relied upon in purchasing any product. *Tabler v. Panera LLC*, No. 19-cv-01646, 2020 U.S. Dist. LEXIS 114716, at *21-22 (N.D. Cal. June 30, 2020) (dismissing CLRA, FAL, and UCL claims for failing to satisfy Rule 9(b) by not identifying which specific advertisements plaintiff saw, believed, and relied upon).

### D.   Plaintiff Cannot Bring a Nationwide Unjust Enrichment Claim

As an initial matter, Plaintiff has not alleged which state's law purportedly governs the nationwide unjust enrichment claim, which is alone grounds for dismissal. *Ablaza v. Sanofi-Aventis United States LLC*, No. 21-cv-01942, 2023 U.S. Dist. LEXIS 68391, at *13 (N.D. Cal. Apr. 13, 2023) (explaining that due to variances among state laws, failure to allege which state law applies warrants dismissal).

Further, Plaintiff cannot show that California law applies to the nationwide class

---

added)); p. 26 ("No Artificial Colors is a negative claim that follows the entry in the Food Standards and Labeling Policy Book that the ***product*** doesn't contain any artificial colors as defined therein." (emphasis added)); p. 26 ("No Artificial Flavors is a negative claim that describes a ***product*** that contains no ingredients labeled as artificial flavors (e.g., Artificial Maple Flavor)." (emphasis added)).

[25] USDA, Food Standards and Labeling Policy Book (Aug. 2005), *available at* https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf ("Autolyzed yeast extract ***is not considered an artificial flavoring***." (emphasis added)).

claim. Under California's choice of law rules, plaintiffs bear the initial burden of showing that California has significant contacts to the claims of each class member, which is necessary to ensure that application of California law is constitutional. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Only after this threshold showing would the burden shift to the defendant to demonstrate that foreign law, rather than California law, applies. *Id.* Here, where Plaintiff has not alleged (and cannot allege) that "Conagra is headquartered in California, that Conagra is incorporated under California's laws, or that the challenged statements originated in California," he cannot meet that threshold showing. *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 657 (N.D. Cal. 2019).[26] Accordingly, "[g]iven that it would be unconstitutional to apply California unjust enrichment law to the claims of a nationwide class, the laws from all 50 states would have to apply." *Id.* In that case, Plaintiff lacks standing "to bring claims under the laws of states where [he has] alleged no injury, residence, or other pertinent connection." *Goldstein v. GM LLC*, 445 F. Supp. 3d 1000, 1021 (S.D. Cal. 2020).

Plaintiff will undoubtedly argue that this is a premature attempt to address class certification issues at the pleadings stage, but the District Courts in this Circuit routinely address the standing issue at the pleadings stage and dismiss claims brought under state laws that have no connection to the named plaintiff. *Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474, at *11 (S.D. Cal. May 4, 2023) (providing examples and noting "'growing trend' among California district courts"). Indeed, this Court has, on multiple occasions, dismissed nationwide class claims at the pleadings stage. *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1277 (C.D. Cal. 2022) (Carter, J.) (collecting cases). Further, there is no conceivable basis for delaying this

---

[26] Even if Plaintiff could make that threshold showing, the Ninth Circuit's choice-of-law analysis in *Mazza* confirms that each absent class member's claim should be governed by the law of the state where he or she purchased the Chicken Products. 666 F.3d at 590-94; *see also Vinci v. Hyundai Motor Am.*, No. 17-cv-0997, 2018 U.S. Dist. LEXIS 139979, at *25 (C.D. Cal. Apr. 10, 2018) (Carter, J.) (applying *Mazza* choice-of-law analysis, finding laws of each state applied, and dismissing nationwide claim).

inquiry to the class certification stage when the Ninth Circuit has already held that "[t]he elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state," *Mazza*, 666 F.3d at 591, and thus a nationwide unjust enrichment class is not certifiable. *See Allen*, 331 F.R.D. at 657 (noting that no court in this Circuit has certified a nationwide unjust enrichment class since *Mazza*).

### E.   Plaintiff Lacks Standing to Seek Injunctive Relief and Cannot Maintain His Claims for Equitable Relief

As numerous courts have recognized, where a plaintiff does not need to purchase the product again to know whether the alleged deception was cured, the plaintiff lacks Article III standing to pursue injunctive relief. *E.g.*, *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, 2019 U.S. Dist. LEXIS 192100, at *12 (N.D. Cal. Aug. 26, 2019); *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628, 2018 U.S. Dist. LEXIS 1189, at *43 (S.D. Cal. Jan. 3, 2018). Here, Plaintiff would not need to purchase the Chicken Products again to determine whether they contain the ingredients Plaintiff alleges to be artificial, synthetic, or preservatives—he can simply look at the ingredient list. *Joslin*, 2019 U.S. Dist. LEXIS 192100, at *10 (compiling cases holding that when another part of the challenged product's packaging discloses the truth of the product, plaintiff's knowledge of the truth forecloses the risk of future harm). And, as reflected in the SAC, he is apparently well-aware of allegations regarding animal husbandry practices in the commercial chicken processing industry and knows where to find information on chicken processors' practices.

In addition, Plaintiff has not explained how he lacks an inadequate remedy at law and, in fact, seeks damages under the CLRA. As such, Plaintiff's UCL and FAL claims (under which only equitable relief is available), CLRA claim (to the extent it seeks equitable relief), and unjust enrichment claim should be dismissed. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. June 17, 2020) (dismissing UCL and CLRA claims seeking equitable restitution); *Bartling v. Apple Inc. (In re Apple Processor Litig.)*, No. 22-16164, 2023 U.S. App. LEXIS 24257, at *5 (9th Cir. Sep. 13,

2023) (affirming dismissal of unjust enrichment claim and equitable relief sought in CLRA and UCL claims); *Ibarra v. Pharmagenics LLC*, No. 23-cv-00116, 2023 U.S. Dist. LEXIS 39991, at *10 (C.D. Cal. Mar. 8, 2023) (*Sonner* applies to disgorgement, which Plaintiff seeks through unjust enrichment claim here); *Shay v. Apple Inc.*, No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415, at *12 (S.D. Cal. May 3, 2021) (dismissing UCL claim and equitable relief sought in CLRA claim); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 649 (C.D. Cal. 2021) (dismissing equitable claims under the UCL and FAL and claim for unjust enrichment). The Court, moreover, need not credit Plaintiff's conclusory and contradictory allegation that "[t]here are not other adequate remedies at law." SAC ¶ 138. A plaintiff must allege some facts suggesting damages are insufficient to make him whole, and a claim for damages under the CLRA, as Plaintiff seeks here, "undermines any potential inadequacy of legal remedies." *Ibarra*, 2023 U.S. Dist. LEXIS 39991, at *10.

## VI.   <u>CONCLUSION</u>

For the reasons discussed above, the Court should dismiss all of Plaintiff's claims with prejudice.

DATED: October 12, 2023       */s/ Angela Spivey*
                                               *Attorney for Defendant Conagra Brands, Inc.*