HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
AARON M. OLSEN (259923)
  aarono@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

[Additional Counsel Appear on Signature Page.]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA BRANDS, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 8:20-cv-00637-DOC-ADS<br><br>CLASS ACTION<br><br>OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>Date: January 22, 2024<br>Time: 8:30 a.m.<br>Judge: Hon. David O. Carter<br>Courtroom: 10A<br><br>Original Complaint Filed: April 1, 2020<br>Trial date: Not set. |

HAEGGQUIST & ECK, LLP

1026108.1

**TABLE OF CONTENTS**

I.     INTRODUCTION AND FACTUAL BACKGROUND ................................... 1

II.    LEGAL STANDARD ........................................................................ 5

III.   ARGUMENT ................................................................................... 5

    A.   Conagra Can Be Held Accountable for its False and Misleading Representations to Consumers ................................................ 5

       1.   Conagra Did Not Comply with the PPIA ..................................... 6

       2.   The Federal PPIA Expressly Grants Concurrent Jurisdiction to the States ................................................................... 7

       3.   Plaintiff Can Challenge the Special Statements and Misleading Animal Raising Claims ............................................. 8

       4.   This Court Must Look at the Marketing Terms Like a Reasonable Consumer ....................................................... 9

    B.   Plaintiff's Popcorn Chicken Claims Are Valid .................................... 10

       1.   Conagra Placed its 2018 Popcorn Chicken Label into Commerce in Violation of the PPIA ......................................... 10

       2.   Plaintiff Has Standing to Pursue State Law Claims (e.g., UCL) Predicated on Conagra's Violation of the PPIA ............. 13

       3.   The FSIS's Approvals of the 2016 and 2022 Popcorn Chicken Sketch Labels Are Irrelevant to Plaintiff's Legal Theory ................................................................. 15

    C.   Conagra's Off-label Advertising Is Outside the Scope of the Preemption Defense ................................................... 16

    D.   Unjust Enrichment Is Not Subject to Dismissal ................................... 18

       1.   Plaintiff Is Not Required to Allege Which States' Law Will Apply to Class Members' Claims ......................................... 18

       2.   It is Premature to Decide Whether California Law Can Apply to All Class Members' Claims .................................... 19

       3.   Plaintiff Can Represent Class Members Whose Claims Arise Under the Laws of Other States .................................. 20

    E.   Standing for Injunctive Relief and Equitable Relief ............................ 22

       1.   Plaintiff has Standing to Seek Injunctive Relief ......................... 22

       2.   Plaintiff is Entitled to Equitable Relief ..................................... 23

HAEGGQUIST & ECK, LLP

i

Case No.: 8:20-cv-00637-DOC-ADS

IV.    CONCLUSION ................................................................................................ 25

HAEGGQUIST & ECK, LLP

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1026108.1

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Ablaza v. Sanofi-Aventis United States LLC*,
  2023 WL 2942983 (N.D. Cal. April 13, 2023) .......................................................19

*Allergan United States v. Imprimis Pharms, Inc*,
  2019 U.S. Dist. LEXIS 163228 (C.D. Cal. Mar. 27, 2019) ..................................15

*Allied Grape Growers v. Bronco Wine Co.*,
  203 Cal. App. 3d 432 (1988) ................................................................................23

*Ass'n des Elevers de Canards et d'Oies du Quebec v. Becerra*,
  870 F.3d 1140 (9th Cir. 2017) ................................................................................9

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ...........................................................................................7, 11

*Beau v. Kia America, Inc.*,
  2023 WL 4680806 (C.D. Cal. June 16, 2023) .......................................................21

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline, LLC*,
  417 F. Supp. 3d 531 (E.D. Pa. 2019) ...................................................................15

*Brady v. Bayer Corp.*,
  26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018) ...........................................9

*Brazil v. Dole Food Co.*,
  2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sep. 23, 2013) ..................................14

*Brinkerhoff v. L'Oreal USA, Inc.*,
  417 F. Supp. 3d 1308 (S.D. Cal. 2019) .................................................................14

*Carson v. Monsanto Co.*,
  72 F.4th 1261 (11th Cir. 2023) ...............................................................................6

*Cohen v. Conagra Brands, Inc.*,
  16 F.4th 1283, 1296 (9th Cir. 2021) .........................................................7, 10, 16

HAEGGQUIST & ECK, LLP

iii

*Covell v. Nine West Holdings, Inc.*,
   2018 WL 558976 (S.D. Cal. Jan. 25, 2018) ........................................................ 23

*Del Real, LLC v. Harris*,
   966 F. Supp. 2d 1047 (E.D. Cal. 2013) ................................................................ 5

*Durnford v. MusclePharm Corp.*,
   907 F.3d 595 (9th Cir. 2018) ................................................................................ 5

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................ 25

*Fernandez v. Atkins Nutritionals, Inc.*,
   2018 WL 280028 (S.D. Cal. Jan. 3, 2018) .......................................................... 22

*Ferry v. Porsche Cars North Am., Inc.*,
   2022 WL 1769120 (C.D. Cal. March 11, 2022) .................................................. 24

*Flores v. Southcoast Automotive Liquidators, Inc.*,
   17 Cal. App. 5th 841 (2017) ............................................................................... 23

*Franz v. Beiersdorf, Inc.*,
   745 F. App'x 47 (9th Cir. 2018) .......................................................................... 14

*Goldstein v. GM LLC*,
   445 F. Supp. 3d 1000 (S.D. Cal. 2020) ......................................................... 20, 22

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ............................................................................ 6, 7

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................ 19, 20

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................ 19

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. S. Ct. 2009) ...................................................................... 14

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ............................................... 22, 23

HAEGGQUIST & ECK, LLP

iv    Case No.: 8:20-cv-00637-DOC-ADS

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ....................................................................... 4

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (Cal. S. Ct. 2011) ...................................................... 14, 15

*La Vigne v. Costco Wholesale Corp.*,
  284 F. Supp. 3d 496 (S.D. N.Y. 2018) ..................................................... 11

*Leining v. Foster Poultry Farms, Inc.*,
  61 Cal. App. 5th 203 (2021) ...................................................................... 11

*Lusnak v. Bank of Am., N.A.*,
  883 F.3d 1185 (9th Cir. 2018) ..................................................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ..................................................................... 5

*Mazza v. American Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ................................................... 19, 20, 21, 22

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ..................................................................................... 7

*Melendres v. Arpaio*,
  764 F.3d 1254 (9th Cir. 2015) ............................................................. 18, 20

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ................................................................... 24

*Murphy v. Oly Public Benefit Corp.*,
  2023 WL 210838 (N.D. Cal. Jan. 17, 2023) ............................................. 22

*Nat'l Broiler Council v. Voss*,
  44 F.3d 740 (9th Cir. 1994) ......................................................................... 7

*Omni Hotels Mgmt. Corp.*,
  2023 WL 6120685 (S.D. Cal. Sept. 18, 2023) .......................................... 18

HAEGGQUIST & ECK, LLP

v     Case No.: 8:20-cv-00637-DOC-ADS

*Pet Food Express, Ltd. v. Applied Underwriters, Inc.*,
  2019 U.S. Dist. LEXIS 156198 (E.D. Cal. Sept. 11, 2019) ...................15

*Reynolds v. The Coca-Cola Company*,
  2023 WL 7093683 (N.D. Cal. Oct. 25, 2023) ........................................4

*Richards v. Mitcheff*,
  696 F.3d 635 (7th Cir. 2012) ................................................................5

*Roper v. Big Heart Pet Brands, Inc.*,
  2020 WL 7769819 (E.D. Cal. Dec. 30, 2020)........................................25

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ..............................................................5

*Senne v. Kansas City Royals Baseball  Corp.*,
  2021 WL 3129460 (N.D. Cal. July 23, 2021) .......................................22

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...........................................................23, 24

*Sosna v. Iowa*,
  419 U.S. 393 (1975).............................................................................20

*Souter v. Edgewell Personal Care Co.*,
  2022 WL 485000 (S.D. Cal. Feb. 16, 2022)..........................................25

*Sultanis v. Champion Petfoods USA  Inc.*,
  2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ........................................21

*Swearingen v. Amazon Pres. Partners, Inc.*,
  2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014) ....................14

*Thornton v. Tyson Foods*,
  28 F.4th 1016 (10th Cir. 2022) ..............................................................2

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)...............................................................................6

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................9

HAEGGQUIST & ECK, LLP

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1026108.1

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021)................................................................25

STATUTES

21 U.S.C. §457(c) ...................................................................................................10
21 U.S.C. § 467e ..........................................................................................3, 7, 11
21 U.S.C § 451 ........................................................................................................5
Bus. and Prof. Code § 17200 ...................................................................................7
Bus. and Prof. Code § 17500 ...................................................................................7
Cal. Bus. & Prof. Code §17204 .............................................................................15
Cal. Civ. Code §1752 .............................................................................................23

RULES

Fed. R. Civ. P. Rule 12 ............................................................................................5
Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................5
Fed. R. Civ. P. Rule 23 ......................................................................18, 19, 21, 22
Fed. R. Civ. P. Rule 23(a) ......................................................................................20
Fed. R. Civ. P. Rule 23(a), (b) ...............................................................................18
Fed. R. Civ. P. Rule 23(b)(3) .................................................................................21
Fed. R. Evid. 702 ...................................................................................................17

REGULATIONS

9 C.F.R. §412.2(b), (e) ...........................................................................................10

HAEGGQUIST & ECK, LLP

Case No.: 8:20-cv-00637-DOC-ADS
OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1026108.1

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Defendant Conagra Brands, Inc. ("Conagra") hopes this Court will ignore the increasing crescendo of alleged facts that undercut Conagra's premature defenses. Plaintiff's Second Amended Complaint ("SAC") (Dkt. 98) abundantly alleges claims upon which relief can be granted. Conagra marketed its Chicken Products as "No Preservatives," even though the products contained preservatives. SAC ¶¶ 39-40. Conagra marketed its Chicken Products as "100% Natural," even though the products do not meet either the USDA definition or consumer understanding for "natural." SAC ¶¶ 37, 58, 69. In addition, Conagra placed its Popcorn Chicken into the market before receiving any approval. SAC ¶ 31. Conagra does not dispute these facts. Instead, it relies on a literal rubber stamp that Conagra contends deprives this Court of the power to adjudicate a consumer protection claim. The meaning of the rubber stamp and any conclusions that can be drawn from it are disputed and cannot be resolved on a motion to dismiss.

The rubber stamp does ***not*** mean that a government regulator determined that Conagra's marketing terms were not false and misleading. According to the USDA, the government agency "is responsible for administering and enforcing meat, poultry, and egg product labeling requirements, and establishments are responsible for ensuring that the labels used on their products are not false or misleading." SAC ¶ 63. A food law expert made the same point, stating, "Traditionally, private market gets the front of the package, and government gets the back."[1] Or as an appellate judge observed in a recent meat mislabeling case, "[t]he plain text of the [statute] demonstrates that FSIS approval of a label is not conclusive as to whether the label is

---

[1]    Jacob Gersen, Director of Harvard Law School's Food Law Lab, quoted in Larson, Sarah, *The Lies In Your Grocery Store*, Sept. 4, 2023, The New Yorker, available at https://www.newyorker.com/magazine/2023/09/11/the-lies-in-your-grocery-store.

HAEGGQUIST & ECK, LLP

unlawfully misleading. The Act allows the sale only of meat products with labels that 'are not false or misleading <u>and</u> which are [pre]approved by the Secretary.'" *Thornton v. Tyson Foods*, 28 F.4th 1016, 1031-1032 (10th Cir. 2022) (emphasis in original; Lucero, J. dissenting) (interpreting Federal Meat Inspection Act, which parrots the PPIA). Approval and "not false or misleading" are two separate criteria.

USDA admits that false and misleading labels are in commerce, even if USDA has approved them: "labels may reflect inaccurate statements and claims made by establishments." SAC ¶ 5, 60-63. In March 2023, four U.S. Senators called on USDA to address misleading labels. According to the U.S. Senators, "Without clear labels, consumers are robbed of their ability to purchase in accordance with their values," and "USDA has an obligation to ensure consumers have the information necessary to make informed choices about the products they purchase and that hardworking farmers and producers are able to compete on a level playing field." SAC ¶ 6. After President Biden issued an Executive Order addressing competition, the Secretary of Agriculture said, "Consumers should be able to trust that the label claims they see on products bearing the USDA mark of inspection are truthful and accurate." SAC ¶ 7. USDA has recently documented the disconnect between how companies like Conagra use the term "natural" and how consumers understand it. In March 2023, USDA's Economic Research Service issued a report titled "The Prevalence of the 'Natural' Claim on Food Product Packaging" that concluded, "Consumers may not be getting the health and environmental attributes they seek and are paying for . . . ."[2] Currently consumers cannot trust the label's marketing claims, even if other required labeling features are approved by the USDA.

---

[2]    Kuchler, F., Sweitzer, M., & Chelius, C. (2023). *The prevalence of the "natural" claim on food product packaging* (Report No. EB-35). U.S. Department of Agriculture,    Economic    Research    Service,    available    at https://www.ers.usda.gov/publications/pub-details/?pubid=106478

2        Case No.: 8:20-cv-00637-DOC-ADS

This is why California's consumer protection laws and concurrent jurisdiction under the PPIA are important for holding corporate marketers accountable for misleading consumers. The PPIA states that the federal law "shall not preclude any State . . . from making requirements or taking other action . . . ." 21 U.S.C. § 467e. Since Cohen filed his original complaint in April 2020, misleading meat labels have caught the attention of three branches of government: 1) President Biden and his cabinet secretary for the Executive, 2) U.S. Senators for the Legislative branch, and 3) the Courts. The Fourth Branch – the news media – has also been sounding the alarm on misleading meat labels and how corporations use a purported approval to mislead consumers. *See* The New Republic*, The B.S. Behind the USDA's New 'Climate-Friendly Beef' Label: Burgers branded with false climate claims are coming to a supermarket near you.*[3] The article states, "no one can seem to find any evidence behind Tyson's government-endorsed claim of 10 percent emissions reductions." According to Vox, "Tyson's claims are brazen but unsurprising given how the USDA collaborates with industry. When it comes to animal welfare claims on meat packages, for example, the USDA more or less allows meat producers to operate on an honor system."[4] Specific to the Chicken Products in this case, Science Magazine cited the Court's opinion in this action, noting that "Conagra's representations were scientifically false."[5]

---

[3]     Dutkiewicz, Jan, and Jayek, Matthew, The New Republic, September 5, 2023, available at https://newrepublic.com/article/175337/bs-behind-usdas-new-climate-friendly-beef-label

[4]     Torella, Kenny, Vox, *"Climate-friendly" beef could land in a meat aisle near you. Don't fall for it: Tyson Foods and the federal government refuse to show their math for a new sustainability label,* September 9, 2023, https://www.vox.com/future-perfect/2023/9/8/23863100/tyson-climate-friendly-beef-burger-usda."

[5]     Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science (Supp. 2022), available at https://www.science.org/doi/10.1126/science.abj1823.

HAEGGQUIST & ECK, LLP

1    In the face of these facts about false and misleading meat labels in commerce,

2    which include Conagra's labels, Conagra still relies on a literal rubber stamp from an

3    agency that has already said that 1) Conagra, not USDA, is "responsible for ensuring

4    that the labels used on their products are not false or misleading," and 2) misleading

5    labels are in commerce even if the label was approved.

6    Rubber stamp approval is not dispositive of false advertising claims. Courts

7    can, and have, sorted through which representations on a label are subject to consumer

8    protection lawsuits versus which representations are preempted. *See Reynolds v. The*

9    *Coca-Cola Company*, 2023 WL 7093683, at *2 (N.D. Cal. Oct. 25, 2023), finding

10    that "Part of a Healthy Balanced Diet" on a juice box was challengeable under state

11    law, even if "Good For You" was preempted by a federal regulation. Cohen concedes

12    that if he challenged one of the eight required labeling features, his claims would

13    likely be preempted by the PPIA. But his challenge is to the marketing terms, both on

14    the front of the label and on online.

15    Regarding the off-label advertising never reviewed by a government agency,

16    as Conagra concedes, the Ninth Circuit correctly concluded that Conagra's false and

17    misleading website statements can be challenged. The Ninth Circuit came to that

18    conclusion based on Cohen's original complaint filed in April 2020 (Dkt. 1), that did

19    not address USDA's acknowledgement in June 2020 and later of false and misleading

20    labels in commerce. The new information published by USDA, plus the fact and

21    expert discovery that Cohen anticipates presenting to this Court, will only strengthen

22    the original allegations that were before the Ninth Circuit more than two years ago.

23    Finally, the Court should be wary of Conagra improperly seeking summary

24    judgment by stealth and inviting this Court to commit reversible error. Conagra has

25    not produced a single document in discovery, but instead provides voluminous

26    redacteddocuments via a self-serving attorney declaration. Dkt. 101-2 through 101-

27    19. As this Court knows and the Ninth Circuit has held in *Khoja v. Orexigen*

28    *Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018), it is improper for a trial court

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

HAEGGQUIST & ECK, LLP

1026108.1

to accept the truth of matters asserted in incorporated documents only to resolve factual allegations against plaintiff's well-pled allegations. Cohen disputes Conagra's interpretation and application of the documents it submitted to the Court.

## II.   LEGAL STANDARD

A motion to dismiss will be denied under Fed. R. Civ. P. Rule 12(b)(6) unless the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Conagra asked the Court to rule at the pleading stage on legal and factual issues that are not ripe for review until summary judgment or trial. Federal preemption is an affirmative defense on which Conagra bears the ultimate burden of persuasion. *See Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) (citing *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). An affirmative defense should not "ordinarily" be raised via motion to dismiss under Rule 12. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (Easterbrook, J.) ("We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule (8)(c)(1)."). The proper procedure to invoke a preemption defense is via summary judgment. *See, e.g., Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1049-50 (E.D. Cal. 2013).

## III.   ARGUMENT

### A.   Conagra Can Be Held Accountable for its False and Misleading Representations to Consumers

Preemption does not sweep as broadly as Conagra wishes. While Conagra contends that the Poultry Products Inspection Act (PPIA), 21 U.S.C § 451 *et seq.*, preempts consumer protection actions, Conagra did not comply with the PPIA. Plaintiff alleged that Conagra violated the PPIA in multiple ways. SAC ¶ 27 *et seq.*

HAEGGQUIST & ECK, LLP

### 1.     Conagra Did Not Comply with the PPIA

First, the stamp on which Conagra relies says "Sketch Approved *Subject to* Compliance with FMIA & PPIA Regulations." Examples at Dkt. 87-1 at 2, 101-18 at 2 (emphasis added). According to the USDA, compliance is ultimately Conagra's responsibility, not USDA's (SAC ¶ 63), and this stamp does not declare that Conagra has complied with the regulations, that USDA checked Conagra's compliance, or that USDA's 18-member Labeling and Program Delivery Staff have the ability to check for complete regulatory compliance for the more than 6,000 establishments that submit labels for more than 14,000 products. SAC ¶¶ 55 & 63 (and discussion below on animal raising claims). Even if the USDA were checking regulatory compliance when reviewing labels, an approval by one government staffer does not have the "force of law" to preempt the power of a federal court. *United States v. Mead Corp.*, 533 U.S. 218 (2001) ("Any suggestion that rulings intended to have the force of law are being churned out at a rate of 10,000 a year at an agency's 46 scattered offices is simply self-refuting. . ." *Id*. at 233; see also *Carson v. Monsanto Co.*, 72 F.4th 1261 (11th Cir. 2023) (agency approval did not preempt state consumer protection law).

Second, the application for approval says, "approval of the sketch does not convey approval of the processing procedures." Dkt. 87-1 at 4; SAC ¶ 38. Conagra redacted this statement from its recent submission to the Court. Dkt. 101-18 at 4. The limit of approval hid by Conagra is relevant here because Conagra's processing procedures are contrary to USDA's definition of "natural" and the "no preservatives" claims, and USDA is expressly stating that sketch approval does not mean approval of processing procedures. Additional PPIA violations specific to Popcorn Chicken are discussed below and at SAC ¶¶ 27-33.

Consistent with *Hardeman v. Monsanto Co.,* 997 F.3d 941 (9th Cir. 2021), preemption does not apply because an agency's label determination is not dispositive of regulatory compliance. *Id*. at 957. In a conclusion that empowers courts, the *Hardeman* court noted, "even though [a federal agency] approved Roundup's label, a

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

HAEGGQUIST & ECK, LLP

1026108.1

judge or jury could disagree and find that same violates FIFRA [federal law]." *Id.* at 956. Like in *Hardeman*, Plaintiff has alleged that Conagra's labels are not in compliance with federal PPIA and therefore Plaintiff's claims are not preempted.

### 2. The Federal PPIA Expressly Grants Concurrent Jurisdiction to the States

The *Cohen* panel said: "in *National Broiler Council v. Voss*, we explained that § 467e 'authorizes states to undertake, concurrently with the USDA, efforts to enforce federal requirements.'" *Cohen v. Conagra Brands, Inc.,* 16 F.4th 1283, 1288 (9th Cir. 2021). Cohen's SAC does exactly that: he asserted that Conagra violated federal law (SAC ¶¶ 27, et. seq.) and seeks a remedy, including injunctive relief, for those violations via the CLRA, the FAL and the UCL (¶ 104 et seq.). In the state law cause of action against Monsanto's pesticide, the Ninth Circuit decided that parallel state claims "effectively enforce FIFRA's [Federal Insecticide, Fungicide Rodenticide Act] requirement against misbranding and are thus not expressly preempted" and also reiterated that "a state cause of action that seeks to enforce a federal requirement does not impose a requirement that is different from, or in addition to, requirements under federal law." *Quoting Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447-48; *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) (internal quotes omitted); *Hardeman*, 997 F.3d 941, 955. FIFRA "has a preemption clause similar to that in the PPIA." *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 744 (9th Cir. 1994). Just like in *Hardeman*, Cohen's SAC alleges that Conagra violated the federal law.

The federal and state laws at issue here are also wholly consistent, and Conagra can comply with the federal PPIA and the California UCL, FAL and CLRA by ensuring that its marketing terms are not false or misleading. *Compare* the PPIA's proscription against a label that is "false or misleading" to the FAL's prohibition against "untrue or misleading" statements, Bus. and Prof. Code § 17500; the UCL's "deceptive, untrue or misleading" language, Bus. and Prof. Code § 17200, and the CLRA's misrepresentation prohibition, Civ. Code § 1770.

### 3.    Plaintiff Can Challenge the Special Statements and Misleading Animal Raising Claims

Conagra used the marketing terms "100% Natural," which is a "special statement and claim" and therefore requires supporting documentation.[6] Conagra admits that it did not submit the required documentation, Mtn. at 16, n. 16, and therefore cannot claim that its undocumented, unsubstantiated and unregulated special statement and animal raising claims are preempted.

Conagra uses these terms to mislead. The Animal Welfare Institute studied meat and poultry labels, and based on four years of FOIA requests to USDA FSIS, concluded, "if consumers do not know the meaning of label claims—and have no ability to access that information—an educated consumer base does not exist and companies using misleading labels receive an unfair competitive advantage."[7] SAC ¶ 64. Farm Forward, a public interest group, also studied how consumers are deceived by meat and poultry labels, and relevant to Defendant's advertising and labeling, Farm Forward's report lists "natural" as a common deceptive label claim used to "humanewash" poultry products.[8] Consumers understand these terms to relate to animal raising, SAC ¶¶ 44-45, and FSIS has confirmed that it does not have any reports or studies on how consumers understand these marketing terms. SAC ¶ 68.

The Ninth Circuit has concluded that animal raising claims are not preempted. Because the PPIA itself contemplates extensive state involvement, "Congress clearly

---

[6]    USDA, *FSIS Compliance Guideline for Label Approval.* https://www.fsis.usda.gov/guidelines/2017-0011, last visited June 6, 2022.
[7]    Animal Welfare Institute, *Label Confusion 2.0, How the USDA Allows Producers to Use "Humane" and "Sustainable" Claims on Meat Packages and Deceive Consumers,* https://awionline.org/sites/default/files/publication/digital_download/19%20Label%20Confusion%20Report%20FINAL%20WEB%20II.pdf, last visited March 28, 2022.
[8]    Farm Forward, *The Dirt on Humanewashing: A Farm Forward Report on Consumer Deception in Animal Welfare Certification,* December 2020, available at https://res.cloudinary.com/hyjvcxzjt/image/upload/v1609362305/resource/undefined-the-dirt-on-humanewashing-farm-forward-1609362294.pdf, last visited March 28, 2022.

did not intend to occupy the field of poultry products." *Ass'n des Elevers de Canards et d'Oies du Quebec v. Becerra* ("Canards"), 870 F.3d 1140, 1152 (9th Cir. 2017). Conagra's ingredient arguments "cannot be read to reach animal husbandry practices because federal law '*does not regulate in any manner the handling,* shipment, or sale of *live poultry*." *Id.* (emphasis in original). "Accordingly, the PPIA's 'ingredient requirements' are limited to the physical components of poultry products and do not reach the subjects of animal husbandry or feeding practices." *Id.* Plaintiff's animal husbandry and feeding claim with respect to Defendant's use of "natural" to market and advertise its Poultry Products, does not solely relate to "ingredients" in the products. It also relates to the treatment of chickens – which starts well before the birds are even slaughtered.

### 4.    This Court Must Look at the Marketing Terms Like a Reasonable Consumer

When reviewing the marketing terms on a motion to dismiss, this Court must consider the reasonable consumer standard and can reject Conagra's hyper-technical defense and reliance on fine print. "We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008); see also *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172, 237 Cal. Rptr. 3d 683, 696 (2018) ("You cannot take away in the back fine print what you gave on the front in large conspicuous print.").

Plaintiff's SAC alleges that USDA did ***not*** determine that Conagra's "No Preservatives" and "100% Natural" marketing statements are not false or misleading. Nor could USDA make that determination because the products contain preservatives, do not meet USDA's definition of natural (which is minimally processed and no artificial ingredients, SAC ¶ 58) because it the products are highly processed and contain artificial ingredients, did not comply with USDA's requirements for animal

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

HAEGGQUIST & ECK, LLP

1026108.1

raising claims, contain unnatural ingredients[9], and do not comport with consumer understanding of natural.

### B.    Plaintiff's Popcorn Chicken Claims Are Valid

Conagra argues Plaintiff's Popcorn Chicken claims should be dismissed for three reasons: (1) the Popcorn Chicken labels, including the (unapproved) label it covertly began using in 2018, were in commerce in compliance with PPIA and, therefore, Plaintiff's claims are preempted; (2) the state laws under which Plaintiff sues (*e.g.,* UCL) do not provide a private right of action for Plaintiff's theory; and (3) even if there is no preemption, FSIS's approvals of a 2016 and a 2022 label express FSIS's view that all the labels, including the 2018 (unapproved) label, are not misleading to which this Court should defer. Conagra's arguments lack merit.

### 1.    Conagra Placed its 2018 Popcorn Chicken Label into Commerce in Violation of the PPIA

"Under the PPIA, certain poultry product[] [labels], like the ones in this case, must be preapproved by a federal agency before the products go to market." *Cohen ,* 16 F.4th at1296 ; 21 U.S.C. §457(c); 9 C.F.R. §412.2(b), (e).[10] Plaintiff alleges Conagra "violated the PPIA by placing the Popcorn Chicken product … into commerce before and without first receiving preapproval from the FSIS." SAC, ¶31. Conagra violated the PPIA by bypassing approval process and illegally placed a 2018

---

[9]     On this point, "[a] labeling claim, such as, 'meat used is **100 percent** white meat', may **only** be used when the poultry meat contains **no added ingredients**." *See* USDA, Food Standards and Labeling Policy Book (Aug. 2005) at 7 of 188 (emphasis added).[1] Had Defendant used the term "white meat **only**" instead of "**100%** White Meat Chicken," then "other ingredients may be present in the poultry **portion** of the product" (*id.*), but Defendant chose the 100% representation. Here, the poultry *portion* of the 2018 product includes "other ingredients," including modified corn starch, soy flour, and other added ingredients.  SAC ¶¶43, 69.

[10]     *See also* USDA, FSIS Guideline for Label Approval, FSIS-GD-2923-00001 (January 2023) ("FSIS 2023 Guideline") at 5 *available at* https://www.fsis.usda.gov/ sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf.

HAEGGQUIST & ECK, LLP

Popcorn Chicken label in commerce from at least September 13, 2018, through
February 24, 2022. Plaintiff's legal theory is not subject to the PPIA's preemption
provision because he is not seeking to impose "[m]arking, labeling, packaging, or
ingredient requirements . . . in addition to, or different than, those . . ." under the PPIA.
21 U.S.C. §467e. The PPIA expressly provides that states may, consistent with the
PPIA, exercise concurrent jurisdiction for enforcing the requirements of the PPIA. 21
U.S.C. §467e. This concurrent jurisdiction "permits states to impose additional
*remedies* for violations of the PPIA." *Leining v. Foster Poultry Farms, Inc.,* 61 Cal.
App. 5th 203, 216 (2021) (emphasis in original), citing *La Vigne v. Costco Wholesale
Corp.,* 284 F. Supp. 3d 496, 508 (S.D. N.Y. 2018); *Bates v. Dow Agrosciences, L.L.C.*,
544 U.S. 431, 447-48 (2005). Plaintiff's theory for the 2018 Popcorn Chicken Label
is not preempted, and he may seek remedies for Conagra's violation of the PPIA via
his state law claims.

Conagra has twice sought to dismiss Plaintiff's Popcorn Chicken claims with
various preemption arguments, which have all proved without merit.[11] Conagra is now
making a third pivot*,* reverting to a "generic" approval argument, but this time relying
on an alleged "sketch" from 2016 (regarding an entirely different label) that, despite
multiple rounds of briefing, including a trip to the Ninth Circuit, this Court has not
seen before now. There is a reason Conagra did not previously rely on this sketch –

_____

[11]    First, it vociferously argued the product labels at issue were "generically
approved" based on a March 19, 2018 FSIS sketch approval (for a *different* product
with *different* ingredients) (*see* Dkt. 48-3 at 3). But after realizing its "generic"
approval argument was unsound, Conagra pivoted to rely on a February 24, 2022,
"sketch" approval for a Popcorn Chicken (bag). (*See* Dkt. 85 ¶¶3, 4; Dkt. 85-2.)
However, the Court already found that "to the extent Defendant seeks to rely on [the
Feb. 24, 2022] sketch approval only, *that approval does not preempt* Plaintiff's claim
for the popcorn chicken products . . . ." (Dkt. 90 at 16) (emphasis added). The fact
Conagra has resorted to putting forth several inconsistent arguments regarding the
propriety of the Popcorn Chicken labels, evidences the fragility of Conagra's
contentions.

HAEGGQUIST & ECK, LLP

1   it lacks merit.

2   Conagra now claims it obtained the following FSIS "sketch" approvals for its Popcorn

3   Chicken products: (1) 2016 "sketch" approvals[12]; and (2) February 24, 2022 "sketch"

4   approval (Exhibit P at 343-351, Dkt. 101-1). Up to September 12, 2018, Conagra

5   contends it used the 2016 Popcorn Chicken Label that was allegedly sketch-approved

6   in 2016 (Ex. P at 183 (Dkt. 101-18), reproduced below on the left. As of September

7   13, 2018, however, Conagra surreptitiously replaced the 2016 Popcorn Chicken Label

8   with a materially different label (the "2018 Popcorn Chicken Label"). *See* Ex. L at

9   132-135 (Dkt. 101-14); *see also* SAC ¶¶29-30.

10      It is undisputed Defendant failed to obtain FSIS "sketch" approval of the 2018

11   Popcorn Chicken Label **before** placing it in commerce, even though the 2016 and

12   2018 labels are materially different. Yet, Conagra now argues that the 2018 Popcorn

13   Chicken Label did not require FSIS review because it is merely a "synonymous claim"

14   that can be "generically" approved based on the 2016 sketch. Mtn at 16. Conagra is

15   wrong.

16      Conagra did not merely change an "approved claim to a synonymous claim" as

17   it contends. *See* FSIS 2023 Guidelines at 22 (a synonymous claim is, e.g., "changing

18   from 'no antibiotics used' to 'raised without antibiotics'"). First, Conagra materially

19   changed its representations on the front label regarding the type of poultry in the

20   product from saying "100% Natural Chicken *Breast with Rib Meat*" to "100% Natural

21   *White Meat* Chicken").[13]

22

23

---

24   [12]   Conagra submitted two FSIS sketch approvals from 2016: (1) February 9, 2016

25   (bag) (Ex. P at 177-183, Dkt. 101-18); and (2) March 21, 2016 (box) (Ex. P at 281-
    291, Dkt. 101-19), which have materially identical front labels (collectively, the

26   "2016 Popcorn Chicken Label").

27   [13]   "The decision to approve or deny the use of a natural claim may be affected by
    the specific context in which the claim is made." Food Standards and Labeling Policy

28   Book at 110-111.

HAEGGQUIST & ECK, LLP

1    Moreover, Conagra made several additional representations that further

2    modified the label, including a special animal raising claim of "no added hormones,"

3    among other negative claims (e.g., "No Preservatives!"). A claim of "no hormones

4    added" is a special animal-raising claim requiring preapproval prior to entering

5    commerce. *See* FSIS 2023 Guidelines at 14-15 ("**Animal-raising claims** (e.g., . . . ***no***

6    ***hormones added*** . . . .)" (emphasis added). "Labels with negative claims that have

7    animal-raising claims . . . are not eligible for generic approval." *Id.* at 12. More

8    specifically, the "[a]ddition of an animal-raising claim" is a change to a previously

9    approved label that the USDA does not allow to be made generically (*id.* at 23), and

10   for which Conagra was required to submit substantiating documentation. *Id.* at 14

11   ("Supporting documentation for the special statement or claim must be included as

12   part of the labeling record."); *see also* FSIS Guideline on Documentation Needed to

13   Substantiate Animal Raising Claims for Label Submissions (Dec. 2019) at 13-14

14   (listing documentation required, to ensure no hormones are used "from birth to

15   harvest").[14] Contrary to Conagra's argument, the two labels are not "essentially

16   identical."[15]

### 2.    Plaintiff Has Standing to Pursue State Law Claims (e.g., UCL) Predicated on Conagra's Violation of the PPIA

18   Conagra argues Plaintiff does not have a viable right of action under the

19   consumer protection statutes (e.g., UCL) based solely on Conagra's introduction of

20   an "illegal" product into commerce. Mtn. at 20. However, Conagra misconstrues

---

[14]    Yet, Conagra continues to claim that it "was not required to submit documentation on how the chickens were raised because it did not make any animal raising claims." Mtn. at 16, n. 16.

[15]    On February 24, 2022, after Conagra changed the ingredients for the Popcorn Chicken product, Conagra allegedly obtained an FSIS sketch approval, at which point the newly formulated product was presumably in commerce with FSIS approval. However, because this sketch was obtained after this lawsuit was filed on April 1, 2020, and after the prior 2018 Popcorn Chicken Label was in commerce without preapproval, the February 24, 2022, sketch has no preemptive effect on those claims.

Haeggquist & Eck, LLP

Plaintiff's legal theory and the applicable law.

The court's analysis in *Brinkerhoff v. L'Oreal USA, Inc.,* 417 F. Supp. 3d 1308 (S.D. Cal. 2019) is apropos. Citing a recent Ninth Circuit opinion, the court found valid a legal theory like the one Plaintiff asserts here. *See id.* at 1314-1315, citing *Franz v. Beiersdorf, Inc.* ("*Franz*")*,* 745 F. App'x 47, 48 (9th Cir. 2018). There, the plaintiff alleged the defendant sold a "drug" without FDA approval in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") and California's equivalent law ("Sherman Law"). *Id.* at 1314. The plaintiff alleged, "she spent money on a product that should not have been on the market." *Id.* The Court found that those allegations are "sufficient to establish standing under the UCL." *Id.* "Plaintiff need not plead reliance because neither the alleged FDCA violation nor the alleged Sherman Law violation requires allegations of fraud or deception." *Id.* As the California Supreme Court acknowledges, under the UCL there "are doubtless many types of unfair business practices in which the concept of reliance . . . has no application." *In re Tobacco II Cases*, 46 Cal. 4th 298, 325, n. 17 (2009); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 n. 9 (2011). That is the case here.

Like in *Brinkerhoff* and *Hanz*, and unlike the two cases cited by Conagra, Plaintiff need not plead or prove reliance because the PPIA violation at issue does not require allegations of fraud or deception.[16] Plaintiff need only show that Conagra placed into commerce products without FSIS preapproval in violation of the PPIA and that Plaintiff "spent money on a product that should not have been in the market." *Brinkerhoff,* 417 F. Supp. 3d at 1314. Here, Plaintiff alleges Conagra placed the

---

[16]     The two district court cases cited by Conagra, which concerned alleged misrepresentations (which the plaintiffs there admittedly did not rely on), are distinguishable.  Mtn. at 20, citing *Brazil v. Dole Food Co.,* No. 12 -cv-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sep. 23, 2013); *Swearingen v. Amazon Pres. Partners, Inc.,* No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014).

HAEGGQUIST & ECK, LLP

Popcorn Chicken product into commerce without preapproval by the FSIS in violation of the PPIA and that he spent money on the product that was on the shelves without lawful approval. SAC, ¶¶27-32, 83. As such, Plaintiff "suffered injury in fact and … lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §17204; *Kwikset Corp.* 51 Cal. 4th at 323 (listing examples of some of the "innumerable ways" a plaintiff may suffer economic injury). Indeed, because the products could not be legally sold, they were worthless.[17]

### 3. The FSIS's Approvals of the 2016 and 2022 Popcorn Chicken Sketch Labels Are Irrelevant to Plaintiff's Legal Theory

Conagra contends that because the FSIS allegedly approved the 2016 and 2022 sketch labels, Plaintiff's Popcorn Chicken claims must fail. Conagra's argument misses the mark.

Whether or not FSIS approved the 2016 label in use from 2016 through September 12, 2018, and/or the 2022 label in use after February 24, 2022, is irrelevant to Plaintiff's legal claim that Conagra violated the PPIA by illegally placing in commerce an unapproved 2018 Popcorn Chicken label from September 13, 2018, through February 23, 2022. Even if the 2018 Popcorn Chicken Label did not contain deceptive statements, which it did, it was unlawfully in commerce in violation of the PPIA. For the reasons set forth above, Plaintiff's state law claims predicated on

---

[17] *See, e.g., Pet Food Express, Ltd. v. Applied Underwriters, Inc.,* 2019 U.S. Dist. LEXIS 156198, at *18 (E.D. Cal. Sept. 11, 2019) (citing *Franz,* finding that because the illegal product "should not have been in the market" in any form, any payment is more than plaintiff should have paid; finding this is true for "all illegal products" such that "any payment for such a product constitutes an economic loss."); *Allergan United States v. Imprimis Pharms, Inc,* 2019 U.S. Dist. LEXIS 163228, n. 9 (C.D. Cal. Mar. 27, 2019) (finding plaintiff has standing under UCL where defendant "has sold drugs without FDA approval and in violation of federal and state law."); *cf. Blue Cross Blue Shield Ass'n v. GlaxoSmithKline, LLC,* 417 F. Supp. 3d 531, 554 (E.D. Pa. 2019) (reasoning plaintiffs had established an injury in fact because they alleged they paid for drugs "believing they were manufactured in compliance with GMPs but received drugs that were non-compliant and therefore worth less than what they paid.")

HAEGGQUIST & ECK, LLP

15   Case No.: 8:20-cv-00637-DOC-ADS

1    Conagra's violation of the PPIA are proper.

2        With respect to Plaintiff's alternative, misrepresentation theory, the FSIS has

3    never expressed any finding regarding the 2018 Popcorn Chicken Label. Conagra

4    only submitted sketch approvals for the 2016 and 2022 labels. As discussed above,

5    the 2018 label is materially different than the 2016 label, and the 2018 product

6    contains materially different ingredients than the 2022 product (e.g., soy flour, whey,

7    and sugar). "The decision to approve or deny the use of a natural claim may be

8    affected by the specific context in which the claim is made." Food Standards and

9    Labeling Policy Book at 110-111. Thus, it would be improper for this Court to

10   speculate about what documentation Conagra would have submitted or how the FSIS

11   would have view the 2018 label that it never reviewed. Moreover, because the 2018

12   Popcorn Chicken Label never received FSIS approval, it is outside the province of

13   USDA preemption and up to the jury to decide whether the label is deceptive or

14   misleading, including within the meaning of Health & Safety Code §114087(a).

15       **C.    Conagra's Off-label Advertising Is Outside the Scope of the**
16               **Preemption Defense**

17       It is undisputed that Conagra did not submit the advertising claims made on its

18   website for FSIS approval. *See Cohen*, 16 F.4th at 1290-91. Conagra's website

19   advertising claims its Chicken Products are "made with 100% natural white-meat

20   chicken, and without preservatives, artificial flavors, or artificial colors" (the "Product

21   Claims"). Dkt. 98 ¶¶ 72-74. Conagra's website advertising also represents that the

22   products are "made with 100% natural white-meat chicken. Microwaved or oven

23   baked, they're a quick, tasty treat without artificial colors, artificial flavors, or

24   preservatives." *Id*. Not only were these false and misleading representations not

25   reviewed or approved by the FSIS, but they are materially different than what is

26   represented on the product's labelling. *Id.*  There is no preemption when off-label ads

27   are not "materially identical" to preemptive labelling terms. *Cohen*, 16 F.4th at 1290.

28   Despite the Ninth Circuit opinion, Conagra insists its website advertising is

HAEGGQUIST & ECK, LLP

16            Case No.: 8:20-cv-00637-DOC-ADS

preempted.

Citing regulatory definitions and a newly issued USDA guideline, Conagra argues that preemption applies to its website advertising because the "FSIS has determined that the representations "No Preservatives," "No Artificial Flavors, and "No Artificial Colors" apply to the Chicken Products as a whole." Mtn. at 21-22. Defendant's argument is meritless because the USDA guideline has no application to non-label advertising. Conagra provides no legal justification supporting why guidelines and definitions used for *labels* should be applied to non-label advertising. The Court should summarily reject Conagra's invitation to apply FSIS food labeling guidelines to their website advertising.[18]

The irony of Conagra's newly formed argument is it concedes the representations are deceptive. Indeed, throughout this litigation, Conagra has repeatedly represented to this Court the exact opposite of the argument it now makes, namely, that the Product Claims *only* applied to the chicken meat and *not* the whole product. *See, e.g.*, Dkt. 15.1, p. 12 ("No representation on the labeling or elsewhere plausibly extends those claims to the product as a whole.") Conagra even went further, arguing that "no reasonable consumer would be deceived into thinking that the entire product was "100% Natural" or that it contained "No Preservatives" or "artificial flavors" or "colors" because the products' ingredient list identifies precisely what ingredients are included in the Chicken Products."[19] *Id.* at p. 16. The rational for Conagra's position has been that it would be "nonsensical" and "strain credulity to imagine a reasonable consumer" would believe that the products, as a whole, were all

---

[18]    The chemical operation of food additives is for expert testimony. *See* Fed. R. Evid. 702. It would be improper to resolve them without the opinions of an expert.
[19]    While Plaintiff disagrees with Conagra's opinion that a reasonable consumer would not be deceived by its advertising, the point is that Conagra tried to make this Court believe that the Product Claims should not extend to the Products as a whole because it knows to do so would be false advertising.

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

HAEGGQUIST & ECK, LLP

1026108.1

natural. Thus, taking Conagra's prior factual statements as true, combined with their current position that the Product Claims apply to the Products as a whole, it can be reasonably concluded that Conagra concedes that its website advertising is false. This Court should deny Conagra's attempt to dismiss Plaintiff's non-label advertising claims.

### D.   Unjust Enrichment Is Not Subject to Dismissal

Plaintiff adequately pleaded a cause of action for unjust enrichment. Indeed, Conagra has not suggested that Plaintiff failed to allege the requisite elements of an unjust enrichment claim under California law – the state of Plaintiff's residence. *See Beaver v Omni Hotels Mgmt. Corp.*, 2023 WL 6120685, at *18 (S.D. Cal. Sept. 18, 2023) ("The elements of an unjust enrichment claim are (1) receipt of a benefit, and (2) unjust retention of the benefit at the expense of another.").

### 1.   Plaintiff Is Not Required to Allege Which States' Law Will Apply to Class Members' Claims

Instead of moving to dismiss *Plaintiff's* unjust enrichment claim, Conagra asked the Court to "dismiss" Plaintiff's "nationwide unjust enrichment claim." (Def. Mem. at 22.) This request betrays the working of Rule 23.  Plaintiff did not assert a "nationwide unjust enrichment claim." Plaintiff asserted his own claim for unjust enrichment. Later in the proceedings, pursuant to Rule 23, Plaintiff will seek to "present claims on behalf of others," *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015), by asking the Court to certify a class that satisfies Rule 23's requirements. Those requirements include that "the claims and defenses of the representative parties [Plaintiff] are typical of the claims or defenses of the class" and that "the common questions of law predominate over questions affecting only individual members." Fed. R. Civ. P. 23(a), (b). If more than one states' law apply to the class members' unjust enrichment claims, Plaintiff will need to demonstrate that the laws are sufficiently similar to meet Rule 23's requirements. But that question arises at the class certification stage, not the pleading stage.

1
2
3
4
5
6
7
8
9
10

HAEGGQUIST & ECK, LLP

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, Conagra's argument that Plaintiff's "nationwide unjust enrichment claim" should be dismissed because he did not plead which state's law governs the claim makes no sense. Mtn at 22. There is no "nationwide unjust enrichment" claim. Plaintiff acknowledges that other courts in this district have – incorrectly – imposed a requirement at the pleading stage to identify which states' laws will apply to the class – or classes or subclasses – that Plaintiff will seek to certify. *See id.* (citing *Ablaza v. Sanofi-Aventis United States LLC*, 2023 WL 2942983, at *4 (N.D. Cal. April 13, 2023). However, no such requirement appears in Rule 23 and no decision by the Ninth Circuit – or any other appellate court that Plaintiff has found – imposes such a requirement.[20]

## 2. It is Premature to Decide Whether California Law Can Apply to All Class Members' Claims

Conagra asserts that California's unjust enrichment law cannot apply to class members whose transactions occurred in other states.  Mtn. at 23 (citing *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), *overruled on other grounds*, *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)). But, the Ninth Circuit rejected this cramped interpretation of *Mazza*. *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 563 (9th Cir. 2019). The court noted that in *Mazza*, decided after the district court certified a class, the plaintiff did not dispute the differences between foreign law and California law or

---

[20]    Some courts have reasoned that a class plaintiff must identify in the complaint each state's law that will be implicated by the class so the court can "determine whether the unjust enrichment claim has been adequately pled [sic] . . . ." *E.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018). The issue at the pleading stage is whether *plaintiff's* claim is adequately pleaded.  At the class certification stage, the plaintiff must demonstrate that any state's law applicable to the unjust enrichment claim is substantially similar so as to satisfy Rule 23.  To the extent any states' law differs such that Plaintiff's allegations would fail to state a claim under those laws, Rule 23's requirements might not be satisfied, and residents of that state might have to be omitted from the class.

that such differences would make "a difference in this litigation." *Id.* (citing *Mazza*, 666 F.3d. at 591 n.3). "Weighing these arguments and concessions, a divided panel concluded that the defendant had 'met its burden' to show that foreign law applied '[u]nder the facts and circumstances of this case.'" *Id.* Conagra has made no such showing here.

### 3. Plaintiff Can Represent Class Members Whose Claims Arise Under the Laws of Other States

Conagra's assertion that Plaintiff "lacks standing to bring claims under the laws of states where [he has] alleged no injury, residence, or other pertinent connection" is simply incorrect. Mtn. at 23 (emphasis added) (citing *Goldstein v. GM LLC*, 445 F. Supp. 3d 1000, 1021 (S.D. Cal. 2020)). Conagra, and the decisions on which it relies, fundamentally misunderstand the distinction between standing and class certification. *See Melendres v. Arpaio*, 764 F.3d 1254, 1261 (9th Cir. 2015) (noting that courts often confuse the distinction between standing and class certification). A class plaintiff represents absent class members and asserts *their* claims on *their* behalf. The class plaintiff does not have to have standing to assert those claims because she is not asserting them on her behalf.

Conagra did not identify any appellate authority for this proposition. In fact, Ninth Circuit precedent is to the contrary. In *Melendres*, the Ninth Circuit held unambiguously that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." 764 F.3d at 1261-62. The question is not whether the plaintiff has "standing" to assert claims of absent class members, but whether the plaintiff can "fairly and adequately protect the interests of the class." *Id.* (citing *Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975)). Further, "*any* issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant *only* to class certification, not standing." *Id.* at 1261 (emphasis added). Notably, the

*Melendres* court's holding was not limited to the factual distinctions concerning injuries, but applied to "any issues" concerning the relationship between the class representatives and the passive class members.

Indeed, if a plaintiff lacked *standing* to represent class members with claims governed by other state's laws, the holding in *Mazza* would not make sense. In *Mazza*, the Ninth Circuit held that because the laws of each state applied to a nationwide class asserting consumer protection and unjust enrichment claims, Rule 23(b)(3)'s predominance requirement was not met. *Id.* at 589. The court never suggested that the named plaintiffs – whose transactions occurred in Florida and Maryland (*id.* at 587) – lacked *standing* to represent class members from different states. To the contrary, the court expressly stated that it "express[ed] no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased [the vehicles] in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." *Id.* at 94. If the need to apply multiple states' laws affected the name plaintiffs' *standing*, the Ninth Circuit would have simply held that, on remand, the district court could only certify classes of purchasers in Florida and Maryland.

Courts in this circuit have rejected the proposition that a class representative lacks standing to represent class members whose claims are governed by a different state's laws. For example, Judge Chen engaged in a thorough analysis of the question, and concluded that "whether a plaintiff can bring claims on behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23, not Article III standing." *Sultanis v. Champion Petfoods USA  Inc.*, 2021 WL 3373934, at *6 (N.D. Cal. Aug. 3, 2021) (Chen, J.) (discussion therein); *see also Beau v. Kia America, Inc.*, 2023 WL 4680806, at *5 (C.D. Cal. June 16, 2023) (denying motion to dismiss on grounds that plaintiff lacks standing to assert claims on behalf of

nationwide putative class members); *Murphy v. Oly Public Benefit Corp.*, 2023 WL 210838, at *15 (N.D. Cal. Jan. 17, 2023) ("Plaintiff can represent class members with claims based on other states' laws."); *Senne v. Kansas City Royals Baseball Corp.*, 2021 WL 3129460, at *18 (N.D. Cal. July 23, 2021) ("Accordingly, the Court addresses the question of whether Sedlock can represent the class members' claims under California and Arizona law under Rule 23.).[21]

### E.   Standing for Injunctive Relief and Equitable Relief

#### 1.   Plaintiff has Standing to Seek Injunctive Relief

The SAC specifically alleges that an injunction is necessary to prevent Conagra from falsely advertising its Chicken Products and overcharging customers, including Plaintiff, in the future. Dkt. 98 ¶¶ 88, 123,134. The two cases cited by Conagra, *Joslin v. Clif Bar & Co*., 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019) and *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *14 (S.D. Cal. Jan. 3, 2018), are distinguishable from the instant case. Unlike what Plaintiff does at ¶ 84, the plaintiffs in those cases did not allege they want to or intend to purchase the products at issue in the future. Indeed, without an injunction, Plaintiff might purchase the Chicken Products in the future, despite the fact the Products were marred by false advertising

---

[21]     Courts that reached the opposite conclusion, such as *Goldstein v. GM LLC*, 445 F. Supp. 3d 1000, 1021 (S.D. Cal. 2020) (Def Mem. at 22), incorrectly frame the issue as whether the named plaintiffs have "standing for each claim they raise" and assert that the plaintiffs "do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection." *Id.* at 1020-21. But no named plaintiff would have Article III standing to assert the claims belonging to another or to redress harm suffered by another. Rule 23 permits plaintiffs to represent the absent class members in a single proceeding. The named plaintiff is not asserting her own claim under the laws of the other states, and therefore does not need to demonstrate standing under those laws. She is asserting the absent class members' claims under those laws, and it is sufficient that the absent class members have standing. *Cf. Mazza*, 666 F.3d at 594-95 (recognizing that "[N]o class member may be certified that contains members lacking Article III standing.").

HAEGGQUIST & ECK, LLP

or labeling, as Plaintiff may reasonably, but incorrectly, assume the product was improved. *Joslin v. Clif Bar & Co.,* 2019 WL 5690632 at *2 (N.D. Cal. Aug. 26, 2019). The SAC alleges particularized facts supporting this conclusion: even after Plaintiff's concerns were brought to Conagra, it continued to overcharge Plaintiff and misrepresent its Chicken Products. ¶¶ 79-83. The complaint, therefore, plausibly alleges Article III standing.

### 2.      Plaintiff is Entitled to Equitable Relief

Conagra argues injunctive relief is not available under the facts alleged because Plaintiff possesses an adequate remedy at law. Conagra is wrong. Plaintiff is entitled to seek both restitution under the UCL (or, as discussed *supra*, damages under a different statute or common law cause of action) to address past harm while at the same time seeking an injunction under the UCL to prevent future harm. *See, e.g.*, *Allied Grape Growers v. Bronco Wine Co.,* 203 Cal. App. 3d 432, 453-54 (1988) (rejecting argument that plaintiff "was not entitled to obtain the equitable remedy of injunction where there is an adequate remedy at law" because, *inter alia*, §17203 "specifically permits a court to . . . enjoin unfair competition" and "case law interpreting Business and Professions Code section 17200 holds that courts have broad powers to prohibit unfair practices, including imposition of injunctions"); *Covell v. Nine West Holdings, Inc.* (S.D. Cal. Jan. 25, 2018) 2018 WL 558976, at *8 (plaintiff may be able to obtain injunctive relief under the UCL by "arguing that injunctive relief is the only way to protect the class from future deceptive behavior").

In addition, CLRA remedies are not exclusive. *See* Cal. Civ. Code §1752 ("The remedies . . . shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law."); *Flores v. Southcoast Automotive Liquidators, Inc.*, 17 Cal. App. 5th 841, 849 (2017) ("The remedies of the CLRA are cumulative of other rights.").

Conagra relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), for the proposition that a federal court cannot award equitable restitution under

HAEGGQUIST & ECK, LLP

Section 17200 if an adequate remedy at law exists. Mtn. at 24-25. However, *Sonner* is not controlling law in the Ninth Circuit. As discussed in the recent decision, *Ferry v. Porsche Cars North Am., Inc.*, 2022 WL 1769120, at *5-6 (C.D. Cal. March 11, 2022), the amended opinion in *Sonner* was not issued until August 20, 2020. Previously, in July 2020, a panel of the Ninth Circuit issued a decision in *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) (issued July 28, 2020), where the Ninth Circuit expressly rejected defendant's argument that the federal court could not issue equitable relief "under the UCL or FAL, given an adequate legal remedy under the CLRA" exists. *Id*. at 1021 n.3. The court held that "[t]he UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." *Id*. As explained in *Ferry*, this language was not mere dicta: "It is unclear how this rejection of an argument seeking the elimination of a particular type of relief could be considered dicta, as at least some courts have concluded (without explanation on the dicta point)."[22]

The *Ferry* court further explained that although the subsequent *Sonner* opinion reached a different conclusion as to the availability in federal court of equitable relief for violations of the UCL and FAL, the three-judge panel deciding *Sonner* cannot overturn the decision of a prior three judge panel. *Ferry*, 2022 WL 1769120, at *5. Further, the *Sonner* court did not discuss *Moore*, which had been issued one month earlier (nor did *Moore* discuss the original decision in *Sonner*).Thus, the *Moore* decision is controlling. Under binding Ninth Circuit law, the existence of an adequate

---

[22]     Some courts have asserted that *Moore* merely addressed the scope of remedies available under California law and did not decide the issue of whether a federal court could award equitable relief under such statutes where an adequate legal remedy exists. *See Ferry*, 2022 WL 1769120, at *5. However, Moore expressly rejected the argument that an adequate remedy at law precludes equitable relief in federal court. *Id*.

24                    Case No.: 8:20-cv-00637-DOC-ADS

remedy at law does not prevent this Court from awarding equitable relief under the UCL.

Even if *Sonner* were controlling, as stated above, it would not bar equitable relief where no legal remedy exists, such as for prospective relief. *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("Assuming that *Sonner* applies to injunctive relief, [plaintiff] has shown that monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at."); *Souter v. Edgewell Personal Care Co.*, 2022 WL 485000, at *13 (S.D. Cal. Feb. 16, 2022) (*Sonner* does not apply to claims of false advertising that may result in future harm); *Roper v. Big Heart Pet Brands, Inc.*, 2020 WL 7769819, at *8-9 (E.D. Cal. Dec. 30, 2020) ("An actionable cognizable injury exists where a plaintiff alleges that they cannot rely on defendant's labeling when deciding whether to purchase products in the future.").

## IV.   CONCLUSION

Cohen has stated a claim for relief that should proceed to discovery, therefore Conagra's Rule 12(b)(6) motion must be denied. If this Court determines that the SAC should be dismissed in whole or in part, Plaintiff requests leave to amend. Rule 15 is applied with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

Respectfully submitted,

Dated:  November 13, 2023

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY (134180)
MARC L. GODINO (182689)

By:   */s/ Marc L. Godino*
    MARC L. GODINO

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

HAEGGQUIST & ECK, LLP

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1026108.1

lglancy@glancylaw.com
mgodino@glancylaw.com
info@glancylaw.com

Dated: November 13, 2023

HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)

By:  */s/ Aaron M. Olsen*
AARON M. OLSEN

225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
ambere@haelaw.com
alreenh@haelaw.com
aarono@haelaw.com

Dated:  November 13, 2023

ELSNER LAW & POLICY LLC
GRETCHEN ELSNER *(Pro Hac Vice)*

By:   */s/ Gretchen Elsner*
GRETCHEN ELSNER

314 South Guadalupe Street
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

Dated:  November 13, 2023

GLANCY PRONGAY & MURRAY LLP
DAVID J. STONE (208961)

By:   */s/ David J. Stone*
DAVID J. STONE

230 Park Avenue, Suite 358
New York, NY 10169

HAEGGQUIST & ECK, LLP

26            Case No.: 8:20-cv-00637-DOC-ADS

Telephone: (212) 682-5340
Facsimile: (212) 884-0988
dstone@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Rule 5-4.3.4(a)(2), I, Marc L. Godino, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  November 13, 2023

*/s/ Marc L. Godino*

Marc L. Godino

HAEGGQUIST & ECK, LLP

1

HAEGGQUIST & ECK, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 13, 2023.

*/s/ Marc L. Godino*
MARC L. GODINO

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY (134180)
MARC L. GODINO (182689)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancylaw.com
mgodino@glancylaw.com
info@glancylaw.com

Case No.: 8:20-cv-00637-DOC-ADS
OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1026108.1