ANGELA SPIVEY (*pro hac vice*)
ANDREW PHILLIPS (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:   angela.spivey@alston.com
               andrew.phillips@alston.com

RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail:   rachel.lowe@alston.com

Attorneys for Defendant
**CONAGRA BRANDS, INC.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

ROBERT COHEN, a consumer, on behalf of himself and all others similarly situated,

        Plaintiff,

   v.

CONAGRA BRANDS, INC., a Delaware corporation,

        Defendant.

Case No.: 8:20-cv-00637-DOC

Assigned to the Hon. David O. Carter

**DEFENDANT CONAGRA BRANDS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date:      January 22, 2024
Time:      8:30 a.m.
Courtroom:  10A

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT..........................................................................................6

      A.    Consistent with the Prior Orders in this Case, Federal Law Expressly
            Preempts Plaintiff's Labeling Claims.................................................6

      B.    Plaintiff Cannot Pursue Claims Based on the 2018 Popcorn Chicken
            Label.....................................................................................................7

      C.    Plaintiff Cannot Maintain His Website Claims Because They Are
            Materially Identical to FSIS-Approved Labeling Claims ...................9

      D.    Plaintiff Cannot Assert a Nationwide Unjust Enrichment Claim .......11

      E.    Plaintiff Lacks Standing to Seek Injunctive Relief ...........................14

      F.    Plaintiff Cannot Seek Equitable Relief Here .....................................15

III.  CONCLUSION ..........................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Allen v. ConAgra Foods, Inc.*,
    331 F.R.D. 641 (N.D. Cal. 2019) ...................................................................14

*Avoy v. Turtle Mt., LLC*,
    No. 13-cv-0236, 2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014) ........9

*Beau v. Kia Am., Inc.*,
    No. 8:22-cv-01545, 2023 U.S. Dist. LEXIS 127672 (C.D. Cal. June 16,
    2023) .............................................................................................................13

*Brazil v. Dole Food Co.*,
    No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23,
    2013) ...............................................................................................................8

*Carpenter v. Petsmart, Inc.*,
    441 F. Supp. 3d 1028 (S.D. Cal. 2020) .........................................................11

*Clevenger v. Welch Foods Inc.*,
    No. 20-cv-01859, 2022 U.S. Dist. LEXIS 235432 (C.D. Cal. Dec. 14,
    2022) ........................................................................................................16, 17

*Drake v. Toyota Motor Corp.*,
    No. 2:20-cv-01421, 2020 U.S. Dist. LEXIS 227197 (C.D. Cal. Nov. 23,
    2020) .............................................................................................................12

*Fernandez v. Atkins Nutritionals, Inc.*,
    No. 3:17-cv-01628, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018).......14

*Franz v. Beiersdorf, Inc.*,
    745 F. App'x 47 (9th Cir. 2018).......................................................................8

*Goldstein v. Gen. Motors LLC*,
    445 F. Supp. 3d 1000 (S.D. Cal. 2020) .........................................................12

*Graham v. Cent. Garden & Pet Co.*,
    No. 22-cv-06507, 2023 U.S. Dist. LEXIS 55493 (N.D. Cal. Mar. 30, 2023)....15

*Grausz v. Kroger Co.*,
    No. 19-cv-449, 2021 U.S. Dist. LEXIS 231924 (S.D. Cal. Jan. 22, 2021)........15

*Guzman v. Polaris Indus.*,
    49 F.4th 1308 (9th Cir. 2022).........................................................................17

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ........................................................................ 2

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  No. 19-md-02918, 2020 U.S. Dist. LEXIS 197736 (N.D. Cal. Oct. 23,
  2020) ............................................................................................................ 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ....................................................................... 14

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) .................................................. 11, 12

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
  No. 16-cv-06391, 2018 U.S. Dist. LEXIS 54850 (N.D. Cal. Mar. 30,
  2018) ............................................................................................................ 12

*Jones v. Micron Tech., Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) .................................................... 12, 13

*Joslin v. Clif Bar & Co.*,
  No. 4:18-cv-04941, 2019 U.S. Dist. LEXIS 192100 (N.D. Cal. Aug. 26,
  2019) ............................................................................................................ 14

*Lewis v. Casey*,
  518 U.S. 343 (1996) ..................................................................................... 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................... 12

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................. 13, 14

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ..................................................................... 12

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ................................................................ 16, 17

*Murphy v. Olly Pub. Ben. Corp.*,
  651 F. Supp. 3d 1111 (N.D. Cal. 2023) ....................................................... 13

*Pratt v. Whole Food Mkt. Cal., Inc.*,
  No. 5:12-cv-05652, 2015 U.S. Dist. LEXIS 134968 (N.D. Cal. Sept. 30,
  2015) .............................................................................................................. 9

*Rodriguez v. FCA US LLC*,
  No. 8:22-cv-01445, 2023 U.S. Dist. LEXIS 48041 (C.D. Cal. Mar. 21,
  2023) ............................................................................................................ 16, 17

*Senne v. Kan. City Royals Baseball Corp.*,
    114 F. Supp. 3d 906 (N.D. Cal. 2015) ............................................................. 13

*Shay v. Apple Inc.*,
    No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415 (S.D. Cal. May 3,
    2021) ........................................................................................................... 16, 17

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ........................................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .............................................................. 15, 16, 17

*Sultanis v. Champion Petfoods USA Inc.*,
    No. 21-cv-00162, 2021 U.S. Dist. LEXIS 145293 (N.D. Cal. Aug. 3, 2021) .... 13

*Swearingen v. Amazon Pres. Partners, Inc.*,
    No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18,
    2014) ............................................................................................................. 8, 9

*Swearingen v. Pac. Foods of Or., Inc.*,
    No. 13-cv-04157, 2014 U.S. Dist. LEXIS 105730 (N.D. Cal. July 30, 2014) ..... 9

*Tabler v. Panera LLC*,
    No. 19-cv-01646, 2020 U.S. Dist. LEXIS 114716 (N.D. Cal. June 30,
    2020) ............................................................................................................... 11

*Thomas v. Costco Wholesale Corp.*,
    No. 5:12-cv-02908, 2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31,
    2014) ................................................................................................................. 9

*Thornton v. Tyson Foods, Inc.*,
    28 F.4th 1016 (10th Cir. 2022) ........................................................................... 2

*Walcoff v. Innofoods USA, Inc.*,
    No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474 (S.D. Cal. May 4,
    2023) ......................................................................................................... 11, 14

*Yagman v. Wunderlich*,
    No. 2:21-cv-06093, 2021 U.S. Dist. LEXIS 252983 (C.D. Cal. Oct. 4, 2021) .... 7

**STATUTES**

21 U.S.C. § 467e ............................................................................................... 2, 3, 4

**OTHER AUTHORITIES**

78 Fed. Reg. 66826 (Nov. 7, 2013) ......................................................................... 10

USDA, Food Standards and Labeling Policy Book (Aug. 2005) ........................... 10

I.   **INTRODUCTION**

The Court previously cautioned Plaintiff to amend his pleading a second time only if he could "plead additional facts consistent with the governing standard and the rulings" in the Court's July 7, 2023 Order. Dkt. 90 at 14 n.2. The Court further advised Plaintiff "that such a request must be consistent with this Order," that the "Court will not entertain further arguments that subsequent generic approval for label changes unrelated to previously sketch approved special claims like 'natural' is improper for changes unrelated to the special claim (e.g., shape, size, packaging)," and that "Plaintiff should also heed the Ninth Circuit's guidance that, where labels have been approved by FSIS (including generic approval – which is a well-established form of approval), the claims are preempted and must be dismissed." *Id.*

Plaintiff's Second Amended Complaint ("SAC") and Opposition to Conagra's Motion to Dismiss SAC ("Opposition") flout the Court's clear directive. In the SAC, Plaintiff alleges claims related to Chicken Products that the Court already dismissed.[1] Then, in his Opposition, Plaintiff reasserted arguments as to these previously dismissed Chicken Products that this Court and the Ninth Circuit specifically rejected by prior orders, as set forth in the chart below:

---

[1] The list of Chicken Products at issue has changed from the First Amended Complaint ("FAC") to the SAC, but the following Chicken Products were previously dismissed (*see* Dkts. 72 & 90) and are still included in the SAC: (1) Chicken Breast Tenders; (2) Chicken Breast Tenders – Buffalo Style; (3) Chicken Breast Strips; (4) Whole Grain Chicken Breast Strips; (5) Chicken Breast Nuggets; (6) Chicken Breast Patties; (7) Original Chicken Patties (incorrectly identified as "Original Chicken Breast Patties" in the SAC); (8) Original Crispy Fried Chicken; and (9) Bone-In Wings – Hot & Spicy. Of the four remaining Chicken Products, the Court previously declined to dismiss allegations related to Popcorn Chicken, Plaintiff did not previously challenge Boneless Wyngz – Buffalo Style or Honey BBQ (but Conagra received sketch approval for both), and Conagra has never sold the product "Original Chicken Breast Tenders."

| Plaintiff's Opposition | Prior Ruling |
|---|---|
| "The rubber stamp does **not** mean that a government regulator determined that Conagra's marketing terms were not false and misleading." Dkt. 102 at 9.[2]<br><br>"Plaintiff's SAC alleges that USDA did **not** determine that Conagra's 'No Preservatives' and '100% Natural' marketing statements are not false or misleading." Dkt. 102 at 17. | "[W]hen the agency reviews and approves a label, the agency is deciding that it is *not* false or misleading under the PPIA . . . ." Dkt. 35 at 9. |
| "Rubber stamp approval is not dispositive of false advertising claims." Dkt. 102 at 12. | "Thus, a plaintiff who brings a state law claim that the approved label is false or misleading is seeking to impose a requirement different from the federal requirements. That state law claim is preempted by § 467e, which bars plaintiffs from challenging the agency's application of the PPIA's mislabeling standards through state law claims." Dkt. 35 at 9–10. |
| "[P]reemption does not apply because an agency's label determination is not dispositive of regulatory compliance." Dkt. 102 at 14.[3] | Evidence of sketch approvals, or evidence of previously approved labels containing special claims where "the only modification involves changes unrelated to the special claim" would "preempt all of Cohen's product-label claims to all product labels, (unless he can plausibly allege the modification is misleading). Cohen does not do so here." "Thus, ConAgra's evidence would establish that the challenged statements **were reviewed** |

---

[2] Plaintiff cites a Tenth Circuit **dissent** as support for this assertion. Tellingly, Plaintiff fails to mention that the Tenth Circuit majority aligns with the Ninth Circuit's opinion on preemption. *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1024 (10th Cir. 2022) ("The FSIS has already approved defendants' labels, concluding that they are not deceptive or misleading under the FMIA.") (citing Ninth Circuit decision in this case approvingly).

[3] On this point, Plaintiff relies on *Hardeman v. Monsanto Co.*, a case that concerns a different statute, FIFRA, which expressly provides that EPA review shall **not** be construed as a defense to the commission of any offense under the statute and merely constitutes *prima facie* evidence that pesticide labeling complies with registration provisions. 997 F.3d 941, 956 (9th Cir. 2021); *see* Dkt. 102 at 14–15.

| | |
|---|---|
| | *by FSIS* and would *preempt Cohen's claims*." Dkt. 35 at 11–12 n.6 (emphasis added). |
| Conagra's use of the term "100% Natural" is misleading because "[c]onsumers understand these terms to relate to animal raising" and Conagra allegedly has not substantiated the use of "natural" animal-raising practices. Dkt. 102 at 16–17.<br><br>USDA could not have determined that Conagra's "No Preservatives" and "100% Natural" marketing statements are not false or misleading because "the products contain preservatives, do not meet USDA's definition of natural . . . , did not comply with USDA's requirements for animal raising claims, contain unnatural ingredients, and do not comport with consumer understanding of natural." Dkt. 102 at 17–18. | Consumers may not "second-guess the agency's decisions" to approve labeling "through state law claims against producers." Dkt. 35 at 10.<br><br>"If a plaintiff claims that such a label is false or misleading notwithstanding review and approval by FSIS, he is essentially claiming that the agency's decision to approve the label was wrong," which means he is "seeking to impose a requirement different from the federal requirements." Dkt. 35 at 9–10.<br><br>Plaintiff's argument that Conagra "misled the federal government about its products because the chicken with which it fabricates its preservative-laden nuggets does not actually qualify as '100% Natural'" "lack[s] merit and ignore[s] the Ninth Circuit's directive that the Court, on remand, should decide only whether 'the evidence shows that ConAgra's label was approved by FSIS.'" Dkt. 72 at 8. |
| "Courts can, and have, sorted through which representations on a label are subject to consumer protection lawsuits versus which representations are preempted." Dkt. 102 at 12. | "Allowing private consumers to second-guess the agency's decisions through state law claims against producers would both circumvent that pre-approval process and conflict with the PPIA's goal of national uniformity." Dkt. 35 at 10.<br><br>"[I]f ConAgra's labels *were* reviewed and approved by FSIS, then Cohen's claims challenging the labels would be preempted." Dkt. 35 at 11. |
| "When reviewing the marketing terms on a motion to dismiss, this Court must consider the reasonable consumer standard" applicable to Plaintiff's state law claims. Dkt. 102 at 17. | "§ 467e . . . bars plaintiffs from challenging the agency's application of the PPIA's mislabeling standards through state law claims." Dkt. 35 at 10. |
| "The PPIA states that the federal law 'shall not preclude any State . . . from making requirements or taking other action . . . .' 21 U.S.C. § 467e," and "[t]he | "Cohen argues that . . . the PPIA includes a savings clause that allows his claims to survive preemption. . . . But in *National Broiler Council v. Voss*, we explained that |

| | |
|---|---|
| federal and state laws at issue here are also wholly consistent, and Conagra can comply with the federal PPIA and the California UCL, FAL and CLRA by ensuring that its marketing terms are not false or misleading." Dkt. 102 at 11, 15. | § 467e 'authorizes states to undertake, concurrently with the USDA, efforts to enforce *federal* requirements.' 44 F.3d 740, 746 (9th Cir. 1994) (per curiam) ('[Section 467e] does not grant states the authority to enact their own additional requirements.')" "[A] plaintiff who brings a state law claim that the approved label is false or misleading is seeking to impose a requirement different from the federal requirements. That state law claim is preempted by § 467e, which bars plaintiffs from challenging the agency's application of the PPIA's mislabeling standards through state law claims." Dkt. 35 at 9–10. |
| "That is why California's consumer protection laws and concurrent jurisdiction under the PPIA are important for holding corporate marketers accountable for misleading consumers." Dkt. 102 at 11. | "Cohen's *policy* arguments against preemption are not only irrelevant, but also unpersuasive." Dkt. 35 at 10 (rejecting same concurrent jurisdiction argument). |
| "[T]he Court should be wary of Conagra improperly seeking summary judgment by stealth and inviting this Court to commit reversible error. Conagra has not produced a single document in discovery, but instead provides voluminous redacted documents via a self-serving attorney declaration." Dkt. 102 at 12. | "On remand, ConAgra may submit its approval evidence to the district court, which may take judicial notice of the evidence (if appropriate) . . . ." "On remand, the parties should submit evidence about (and the district court should decide) only whether ConAgra's label was reviewed and approved by FSIS." Dkt. 35 at 12–13. The sketch approval and labeling evidence submitted by Conagra, "is the evidence the Ninth Circuit ordered the Court to review." Dkt. 90 at 10. |
| "As this Court knows and the Ninth Circuit has held in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018), it is improper for a trial court to accept the truth of matters asserted in incorporated documents only to resolve factual allegations against plaintiff's well-pled allegations." Dkt. 102 at 12–13. | "Defendant contends that *Khoja* is distinguishable because Defendant 'does not seek notice of the FSIS approvals for their content, but merely to establish the singular fact that FSIS did indeed receive and review the applications.' . . . The Court agrees with Defendant. The only fact the Court need take notice of is that the labels were approved as reflected in the sketch approvals." Dkt. 72 at 6. |

| | |
|---|---|
| "Conagra asked the Court to rule at the pleading stage on legal and factual issues that are not ripe for review until summary judgment or trial. Federal preemption is an affirmative defense on which Conagra bears the ultimate burden of persuasion." Dkt. 102 at 13. | Because "preemption is an affirmative defense [and] the defendant bears the burden of pleading and supporting its preemption argument," where "the parties dispute whether FSIS review occurred at all, the defendant must produce evidence that the label was reviewed and approved by FSIS." Dkt. 35 at 12. "[T]his is *hardly a significant burden*." *Id.* at 13 (emphasis added). The evidence Conagra has submitted—"including an application for sketch approval . . . with a stamp showing FSIS approved the application" or evidence that a label was "[p]reviously approved [and] the only modification involves changes unrelated to the special claim"—"would establish that the challenged statements were reviewed by FSIS and would preempt Cohen's claims." *Id.* at 11–12 n.6. |

As a result, prior rulings squarely foreclose all of Plaintiff's claims relating to labels FSIS reviewed and approved. Aside from the 2018 Popcorn Chicken label, which Conagra addresses below, Plaintiff does not challenge Conagra's chart showing FSIS reviewed and approved (through either sketch or generic approval) the labels for all other challenged Chicken Products before they entered commerce. *See* Dkt. 101-3 (providing chart). The Court should therefore dismiss these claims with prejudice.

The remainder of Plaintiff's Opposition fares no better. *First*, Plaintiff advances unavailing theories as to why he should be able to bring claims related to the 2018 Popcorn Chicken label. Plaintiff posits that "Conagra violated the PPIA by illegally placing in commerce an unapproved 2018 Popcorn Chicken label from September 13, 2018, through February 23, 2022." Dkt. 102 at 23. According to Plaintiff, even if the 2018 Popcorn Chicken Label did not contain any misleading or deceptive statements, the 2018 Popcorn Chicken label "was unlawfully in commerce in violation of the PPIA." *Id.* But the Ninth Circuit has emphasized in this case that Plaintiff cannot base his claim solely on a violation of the PPIA: there is no private right of action to enforce

the PPIA, and the "absence of a remedy for consumers in the PPIA is intentional." Dkt. 35 at 10. Plaintiff's "alternative" misrepresentation theory also is meritless. He concedes that only three ingredients in the 2018 Popcorn Chicken differ from those in Popcorn Chicken products bearing approved labels with the same label representations: "soy flour, whey, and sugar." Yet he does not and cannot allege that any of those ingredients are non-natural, preservatives, or artificial colors or flavors.

*Second*, as to Plaintiff's website claims, Conagra demonstrated in its Motion to Dismiss ("MTD") that FSIS's review and approval of the use of the labeling claims "No Preservatives," "No Artificial Colors," and "No Artificial Flavors" applied to the Chicken Products as a whole. Dkt. 101-1 at 26.[4] Thus, the website language—"They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors"—is materially identical to the label representations and preempted. Plaintiff does not demonstrate otherwise in his Opposition.

*Third*, well-established case law from courts within this Circuit requires dismissal of Plaintiff's claims for nationwide class, injunctive, and equitable relief.

As a result, the Court should dismiss all of Plaintiff's claims with prejudice.

## II.   ARGUMENT

### A.   Consistent with the Prior Orders in this Case, Federal Law Expressly Preempts Plaintiff's Labeling Claims

Setting aside the 2018 Popcorn Chicken label, discussed below, Conagra's Exhibit A to the MTD (Dkt. 101-3) demonstrates that Conagra received sketch or generic approval for each challenged Chicken Product. Consistent with the prior orders in this case, *see* Dkts. 35, 72, 90, the Court should dismiss as preempted all of Plaintiff's labeling claims related to each of the 13 Chicken Products identified in Plaintiff's SAC. The Court's dismissal necessarily extends to Plaintiff's theory that the Chicken Products are not "natural" based on certain animal husbandry practices. FSIS has

---

[4] The Ninth Circuit has already held that federal law preempts the "100% natural" website claim. Dkt. 35 at 14.

approved Conagra's use of the term "Natural" for the Chicken Products, so Plaintiff cannot challenge Conagra's use of that claim.

In any event, Plaintiff does not dispute that: (1) there is no legal support for the idea that an animal subjected to various animal husbandry practices produces "unnatural" products; (2) by its own terms, the actual claim made ("Made with 100% Natural* White Meat Chicken *Minimally Processed, No Artificial Ingredients") does not make any representation as to how the poultry used in the Chicken Products is raised; (3) Plaintiff's animal husbandry allegations are grossly speculative based on allegations lobbed at the industry in general, not any facts specific to Conagra; and (4) Plaintiff has not established Conagra's knowledge of these animal husbandry practices that led to the alleged deception at the time of sale. *See* Dkt. 101-1 at 18–20; *see generally* Dkt. 102. Accordingly, the Court should dismiss Plaintiff's animal husbandry theory as waived and abandoned. *See Yagman v. Wunderlich*, No. 2:21-cv-06093, 2021 U.S. Dist. LEXIS 252983, at *3–4 (C.D. Cal. Oct. 4, 2021).

## B. Plaintiff Cannot Pursue Claims Based on the 2018 Popcorn Chicken Label

While acknowledging that the PPIA's preemption provision applies to the 2016 and 2022 versions of the Popcorn Chicken labels, *see* Dkt. 102 at 18–19, Plaintiff persists in advancing two flawed alternative theories regarding the 2018 Popcorn Chicken label.

*First*, Plaintiff argues that Conagra violated the PPIA by "illegally placing in commerce an unapproved 2018 Popcorn Chicken Label," and that he may bring state-law claims to redress that violation even if the 2018 Popcorn Chicken Label did not contain deceptive statements. Dkt. 102 at 23. This theory fails at the outset because, as the Ninth Circuit explained, the PPIA does not confer a private right of action and the "absence of a remedy for consumers in the PPIA is intentional." Dkt. 35 at 10.

Even if Plaintiff could maintain a state-law claim premised upon a PPIA violation (which he cannot) that claim fails because Plaintiff does not plausibly allege actual

reliance on product labeling or marketing. Dkt. 101-1 at 25–26. Courts have repeatedly rejected the theory that Plaintiff raises here: reliance upon Conagra to sell an approved product that did not violate labeling laws. *See, e.g.*, *Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830, at *5 (N.D. Cal. Mar. 18, 2014); *see* Dkt. 98 at ¶ 33 (asserting that "consumers have relied" on the PPIA for more than half a century and that by placing the 2018 Popcorn Chicken Product into the market, Conagra "misrepresented to consumers the approval" of the product).

In response, Plaintiff relies on a non-precedential Ninth Circuit decision, *Franz v. Beiersdorf, Inc.,* 745 F. App'x 47, 48 (9th Cir. 2018), and lower court decisions citing to *Franz*. Dkt. 102 at 22. In *Franz*, the court stated that Plaintiff need not plead reliance for his UCL claim "because neither the alleged FDCA violation nor the alleged Sherman Law violation requires allegations of fraud or deception." 745 F. App'x at 48. Plaintiff further argues that there are doubtless many types of unfair business practices in which the concept of reliance does not apply. Dkt. 102 at 22. Not true. Reliance is required for a UCL claim premised on fraudulent misconduct, even where the underlying statutory violations themselves do not require allegations of fraud or deception and even if the plaintiff is pursuing a claim under the UCL's unfair or unlawful prongs. *Brazil v. Dole Food Co.*, No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921, at *30 (N.D. Cal. Sept. 23, 2013) (confirming that the reliance requirement applies to claims arising under the UCL's fraud prong and to claims arising under the UCL's unfair and unlawful prongs where the underlying misconduct alleged is fraudulent and dismissing UCL claims premised on violations of the FDCA and Sherman Law), *aff'd*, 660 F. App'x 531, 534 (9th Cir. 2016) (affirming decision and confirming UCL reliance requirement). Here, Plaintiff claims that Conagra violated the PPIA by engaging in fraudulent or deceptive conduct. *See* Dkt. 98 at ¶ 33 (alleging that Conagra misrepresented to consumers that the 2018 Popcorn Chicken Products were FSIS-approved), *see also id.* at ¶¶ 76, 121, 130; Dkt. 102 at 18 (arguing that Conagra "covertly began using" the 2018 Popcorn Chicken Product label). Consistent with the multitude of decisions from courts within

the Ninth Circuit, the Court should reject Plaintiff's "illegal product" theory due to a lack of reliance. *See Brazil*, 660 F. App'x at 534; *Amazon Pres. Partners*, 2014 U.S. Dist. LEXIS 36830, at *5; *Swearingen v. Pac. Foods of Or., Inc.*, No. 13-cv-04157, 2014 U.S. Dist. LEXIS 105730, at *4-5 (N.D. Cal. July 30, 2014); *Pratt v. Whole Food Mkt. Cal., Inc.*, No. 5:12-cv-05652, 2015 U.S. Dist. LEXIS 134968, at *12 (N.D. Cal. Sept. 30, 2015); *Avoy v. Turtle Mt., LLC*, No. 13-cv-0236, 2014 U.S. Dist. LEXIS 19241, at *21–22 (N.D. Cal. Feb. 14, 2014); *Thomas v. Costco Wholesale Corp.*, No. 5:12-cv-02908, 2014 U.S. Dist. LEXIS 46405, at *22–24 (N.D. Cal. Mar. 31, 2014).

*Second*, Plaintiff also fails to plead a plausible "alternative" misrepresentation theory. As Conagra explained in its MTD, through its approval of the 2016 and 2022 Popcorn Chicken labels, FSIS approved use of the challenged claims with respect to the vast majority of ingredients in the 2018 Popcorn Chicken Products, reflecting FSIS's view that none of these ingredients are non-natural, preservatives, or artificial colors or flavors. Dkt. 101-1 at 22–23. Plaintiff concedes that the only ingredients that FSIS did not consider in approving the 2022 Popcorn Chicken Product label are Soy Flour, Whey, and Sugar. Dkt. 102 at 24. Yet he does not explain how any of these ingredients are non-natural, preservatives, or artificial flavors or colors, and therefore does not plausibly allege that the inclusion of these additional ingredients caused him (or any reasonable consumer) to be deceived.

Proceeding under either the "illegal product" theory or the alternative misrepresentation theory, Plaintiff fails to state a plausible claim for relief.

## C.    <u>Plaintiff Cannot Maintain His Website Claims Because They Are Materially Identical to FSIS-Approved Labeling Claims</u>

As explained in Conagra's MTD, when FSIS approved Conagra's use of the "No Preservatives," "No Artificial Colors," and "No Artificial Flavors" representations on the Chicken Products labels, it approved the use of those claims with respect to the entire product as a whole, not just the white meat chicken. That is because FSIS evaluates negative claims on a product-level basis. Dkt. 101-1 at 26–27. As a result, the

"No Preservatives," "No Artificial Colors," and "No Artificial Flavors" statements on the label are materially identical to the website statement "They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors."

In response, Plaintiff contends that Conagra relies on "regulatory definitions and a newly issued USDA guideline." Dkt. 102 at 25–26. To the contrary, FSIS's view that negative statements apply to the product as a whole is not new and is not confined to the 2023 FSIS Guidelines cited in Conagra's MTD at footnote 24.[5] Plaintiff also suggests that there is no legal basis for applying labeling guidelines and definitions to non-labeling advertising. Dkt. 102 at 25–26. But the Ninth Circuit already explained in this case that state-law off-label claims that are "materially identical" or "essentially identical" to labeling claims are preempted. Dkt. 35 at 14. Here, the guidelines and definitions show that FSIS approved Conagra's claims that the Chicken *Products*, as a whole, contain "No Preservatives," "No Artificial Colors," and "No Artificial Flavors." That is "essentially identical" to the website claim that "They're [(the chicken products)] made . . . without preservatives, artificial flavors, or artificial colors." Plaintiff cannot second-guess the agency's decision here.

In addition, the Court's order should make clear that: (1) Plaintiff's claims premised on the off-label "Natural" representation are preempted and dismissed

---

[5] *See, e.g.*, USDA, Food Standards and Labeling Policy Book (Aug. 2005), available at https://www.fsis.usda.gov/sites/default/files/import/Labeling-Policy-Book.pdf, at PDF p. 18 ("Negative labeling is allowed if the statement is beneficial for health, religious preference, or other similar reasons. For example, highlighting the absence of salt *in a product* would be helpful to those persons on sodium-restricted diets. (emphasis added)), at PDF p. 18 ("Negative labeling is allowed if such claims call attention to the absence of ingredients because they are prohibited *in a product* by regulation or policy." (emphasis added)), at PDF p. 19 ("Negative labeling is allowed to indicate that absence of an ingredient when that ingredient is expected or permitted by regulation or policy. This could also apply to ingredients which are not expected or permitted by regulation or policy *if the ingredients could find their way into the product* through a component." (emphasis added)); *see also* 78 Fed. Reg. 66826, 66830 (Nov. 7, 2013) ("A negative claim may also identify the absence of certain types of ingredients, e.g., 'no preservatives' or 'no artificial coloring' based on the *product* formulation." (emphasis added)).

consistent with the Ninth Circuit's order, *see* Dkt. 35 at 14 ("Cohen cannot challenge the first half of that representation"—i.e., the phrase "They're made with 100% natural, white-meat chicken."); and (2) Plaintiff's claims based on "circulars, coupons, and other media" are dismissed given that Plaintiff has failed to identify with any specificity (in his SAC or Opposition) any such media, any statements made therein, or any statements therein on which he relied, *see* Dkt. 101-1 at 27; *Tabler v. Panera LLC*, No. 19-cv-01646, 2020 U.S. Dist. LEXIS 114716, at \*21–22 (N.D. Cal. June 30, 2020).

### D.    <u>Plaintiff Cannot Assert a Nationwide Unjust Enrichment Claim</u>

In its MTD, Conagra asks the Court to dismiss nationwide class claims at the pleading stage. Dkt. 101-1 at 27–29. In response, Plaintiff accuses the overwhelming majority of federal courts that have routinely dismissed nationwide class claims for lack of standing of "fundamentally misunderstand[ing] the distinction between standing and class certification." Dkt. 102 at 28; *see, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state."); *Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474, at \*10-11 (S.D. Cal. May 4, 2023) (noting clear trend among district courts seated in California is to address this as a standing issue at the pleading stage).

It is Plaintiff who fundamentally misunderstands basic principles of Article III standing in the class action context. According to Plaintiff, the only relevant question is whether he has standing in his individual capacity to assert a claim. *Id.* Not so. Standing "is not dispensed in gross," *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028, 1038 (S.D. Cal. 2020) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)), and even named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent," *Lewis*, 518 U.S. at 357 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

To establish standing, a plaintiff must have suffered an "injury in fact"—"'an invasion of a <u>legally protected</u> interest' that is 'not conjectural or hypothetical.'" *In re Packaged Seafood*, 242 F. Supp. 3d at 1095 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In the absence of a named Plaintiff who has purchased a product within the relevant state—even if there are sufficient allegations of injury under other States' or federal law—there can be no determination that an interest was harmed that was <u>legally protected under the relevant state's laws</u>." *Id.* Here, by asserting a nationwide class claim, Plaintiff is purportedly bringing claims under the laws of 49 states where he does not allege to have purchased a product or have suffered any injury. The Court must assess standing for each of those claims, and the inescapable conclusion is that Plaintiff lacks standing to bring claims under the laws of states other than California. Moreover, Plaintiff has not even alleged which state's or states' laws govern the absent members' (nationwide) unjust enrichment claim, which alone is grounds for dismissal. *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-cv-06391, 2018 U.S. Dist. LEXIS 54850, at *13 (N.D. Cal. Mar. 30, 2018).

Plaintiff's reliance on *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) is misplaced. "Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured." *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019); *see Melendres*, 784 F.3d at 1261–62. Accordingly, *Melendres* fails to apply to cases, like this one, purporting to assert violations of multiple states' laws. *See Jones*, 400 F. Supp. 3d at 910; *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421, 2020 U.S. Dist. LEXIS 227197, at *8 (C.D. Cal. Nov. 23, 2020); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918, 2020 U.S. Dist. LEXIS 197736, at *19 (N.D. Cal. Oct. 23, 2020); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1020–21 (S.D. Cal. 2020).

Plaintiff's remaining case law does not change the outcome here. For instance, in *Sultanis v. Champion Petfoods USA Inc.*, Judge Chen acknowledged that "most courts

12

have held that plaintiffs can only bring claims on behalf of other consumers in states where they 'were injured or had any pertinent connection.'" No. 21-cv-00162, 2021 U.S. Dist. LEXIS 145293, at *12–27 (N.D. Cal. Aug. 3, 2021) (quoting *Jones*, 400 F. Supp. 3d 897). Ultimately, he concluded that even if he followed the minority approach (and found that the plaintiff's assertion of nationwide class claims did not implicate Article III standing), he retained discretion to conclude at the pleading stage that the plaintiff did not satisfy Rule 23 requirements in order to bring claims on behalf of unnamed plaintiffs in multiple other states where the plaintiff did not reside or purchase products. *Id.* at *23. Noting the substantial variations in the states' laws, and the high ratio of out-of-state putative class members to named plaintiffs (which would subject the defendant to nationwide discovery based on a single plaintiff's claim), Judge Chen dismissed the nationwide consumer protection and unjust enrichment claims. *Id.* at *27.[6]

Thus, should this Court decline to follow the majority view, the Court nevertheless should exercise its discretion to find that Plaintiff cannot meet Rule 23's requirements for class certification because the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012);[7] *see also Allen v. ConAgra Foods, Inc.*,

---

[6] In *Murphy v. Olly Public Benefit Corp.*, 651 F. Supp. 3d 1111, 1133 (N.D. Cal. 2023), Judge Breyer likewise recognized that the majority view holds that a plaintiff lacks standing to assert claims under the laws of states where he does not reside or did not suffer an injury. He further "agreed that district courts have discretion to address this issue in either a motion to dismiss or a motion for class certification," but decided to defer deciding at the pleading stage given that there were only 4 additional states at issue. *Id.* at 1134. The court in *Beau v. Kia America, Inc.*, No. 8:22-cv-01545, 2023 U.S. Dist. LEXIS 127672, at *12–13 (C.D. Cal. June 16, 2023), with little independent analysis, deferred its standing decision until class certification. And *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 911, 919 (N.D. Cal. 2015) is patently distinguishable because there were multiple class representatives for each state at issue.

[7] Plaintiff suggests that the Ninth Circuit walked back this pronouncement from *Mazza* in *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 563 (9th Cir. 2019). But the *Hyundai* court explained that the reason its prior finding in *Mazza* did not control in *Hyundai* was because "[t]he *Mazza* class was certified for litigation

13

331 F.R.D. 641, 657 (N.D. Cal. 2019). Under either a standing analysis, or a Rule 23 analysis at the pleading stage, Plaintiff's nationwide unjust enrichment claim is untenable.

### E.   <u>Plaintiff Lacks Standing to Seek Injunctive Relief</u>

Plaintiff lacks Article III standing to pursue injunctive relief because he fails to plead a threat of future injury that is actual or imminent. *Walcoff*, 2023 U.S. Dist. LEXIS 78474, at *14. A plaintiff who experienced a past wrong can obtain injunctive relief only if he can show he faces a real or immediate threat they he will again be wronged in a similar way. *Id.* at *14–15. Where, as here, a plaintiff claims to have been misled by a product's labeling or marketing, he cannot plausibly allege that he will be misled again if viewing the product label could dispel any potential confusion. *Id.* at *16–17; *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, 2019 U.S. Dist. LEXIS 192100, at *10–12 (N.D. Cal. Aug. 26, 2019); *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628, 2018 U.S. Dist. LEXIS 1189, at *41–43 (S.D. Cal. Jan. 3, 2018).

Plaintiff attempts to distinguish *Joslin* and *Fernandez*, arguing that those plaintiffs "did not allege that they want to or intend to purchase the products at issue in the future." Dkt. 102 at 30. Both cases noted, however, that even if plaintiffs intended to purchase the products in the future, they could not be deceived as a matter of law. *See Joslin*, 2019 U.S. Dist. LEXIS 192100, at *12–13; *Fernandez*, 2018 U.S. Dist. LEXIS 1189, at *43. Regardless, Plaintiff's alleged future intent to purchase comes no closer to establishing standing for injunctive relief. Plaintiff alleges that he would purchase the Chicken Products in the future if, among other things, they "no longer contained any artificial colors, flavors, or preservatives." Dkt. 98 at ¶ 84. But there is no basis to infer that Conagra will reformulate these products, and Plaintiff's professed

---

purposes," so "[t]he prospect of having to apply the separate laws of dozens of jurisdictions presented a significant issue for trial manageability, weighing against a predominance finding." 926 F.3d at 563. "In settlement cases, such as [*Hyundai*], the district court need not consider trial manageability issues." *Id.*

intent to repurchase a reformulated product remains far too conjectural and hypothetical to establish an Article III injury. *See Grausz v. Kroger Co.*, No. 19-cv-449, 2021 U.S. Dist. LEXIS 231924, at *17 (S.D. Cal. Jan. 22, 2021).

For these reasons, the Court should dismiss Plaintiff's request for injunctive relief.

## F.   <u>Plaintiff Cannot Seek Equitable Relief Here</u>

Plaintiff's arguments regarding equitable relief also rest on faulty legal analysis and find no support in controlling case law. As set forth in Conagra's MTD, the Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) that a plaintiff must establish that she lacks an adequate remedy at law before securing equitable restitution. *See also* Dkt. 101-1 at 29–30 (citing case law confirming applicability of *Sonner* to Plaintiff's UCL, FAL and unjust enrichment claims and CLRA claim to the extent it seeks equitable relief). Plaintiff does not allege he lacks an adequate remedy at law, but rather attempts to evade *Sonner*'s holding.

*First*, Plaintiff argues that under the UCL he may seek both restitution for past harm while at the same time seeking an injunction to prevent future harm. Dkt. 102 at 31. He cites pre-*Sonner* cases from 1988 and 2018, ignoring that *Sonner* precludes Plaintiff from seeking equitable relief in the form of restitution under the UCL for past harm because he has an adequate remedy at law. Plaintiff, meanwhile, cannot seek an injunction to prevent future harm because he lacks Article III standing for injunctive relief as explained above. *See Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507, 2023 U.S. Dist. LEXIS 55493, at *11 (N.D. Cal. Mar. 30, 2023) (holding that plaintiff could not seek restitution under *Sonner* because she did not explain why monetary damages were inadequate and that plaintiff lacked standing to pursue injunctive relief).

*Second*, *Sonner* forecloses Plaintiff's other argument (which relies again on pre-*Sonner* cases) that the CLRA provides remedies that are cumulative of other rights. *Contra* Dkt. 102 at 31. *Sonner* instructs that even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief is unavailable

in federal court because states cannot remove the "fetters" of equitable jurisdiction from federal courts. *See* 971 F.3d at 840–42; *Rodriguez v. FCA US LLC*, No. 8:22-cv-01445, 2023 U.S. Dist. LEXIS 48041, at *7-8 (C.D. Cal. Mar. 21, 2023) (rejecting same argument that CLRA allows for cumulative remedies). Further, to the extent Plaintiff attempts to plead equitable remedies in the alternative, "this argument has been explicitly rejected by numerous courts post-*Sonner*." *Clevenger v. Welch Foods Inc.*, No. 20-cv-01859, 2022 U.S. Dist. LEXIS 235432, at *10 (C.D. Cal. Dec. 14, 2022).

*Third*, Plaintiff contends that *Sonner* is not controlling law in this Circuit and that the decision in *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020), issued one month after the initial opinion in *Sonner*, controls. The *Moore* court, in a footnote, observed that the UCL, FAL, and CLRA provide that remedies under each act are cumulative to each other. *Id.* at 1021 n.13. "But nearly all district courts to consider the question have found that '[t]he *Moore* footnote did not hold that federal courts were no longer required to apply the equitable principles as prescribed by the *Sonner* Court for the exercise of diversity jurisdiction.'" *Clevenger*, 2022 U.S. Dist. LEXIS 235432, at *11 (citation omitted). Courts have repeatedly reached this conclusion for multiple reasons:

- "[T]he footnote in *Moore* is dicta and not binding on this Court." *Shay v. Apple Inc.*, No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415, at *8 (S.D. Cal. May 3, 2021); *Rodriguez*, 2023 U.S. Dist. LEXIS 48041, at *8 n.3 (collecting cases);

- "[T]he court in *Moore* only stated that the remedies under the UCL, FAL, and CLRA are 'cumulative with one another, not with separate legal remedies.'" *Shay*, 2021 U.S. Dist. LEXIS 84415, at *8-9 (citation omitted);

- The *Moore* footnote, by its own terms, is only a statement as to California law and does not bear on federal courts' equitable authority. *Clevenger*, 2022 U.S. Dist. LEXIS 235432, at *11–12 (compiling cases);

- "*Sonner*, and not *Moore*, actually resolved the split in authority on whether plaintiff must plead an inadequate remedy at law in order to seek equitable relief under the UCL and CLRA." *Shay*, No. 2021 U.S. Dist. LEXIS 84415, at *9;

- Another Ninth Circuit opinion post-*Sonner* and *Moore*—*Guzman*—reaffirmed

16

the holding in *Sonner* that "[i]n order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313-14 (9th Cir. 2022); *Rodriguez*, 2023 U.S. Dist. LEXIS 48041, at *8–9 (discussing *Guzman*);

- Other district courts have with near unanimity accepted that the clear holding in *Sonner* and not the dictum in *Moore* controls. *Shay*, 2021 U.S. Dist. LEXIS 84415, at *9 (compiling cases); *Clevenger*, 2022 U.S. Dist. LEXIS 235432, at *11-12.

*Fourth*, Plaintiff argues that even if *Sonner* was controlling, it would not bar prospective relief. Dkt. 102 at 33. Again, this argument ignores that Plaintiff does not have standing to seek relief for future harm under Article III.

## III.  **CONCLUSION**

For the reasons discussed above and in Conagra's Motion to Dismiss SAC, the Court should dismiss all of Plaintiff's claims. Moreover, because Plaintiff's pleading defects are incurable—and Plaintiff has already had the opportunity to twice amend his Complaint—the Court should dismiss these claims with prejudice.


DATED: December 13, 2023    */s/ Angela Spivey*
　　　　　　　　　　　　　　　　*Attorney for Defendant Conagra Brands, Inc.*